| Fill in this information to identify the case: |
| --- |
| United States Bankruptcy Court for the: |
| Southern District of Texas |
| Case number (*If known*): _____ Chapter 15 |

☐ Check if this is an
amended filing

Official Form 401

# Chapter 15 Petition for Recognition of a Foreign Proceeding   12/15

*If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write debtor's name and case number (if known).*

**1.  Debtor's name**    Telefónica del Perú S.A.A.

**2.  Debtor's unique identifier**

**For non-individual debtors:**

☐ Federal Employer Identification Number (EIN)   ___  ___ – ___  ___  ___  ___  ___  ___  ___

☑ Other  20100017491  . Describe identifier  Peruvian Tax ID  .

**For individual debtors:**

☐ Social Security number:   xxx – xx– ___  ___  ___  ___

☐ Individual Taxpayer Identification number (ITIN):  **9** xx – xx – ___  ___  ___  ___

☐ Other _____ . Describe identifier _____ .

**3.  Name of foreign representative(s)**    Timothy O'Connor

**4.  Foreign proceeding in which appointment of the foreign representative(s) occurred**
Appointed by the Debtor's Board as foreign representative of the Debtor in connection with the foreign proceeding pending before the National Institute for the Defense of Competition and Protection of Intellectual Property.

**5.  Nature of the foreign proceeding**

*Check one:*

☑ Foreign main proceeding
☐ Foreign nonmain proceeding
☐ Foreign main proceeding, or in the alternative foreign nonmain proceeding

**6.  Evidence of the foreign proceeding**

☐ A certified copy, translated into English, of the decision commencing the foreign proceeding and appointing the foreign representative is attached.

☐ A certificate, translated into English, from the foreign court, affirming the existence of the foreign proceeding and of the appointment of the foreign representative, is attached.

☑ Other evidence of the existence of the foreign proceeding and of the appointment of the foreign representative is described below, and relevant documentation, translated into English, is attached.
A certified English translation of (i) the petition commencing the foreign proceeding, (ii) INDECOPI filing
confirmation, and (ii) the Debtor's Board resolutions appointing the foreign representative.

**7.  Is this the only foreign proceeding with respect to the debtor known to the foreign representative(s)?**

☐ No. (Attach a statement identifying each country in which a foreign proceeding by, regarding, or against the debtor is pending.)

☑ Yes

| Debtor | Telefónica del Perú S.A.A. | Case number *(if known)* |
|---|---|---|
| | Name | |

**8. Others entitled to notice**

Attach a list containing the names and addresses of:

(i)  all persons or bodies authorized to administer foreign proceedings of the debtor,

(ii)  all parties to litigation pending in the United States in which the debtor is a party at the time of filing of this petition, and

(iii)  all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

**9. Addresses**

**Country where the debtor has the center of its main interests:**

Perú

**Debtor's registered office:**

Jiron Domingo Martínez Luján 1130
Number      Street

_____
P.O. Box

Surquillo    Lima                    15048
City          State/Province/Region    ZIP/Postal Code

Perú
Country

**Individual debtor's habitual residence:**

_____
Number      Street

_____
P.O. Box

_____
City          State/Province/Region    ZIP/Postal Code

_____
Country

**Address of foreign representative(s):**

23951 Deville Way
Number      Street

_____
P.O. Box

Malibu                    CA    90265
City          State/Province/Region    ZIP/Postal Code

United States
Country

**10. Debtor's website** (URL)

https://telefonica.com.pe/

**11. Type of debtor**

*Check one:*

☑ Non-individual (*check one*):

　☑ Corporation.  Attach a corporate ownership statement containing the information described in Fed. R. Bankr. P. 7007.1.

　☐ Partnership

　☐ Other.  Specify: _____

☐ Individual

Debtor    Telefónica del Perú S.A.A.
          Name                                              Case number (if known)

**12. Why is venue proper in *this district*?**

Check one:

☑ Debtor's principal place of business or principal assets in the United States are in this district.

☐ Debtor does not have a place of business or assets in the United States, but the following action or proceeding in a federal or state court is pending against the debtor in this district:

_____.

☐ If neither box is checked, venue is consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative, because:

_____.

**13. Signature of foreign representative(s)**

I request relief in accordance with chapter 15 of title 11, United States Code.

I am the foreign representative of a debtor in a foreign proceeding, the debtor is eligible for the relief sought in this petition, and I am authorized to file this petition.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct,

✘ Timothy O'Connor
   Signature of foreign representative                Timothy O'Connor
                                                      Printed name

Executed on    02/25/2025
               MM  / DD / YYYY

✘ _____          _____
   Signature of foreign representative                Printed name

Executed on    _____
               MM / DD / YYYY

**14. Signature of attorney**

✘ Charles R. Koster                          Date    02/25/2025
   Signature of Attorney for foreign representative    MM   / DD / YYYY

Charles R. Koster
Printed name

White & Case LLP
Firm name

609 Main Street, Suite 2900
Number        Street

Houston                                      TX          10020
City                                         State       ZIP Code

(713) 496-9700                               charles.koster@whitecase.com
Contact phone                                Email address

24128278                                     TX
Bar number                                   State

## **EXHIBIT A-1**

**PCO Petition Form (Certified English Translation)**

COLEGIO DE TRADUCTORES DEL PERÚ
Creado por Ley Nº 26684

MAYRA MILAGROS ALAYO RUBIO
CTP N.° 0773
Certified Translator
Spanish – English – French – Portuguese

# CERTIFIED TRANSLATION
## CT No. 0056-2025

PETITION FOR INITIATION OF AN ORDINARY BANKRUPTCY PROCEEDING
WITH ASSET RESTRUCTURING FILED BY TELEFÓNICA DEL PERÚ S.A.A.



N° 0742532

Mayra M. Alayo Rubio
CTP N° 0773

Valor 3.50 Soles

VER INDICACIONES AL REVERSO



**ADVERTENCIA**

El presente documento está impreso con medidas de seguridad en papel sensibilizado resistente a solventes químicos contra falsificaciones y adulteraciones. Cualquier reacción o enmendadura anulará la validez del mismo. Para verificar su autenticidad deberá:

- Ver al trasluz la marca de agua TGS.
- Frotar con un papel blanco la orla decorativa para verificar que manche.
- Exponer el documento a la luz ultra violeta, utilizada para la verificación de billetes, a fin de visualizar las fibrillas impregnadas dentro de la masa del papel.
- Verificar si la numeración de color rojo impresa en el documento ha penetrado la masa del papel y se puede ver en el reverso. Es imposible removerla.



**MAYRA MILAGROS ALAYO RUBIO**
CTP No. 0773
Certified Translator

CERTIFIED TRANSLATION No. 0056-2025

Page 1 of 10

*Technical Secretary: Leny Calderón*
*Summary:* *Petition for Initiation of an Ordinary*
*Bankruptcy Proceeding with Asset*
*Restructuring*

**TO THE BANKRUPTCY PROCEEDINGS COMMISSION OF THE NATIONAL INSTITUTE FOR THE DEFENSE OF FREE COMPETITION AND THE PROTECTION OF INTELLECTUAL PROPERTY (INDECOPI)**

We, **TELEFÓNICA DEL PERÚ S.A.A.** (hereinafter "**TDP**" or the "**Company**"), holder of Tax ID Number (RUC) 20100017491, with actual address at Jr. Domingo Martínez Lujan 1130, District of Surquillo, Province and Department of Lima, and with address for the service of process at Vía Principal 133, Piso 2, Torre 2, District of San Isidro, Province and Department of Lima, acting by and through Elena Eloisa MAESTRE TINAO, holder of Alien Registration Card (CE) 006104492, who is acting vested with the powers conferred in the minutes of the Board meeting held on February 14, 2025 (**ANNEX 1**), hereby respectfully state as follows:

**I. PETITION**

We request the Bankruptcy Proceedings Commission (hereinafter, the "Commission") to initiate the Ordinary Bankruptcy Proceeding of TDP, as provided for in Section 24 *et seq.* of Law 27809, the General Bankruptcy Act (hereinafter, "LGSC").

Likewise, in accordance with the provisions of item a) of Section 24.2 of the LGSC, this petition includes the express request to carry out the asset restructuring of TDP, as long as the accumulated losses of TDP, net of reserves, do not exceed the total of its paid-in capital stock, as evidenced by a report signed by our legal representative and certified public accountant (hereinafter, the "Equity Status Report") (**ANNEX 2**).

This petition is submitted considering the findings of fact and conclusions of law set forth below:

**II. FINDINGS OF FACT**

**2.1 Regarding the origin of TDP and its economic activity**

TDP is a publicly held corporation organized under the laws of the Republic of Peru, registered in the Registry of Companies in and for Lima (Card No. 11015766), which has administrative offices at the addresses indicated in its Tax File Report (**ANNEX 4**).

The controlling shareholder of TDP is TELEFÓNICA HISPANOAMÉRICA S.A., a company incorporated and domiciled in Madrid, Spain, holder of 99.298% of the



**MAYRA MILAGROS ALAYO RUBIO**
CTP No. 0773
Certified Translator

CERTIFIED TRANSLATION No. 0056-2025

Page 2 of 10

total shares in which TDP's capital stock is represented. The Company is supervised by the Peruvian Securities and Exchange Commission (SMV).

TDP is engaged in the provision of various telecommunications services such as mobile telephony, internet, fixed telephony, data transmission and information technology, national and international long distance carrier services, mobile satellite services and paid television services, among others, nationwide, being one of the main telecommunications operators in Peru. Its activities are supervised by the Supervisory Board for Private Investment in Telecommunications (OSIPTEL) and by the Ministry of Transportation and Communications (MTC).

In order to carry out its corporate purpose and activities, TDP has entered into various concession agreements with the Peruvian State, including those for the provision of carrier services and local, fixed and mobile domestic and international long distance telephone services in the Republic of Peru, as well as internet and cable television services.

## 2.2    Reasons for filing the petition

In connection with the reasons for filing this petition, a report containing jointly (i) the Executive Summary supporting the initiation of the Ordinary Bankruptcy Proceeding of TDP, the economic viability of its activities and the means to settle the obligations due and payable as required by Section 25.1 of the LGSC and (ii) the mechanisms and requirements necessary to make TDP's restructuring viable as required by the second paragraph of item a) of Section 24.2 of the LGSC (hereinafter, the "Restructuring Report"), is attached hereto as **ANNEX 3** to this petition.

According to the analysis contained in the Restructuring Report, there are several factors that have been occurring over time, and more specifically in the last five (5) years.

Of these factors, the following stand out in particular due to their relevance and the negative effects they had on TDP and its results: aggressive competition in the telecommunications industry, the 2020 health crisis and the large accounting provisions for the materialization of relevant tax contingencies and those derived from tax disputes initiated approximately two decades ago.

The following factors have also influenced the deterioration of TDP's financial situation in recent years: (i) the challenges and costs of implementing the fiber-to-the-home (FTTH) network as part of the transformation of telecommunications, (ii) the increase in customer churn added to the aggressive competition in the telecommunications industry, (iii) cost overruns in the telecommunications market due to regulatory changes, and (iv) the difficulties in adjusting operating expenses to the current business size and model.

**MAYRA MILAGROS ALAYO RUBIO**
CTP No. 0773
Certified Translator

CERTIFIED TRANSLATION No. 0056-2025

Page 3 of 10

All these factors detailed in the referred Restructuring Report have not only caused a reduction in TDP's revenues of more than 7% by 2024 compared to 2023 and an average annual reduction in its operating revenues of more than 5.2% since 2019, but also accumulated net losses totaling <u>PEN 8.918 billion</u> from 2019 to 2024. Below is a chart showing the losses from 2019 to 2024 and how they have been significantly reducing TDP's equity.



Chart No. 1: Shareholders' Equity and Net Loss, 2015 - 2024 (in million PEN)

Source: TDP Restructuring Report

It should be noted that, of TDP's accumulated net losses amounting to PEN 8.918 billion between 2019 and 2024, the provision for tax contingencies represents 32%, that is, PEN 2.849 billion. In addition, the results include regulatory contingencies for PEN 339 million, impairment of assets and goodwill for PEN 1.536 billion and impairment of tax assets for PEN 598 million, among others.

Table No. 1: Contingencies or impairments impacting TDP's profits, 2019 - 2024 (in million PEN)

| | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | Total |
|---|---|---|---|---|---|---|---|
| Business results | (399) | (611) | (616) | (321) | (556) | (1,093) | (3,596) |
| Tax contingencies | (707) | (58) | (722) | (1,045) | 126 | (443) | (2,849) |
| Regulatory contingencies | (31) | (26) | (32) | (89) | (119) | (42) | (339) |
| Impairment of assets and goodwill | – | – | (256) | – | (65) | (1,216) | (1,536) |
| Impairment of tax assets | – | – | – | – | – | (598) | (598) |
| Net profit | (1,137) | (695) | (1,626) | (1,455) | (613) | (3,392) | (8,918) |

Likewise, payments to the National Superintendence of Customs and Tax Administration (SUNAT) for tax contingencies materialized between 2019 and 2024 have totaled PEN 2.653 billion, which has also affected TDP's cash flow generation, which had been additionally affected by the aggressive competition in the industry and its own investment needs, the latter considering that the telecommunications industry requires significant investments in CAPEX (Capital Expenditures) for the maintenance, innovation and renewal of technology and



**MAYRA MILAGROS ALAYO RUBIO**
CTP No. 0773
Certified Translator

CERTIFIED TRANSLATION No. 0056-2025

Page 4 of 10

infrastructure. As a consequence of these factors, TDP's operating cash flow was reduced from PEN 539 million in 2019 to a negative cash flow of PEN -967 million in 2024.

**Table No. 2: Cash flow, 2019 - 2024 (in million PEN)**

|  | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|---|
| Opening cash balance | 88 | 1,001 | 877 | 611 | 433 | 521 |
| Operating cash flow | 539 | 1,022 | 628 | 244 | 247 | -967 |
| Operational activities | 794 | 1,040 | 813 | 847 | 712 | 159 |
| Payment of tax contingencies | -255 | -18 | -185 | -603 | -465 | -1,127 |
| Cash flow of investments | -762 | -633 | -553 | -286 | -620 | -636 |
| Cash flow of financing | 1,136 | -519 | -341 | -131 | 468 | 1,521 |
| Repayment and payment of financial liabilities | -1,668 | -527 | -160 | -295 | -308 | -1,365 |
| Exchange rate difference | 0 | -1 | 0 | -5 | -7 | -4 |
| Cash flow | 913 | -131 | -266 | -178 | 88 | -87 |
| Ending cash balance | 1,001 | 877 | 611 | 433 | 521 | 434 |

Source: Audited Financial Statements, the Company

Despite TDP's capital loss and the operating cash flow deficit explained above, the Company has fulfilled its obligations to various creditors (employees, suppliers, banks and local and international investors, bondholders, as well as the Peruvian State), preserving the continuity of its operations for the provision of the public services it provides and the investments it continues to make for such purpose.

The above has been achieved by the financing granted directly to TDP by its controlling shareholder TELEFÓNICA HISPANOAMÉRICA S.A., which certainly allowed it to cover its different liquidity needs referred to above. Such financing in total amounted from 2019 to 2024 to PEN 4.062 billion, of which PEN 3.487 billion have been capitalized and a share premium was created to be entirely used to cover part of the accumulated losses and reestablish TDP's equity balance.

It is important to highlight that the financial situation described above is available to the public, as it was timely informed by TDP's Management in its financial statements and audited financial statements submitted quarterly and annually, respectively, to the Securities and Exchange Commission (SMV), as well as through the significant events reported to such entity.

In view of the aforementioned situation and although as of December 31, 2024 the Company still maintains the legally required solvency ratios, in the current fiscal year 2025 TDP has to pay financial obligations including their respective accrued interest with payment dates in 2025 for an approximate amount of PEN

MAYRA MILAGROS ALAYO RUBIO
CTP No. 0773
Certified Translator

CERTIFIED TRANSLATION No. 0056-2025

Page 5 of 10

804 million and operating cash needs of PEN 1.542 billion. Considering TDP's estimated revenues for 2025, it would be impossible to meet all of the Company's liquidity requirements indicated above for this fiscal year with its own resources alone.

Furthermore, TELEFÓNICA HISPANOAMÉRICA S.A. has confirmed to TDP that it will provide financial support through the granting of a new loan for up to PEN 1.549 billion, which is only limited to cover operational needs that allow TDP to continue operating, that is, for example, excluding the payment of contingencies and financial debt. The loan may be partially capitalized in favor of TELEFÓNICA HISPANOAMÉRICA S.A. by mutual agreement with the latter.

Even in this context, TDP will continue to provide public telecommunications services to more than 13 million customers throughout the country, and to develop infrastructure and technology to expand its coverage and improve services, as well as to comply with its commitments to expand rural connectivity in Peru assumed with the Ministry of Transportation and Communications.

In view of the above and based on the limited financing available to it, TDP's Management, after thorough consideration, submitted to the Board of Directors the approval of the submission of the petition to initiate an Ordinary Bankruptcy Proceeding, as a legally available remedy to address the current lack of liquidity. With the development of this proceeding, which is being requested with restructuring, TDP could redefine payments to mainly face the financial and tax debt with the future generation of cash flows hand in hand with an operational transformation, as developed in the following section.

The requested and duly initiated Ordinary Bankruptcy Proceeding will allow, under the umbrella of the suspension of enforceability of obligations and the asset protection referred to in the General Bankruptcy Act, TDP to operate normally, providing its services serving its customers and paying its post-bankruptcy obligations to employees and suppliers until the Creditors' Meeting is set up, wherein it is expected that the asset restructuring will be confirmed as destination and the restructuring plan that TDP's Management will duly submit will be approved. Under this scenario, the Ordinary Bankruptcy Proceeding then seeks to preserve the equity and value of the company as a going concern for the benefit of its creditors, customers and other stakeholders.

## 2.3    TDP's Restructuring through an Ordinary Bankruptcy Proceeding

The Ordinary Bankruptcy Proceeding is the legal remedy available to TDP to negotiate transparently and collectively with all its creditors with the aim of restructuring its liabilities, mainly financial and tax debt, as well as all ongoing contingencies (tax, regulatory, etc.).

**MAYRA MILAGROS ALAYO RUBIO**
CTP No. 0773
Certified Translator

CERTIFIED TRANSLATION No. 0056-2025

The Ordinary Bankruptcy Proceeding therefore makes it possible, on the one hand, to offer its creditors conditions for the payment of their claims based on the cash surpluses that TDP generates over time as a going concern and, on the other hand, not to affect the continuity of its business or the provision of the public services it offers to millions of customers, the latter being its priority.

In view of the inability to pay the financial and tax debt and given the contingencies in process that may materialize, the aim is to propose the best possible payment offer to its creditors through a bankruptcy proceeding, based on TDP's own payment capacity.

In this regard, as indicated above, the mechanisms and specific requirements for the generation of the cash surpluses necessary to make TDP's turnaround viable, the cash flow projection for a period of two (2) years, as well as the executive summary supporting the initiation of TDP's Ordinary Bankruptcy Proceeding, are detailed in the Restructuring Report.

In line with the above, we consider it important to emphasize to the Commission that the filing of the petition to initiate TDP's Ordinary Bankruptcy Proceeding does not generate by itself the legal effects of asset protection or the suspension of the enforceability of obligations. Accordingly, there is a risk that if this petition is not dealt with within the maximum legal deadlines, any creditor, including the tax authorities and/or financial creditors with overdue and enforceable claims, may be able to seize the Company's accounts and cash, with the high risk that such hostile collection actions, due to the significant amount of the claims, will seriously affect the continuation of the provision of services to TDP's millions of customers and, consequently, will also affect its viability and result in the loss of the going concern value for the group of creditors and, with it, the possibility of achieving an asset restructuring.

Moreover, although TELEFÓNICA HISPANOAMÉRICA S.A. has committed to provide the necessary financial support during the current year and even with the willingness to grant additional support subject to evaluation by its respective governing bodies, until the establishment of the Creditors' Meeting. Such support is intended exclusively to meet operational [cash] needs that allow maintaining the going concern value and integrity of the Company's operations and thus the normal continuity of the telecommunications services currently provided to customers and users. The occurrence of any of the hostile collection situations indicated in the preceding paragraph would also cause the financing of the operating cash flow to be definitively interrupted.

That being the case, achieving TDP's restructuring and ensuring that the continuity of the provision of services and the integrity of its operations are not affected also depends, to a significant extent, on the compliance with the legal deadlines established in the General Bankruptcy Act by the bankruptcy authority

**MAYRA MILAGROS ALAYO RUBIO**
CTP No. 0773
Certified Translator

CERTIFIED TRANSLATION No. 0056-2025

Page 7 of 10

for the processing and initiation of the Ordinary Bankruptcy Proceeding, after verifying compliance with the legal requirements established for such purposes.

We reiterate that the filing of the Ordinary Bankruptcy Proceeding is with the genuine objective of proposing to its creditors a restructuring as the best possible alternative for the fulfillment and payment of its obligations over time through a restructuring plan that, as previously indicated, will be submitted in due course for evaluation and approval by the Creditors' Meeting once it has been established and according to the results that are obtained from the operational restructuring. Thus, we place on record that the submission of this petition does not seek the bankruptcy of the Company or its liquidation.

III. **CONCLUSIONS OF LAW**

As provided for in the General Bankruptcy Act, Section 24, any debtor may request the initiation of an Ordinary Bankruptcy Proceeding, provided that it is in one of the cases established in Section 24.1 of said law.

In this respect, we state for the record that TDP is in the case established in the General Bankruptcy Act, Section 24.1, item b), since it has accumulated losses, net of reserves, the amount of which is greater than one third of the paid-in capital stock, as detailed below, in thousands of soles:

| | |
|---|---|
| Total accumulated losses as of December 31, 2024 | PEN 349,522 |
| Total reserves as of 12/31/2024 | - |
| 1/3 of the paid-in capital stock as of December 31, 2024 | PEN 276,870 |

The calculation shown in the preceding table can be verified by the Commission with the financial and accounting information audited by PricewaterhouseCoopers as of December 31, 2024, which is attached to this petition.

Accordingly, attached to this petition, by way of annexes, is all the information provided for in Section 25 of the General Bankruptcy Act, which is in the nature of a sworn statement, as provided for in Section 10.1 of the referred law.

**THEREFORE:**

We request that the Commission admit this petition and declare, as soon as possible and within the maximum statutory period, the bankruptcy situation and order the publication of the commencement of the Ordinary Bankruptcy Proceeding of TDP in the Bankruptcy Gazette.

**FIRST SUPPLEMENTAL PRAYER FOR RELIEF:** In accordance with the provisions of the General Bankruptcy Act, Section 25, the following documents are attached to this petition:

Mayra M. Alayo Rubio
CTP N° 0773

MAYRA MILAGROS ALAYO RUBIO
CTP No. 0773
Certified Translator

CERTIFIED TRANSLATION No. 0056-2025

Page 8 of 10

**ANNEX 1:** Copy of the first page of the Minute Book of TDP's Board of Directors and of the pages corresponding to the Minutes of TDP's Board of Directors' Meeting, dated February 14 , 2025, whereby it was agreed to submit said company to the Ordinary Bankruptcy Proceeding, and powers of attorney were granted to Elena Eloisa MAESTRE TINAO, holder of Alien Registration Card (CE) 006104492, Alvaro Ignacio PARISI, identified holder of Alien Registration Card (CE) 005483684 and Christiann Antonio HUDTWALCKER ZEGARRA, holder of National Identity Card (DNI) 10221403, so that in the name, place and stead of TDP, any of them, acting individually, may process the initiation of the referred proceeding. Likewise, attached as part of this Annex is an uncertified copy of the National Identity Card (DNI) or Alien Registration Card (CE) of the aforementioned representatives. A copy of TDP's Bylaws and its amendments is also attached hereto, wherein it is stated in Article 32 that the Board of Directors is the competent body to authorize TDP's entry into an ordinary bankruptcy proceeding.

**ANNEX 2:** Report signed by the legal representative and by a certified public accountant, which certifies that TDP's accumulated losses, net of reserves, do not exceed the total of its paid-up capital stock and therefore enables TDP to file for the Ordinary Bankruptcy Proceeding with asset restructuring.

**ANNEX 3:** Executive summary supporting the initiation of the Ordinary Bankruptcy Proceeding and also specifying the mechanisms and requirements necessary to make its turnaround viable, and a preliminary projection of its results and cash flow for a period of two (2) years.

**ANNEX 4:** General information related to TDP: Company name, economic activity, address and Tax File Report.

**ANNEX 5:** Copy of the audited financial documentation of TDP for the last two fiscal years (2023 and 2024), containing the following information: (i) Balance Sheets; (ii) Statements of Comprehensive Income; (iii) Statements of Cash Flows; and, (iv) Statements of Changes in Shareholders' Equity. The audited Balance Sheets have an unqualified opinion.

**ANNEX 6:** Information about the sources of financing to which TDP has had access in the last two (2) fiscal years (2023 and 2024), as well as the manner in which the return of such financing has been agreed.

**ANNEX 7:** Information of Electronic Tax Return (PDT) 0601 – Electronic Payroll – PLAME corresponding to the month of January 2025, month prior to the filing of this document, and the respective proof of electronic filing.

**MAYRA MILAGROS ALAYO RUBIO**
CTP No. 0773
Certified Translator

It should be noted that, taking into consideration the provisions of Section 85 of the Tax Code[1] which provides for the confidential nature of the information regarding the amount and source of income when they are contained in the returns and information that SUNAT obtains by any means from the taxpayers -such as the case of the electronic payroll – a copy of Electronic Tax Return (PDT) 0601 is not being submitted. Thus is also for reasons of security of TDP's employees to avoid unnecessary exposure considering the current context that the country is going through. However, Annex 7 hereto contains the aggregate information of the referred PDT by category of employee where the total number of employees by category and the total amount of the payroll as of January 2025 is shown.

**ANNEX 8:**   Detailed list of all TDP's obligations as of December 2024, indicating for each creditor: (i) identity (name or corporate name); (ii) principal place of business; (iii) amount due and payable for principal (it should be noted that the obligations have not generated interest or expenses); and, (iv) maturity date of each obligation in the cases in which this has been agreed or established.

Included as part of this Annex is a list of the contingent obligations as of December 2024, specifying the position of each party.

**ANNEX 9:**   List of TDP's real and personal property as of December 2024, as well as the liens and encumbrances thereon, holders and amounts of such liens and encumbrances, if any. The valuation criterion used has been at book value.

**ANNEX 10:**   List of accounts receivable as of December 2024, indicating the possibility of their recovery.

**ANNEX 11:**   Uncertified copy of the documentation that identifies TDP as an active taxpayer of the National Superintendence of Customs and Tax Administration (SUNAT).

**ANNEX 12:**   Affidavit of relationship with TDP creditors, in accordance with the assumptions established in Section 12 of the General Bankruptcy Act.

The information and documents contained in the annexes listed above are also available at the following LINK.



---

[1]   **TAX CODE**
Section 85. CONFIDENTIAL NATURE OF TAX INFORMATION
The amount and source of income, expenses, taxable income or any other data related thereto, when contained in the returns and information obtained by any means from taxpayers, responsible parties or third parties, as well as the processing of the complaints referred to in Section 192, shall be considered confidential information and may only be used by the Tax Administration for its own purposes.

**MAYRA MILAGROS ALAYO RUBIO**
CTP No. 0773
Certified Translator

CERTIFIED TRANSLATION No. 0056-2025

Page 10 of 10

TDP declares that the information contained in Annexes 8, 9 and 10 is as of December 31, 2024, i.e. is not older than two (2) months from the date of filing of this petition and is reconciled with the audited financial statements as of December 31, 2024.

Likewise, it is hereby placed on record that the attached information and documentation has been signed by the authorized legal representative of TDP, Elena Eloisa MAESTRE TINAO, and that the documentation indicated in Annex 5 has also been signed by Marcos SERRA BENAVIDES, Certified Public Accountant No. 18646.

**SECOND SUPPLEMENTAL PRAYER FOR RELIEF:** Attached hereto is the document evidencing payment of the corresponding administrative fee.

Lima, February 24 , 2025

**TELEFÓNICA DEL PERÚ S.A.A.**
Elena Eloisa Maestre Tinao

I, the undersigned Certified Translator, Member of the Peruvian Association of Professional Licensed Translators (CTP), do hereby certify that this Certified Translation, consisting of *10* pages, is a true and correct translation into English of the original document in _Spanish_ enclosed herewith which has been produced before me.

This certification shall be considered an acknowledgment of the accuracy of the translation but not of the authenticity or contents of the document in source language attached hereto.

Signed in Lima, this *25th* day of *February*, *2025*

Mayra M. Alayo Rubio
CTP N° 0773

## EXHIBIT A-2

**PCO Petition Form (Original)**

*Secretaria Técnica: Leny Calderón*
*Sumilla: <u>Solicitud de Inicio de Procedimiento
Concursal Ordinario con
Reestructuración Patrimonial</u>*

**A LA COMISIÓN DE PROCEDIMIENTOS CONCURSALES DEL INSTITUTO NACIONAL DE DEFENSA DE LA COMPETENCIA Y DE LA PROTECCIÓN DE LA PROPIEDAD INTELECTUAL**

**TELEFÓNICA DEL PERÚ S.A.A.** (en adelante, "**TDP**" o la "**Compañía**"), identificada con Registro Único de Contribuyentes No. 20100017491, con domicilio real en Jr. Domingo Martinez Lujan Nro. 1130, distrito de Surquillo, provincia y departamento de Lima, y domicilio procesal en Vía Principal 133, Piso 2, Torre 2, distrito de San Isidro, provincia y departamento de Lima, debidamente representada por Elena Eloisa Maestre Tinao, identificada con Carné de Extranjería No. 006104492, quien actúa conforme con las facultades otorgadas en el acta de la sesión de Directorio de fecha 14 de febrero de 2025 (**ANEXO 1**), ante ustedes nos presentamos y decimos:

I.     **PETITORIO**

Solicitamos a la Comisión de Procedimientos Concursales (en adelante, la "<u>Comisión</u>") el inicio del Procedimiento Concursal Ordinario de TDP, de conformidad con lo establecido y permitido en el artículo 24 y siguientes de la Ley N° 27809, Ley General del Sistema Concursal (en adelante, "<u>LGSC</u>").

Asimismo, de acuerdo con lo previsto en el inciso a) del artículo 24.2 de la LGSC, la presente solicitud comprende el pedido expreso de llevar a cabo la <u>reestructuración</u> patrimonial de TDP, en tanto las pérdidas acumuladas de TDP, deducidas las reservas, no superan al total de su capital social pagado, conforme se acredita mediante informe suscrito por nuestro representante legal y contador público colegiado (en adelante, el "<u>Informe de Situación Patrimonial</u>") (**ANEXO 2**).

Esta solicitud se presenta considerando los fundamentos de hecho y de derecho que a continuación se exponen:

II.    **FUNDAMENTOS DE HECHO**

2.1    **Respecto del origen de TDP y su actividad económica**

TDP es una sociedad anónima abierta constituida bajo las leyes de la República del Perú, inscrita en la Partida No. 11015766 del Registro de Personas Jurídicas de Lima, que mantiene sedes administrativas en los domicilios detallados en la Ficha RUC (**ANEXO 4**).

El accionista de control de TDP es Telefónica Hispanoamérica S.A., empresa constituida y con domicilio en Madrid, España, titular del 99.298% del total de acciones en las que se encuentra representado

1

el capital social de TDP. La Compañía se encuentra supervisada por la Superintendencia de Mercado de Valores (SMV).

TDP se dedica a la prestación de diversos servicios de telecomunicaciones como son telefonía móvil, internet, telefonía fija, transmisión de datos y tecnología de la información, servicios portadores de larga distancia nacional e internacional, servicios móviles por satélite y servicios de televisión pagada, entre otros, a nivel nacional, siendo uno de los principales operadores de telecomunicaciones en el Perú y sus actividades se encuentran supervisadas por el Organismo Supervisor de Inversión Privada en Telecomunicaciones - OSIPTEL y por el Ministerio de Transportes y Comunicaciones - MTC.

Para llevar a cabo su objeto social y actividades, TDP tiene suscritos con el Estado Peruano diversos contratos de concesión, entre otros, aquellos para la prestación de los servicios de portador y servicio telefónico local, fijo y móvil, de larga distancia nacional e internacional en la República del Perú, así como servicios de internet y de televisión por cable.

## 2.2 Respecto de las razones que motivan la presente solicitud

Con relación a las razones que motivan la presentación de esta solicitud, se está adjuntando como **ANEXO 3** de la presente solicitud un informe que contiene de manera conjunta (i) el Resumen Ejecutivo fundamentando el inicio del Procedimiento Concursal Ordinario de TDP, la viabilidad económica de sus actividades y los medios para solventar las obligaciones adeudadas que exige el artículo 25.1 de la LGSC y (ii) los mecanismos y requerimientos necesarios para hacer viable la reestructuración de TDP que se requiere en el segundo párrafo del inciso a) del artículo 24.2 de la LGSC (en adelante, el "Informe de Reestructuración").

De acuerdo con el análisis contenido en el Informe de Reestructuración, son diversos factores que en conjunto se han venido presentando a lo largo del tiempo, y más específicamente en los últimos cinco (5) años.

De estos factores destacan en particular por su relevancia y efectos que impactaron negativamente en TDP y sus resultados, la competencia agresiva en el sector de telecomunicaciones, la crisis sanitaria del 2020 y las cuantiosas provisiones contables por la materialización de contingencias tributarias relevantes y derivadas de controversias fiscales iniciadas hace aproximadamente dos décadas.

Los siguientes factores también han influenciado en el deterioro de la situación financiera de TDP en los últimos años (i) los retos y costos de la implementación de la red de fibra hasta el hogar (FTTH, por sus siglas en inglés) como parte de la transformación de las telecomunicaciones, (ii) el incremento de la rotación de clientes entre operadores de portabilidad (*churn*, en inglés) sumado a la competencia agresiva en el sector telecomunicaciones, (iii) sobrecostos en el

mercado de telecomunicaciones por cambios regulatorios, y (iv) las dificultades para ajustar los gastos operativos al actual tamaño y modelo del negocio.

Todos estos factores detallados en el referido Informe de Reestructuración no solo han provocado una reducción de los ingresos de TDP de más del 7% para el 2024 en comparación con 2023 y una reducción promedio anual de sus ingresos operativos de más del 5.2% desde 2019, sino también pérdidas netas acumuladas que ascienden a un total de S/8,918 millones desde 2019 hasta 2024. A continuación, adjuntamos Gráfico que contiene las pérdidas obtenidas desde el año 2019 hasta el 2024 y cómo estas han venido mermando y reduciendo de manera significativa el patrimonio de TDP.

**Gráfico N° 1: Patrimonio y Pérdida neta, 2015 – 2024 (S/ millones)**



Fuente: Informe de Reestructuración TDP

Es preciso indicar que, de los S/8,918 millones de pérdidas netas acumuladas de TDP entre el 2019 y 2024, la provisión por las contingencias fiscales representa el 32%, esto es, S/2,849 millones. Además, los resultados incluyen contingencias regulatorias por S/339 millones, deterioro de activos y plusvalía por S/1,536 millones y deterioro de activos fiscales por S/598 millones, entre otros.

**Tabla N°1: Contingencias o deterioros que impactan la utilidad de TdP, 2019 – 2024 (S/ millones)**

| | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | Total |
|---|---|---|---|---|---|---|---|
| Resultados de negocio | (399) | (611) | (616) | (321) | (556) | (1,093) | (3,596) |
| Contingencias fiscales | (707) | (58) | (722) | (1,045) | 126 | (443) | (2,849) |
| Contingencias regulatorias | (31) | (26) | (32) | (89) | (119) | (42) | (339) |
| Deterioro de activos y plusvalía | – | – | (256) | – | (65) | (1,216) | (1,536) |
| Deterioro de activos fiscales | – | – | – | – | – | (598) | (598) |
| **Resultado neto** | **(1,137)** | **(695)** | **(1,626)** | **(1,455)** | **(613)** | **(3,392)** | **(8,918)** |

Asimismo, los pagos a la Superintendencia Nacional de Aduanas y de Administración Tributaria (SUNAT) por las contingencias tributarias materializadas entre el 2019 y 2024 han ascendido en total a S/2,653 millones, lo cual ha afectado también la generación de los flujos de caja

de TDP, que venía siendo afectada adicionalmente por las dinámicas de competencia agresivas en el sector y las necesidades propias de inversión, esto último considerando que en el sector de telecomunicaciones se necesitan inversiones relevantes en CAPEX (Gastos de Capital, por sus siglas en inglés) para el mantenimiento, innovación y renovación de tecnología e infraestructura. Como consecuencia de estos factores, el flujo de caja operativo de TDP se reduja de S/539 millones en el 2019 a un flujo negativo de S/-967 millones en el 2024.

**Tabla N°2: Flujo de efectivo, 2019 – 2024 (S/ millones)**

|  | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|---|
| Saldo de caja inicial | **88** | **1,001** | **877** | **611** | **433** | **521** |
| FC operativo | **539** | 1,022 | 628 | 244 | 247 | **-967** |
| Actividades operativas | 794 | 1,040 | 813 | 847 | 712 | 159 |
| Pago de contingencias tributarias | -255 | -18 | -185 | -603 | -465 | -1,127 |
| FC de inversiones | -762 | -633 | -553 | -286 | -620 | -636 |
| FC de financiamiento | 1,136 | -519 | -341 | -131 | 468 | 1,521 |
| Amortización y pagos de pasivos financieros | -1,668 | -527 | -160 | -295 | -308 | -1,365 |
| Diferencia de tipo de cambio | 0 | -1 | 0 | -5 | -7 | -4 |
| **Flujo de caja** | **913** | **-131** | **-266** | **-178** | **88** | **-87** |
| **Saldo de efectivo final** | **1,001** | **877** | **611** | **433** | **521** | **434** |

Fuente: EEFF auditados, la Compañía

A pesar de la pérdida patrimonial de TDP y del déficit de flujo de caja operativo antes explicados, la Compañía ha cumplido con sus obligaciones frente a distintos acreedores (trabajadores, proveedores, bancos e inversionistas locales e internacionales, bonistas, además del Estado Peruano), preservando la continuidad de sus operaciones para la prestación de los servicios públicos que brinda y de las inversiones que sigue realizando para dicho objetivo.

Lo anterior se ha logrado por los financiamientos otorgados directamente a TDP por su accionista de control Telefónica Hispanoamérica S.A., que ciertamente le permitieron cubrir sus distintas necesidades de liquidez antes comentadas, <u>financiamientos que en total ascendieron desde el 2019 al 2024 a S/4,062 millones</u>, de los cuales se han capitalizado S/3,487 millones y se constituyó una prima de emisión que se utilizó enteramente para cubrir parte de las pérdidas acumuladas y restablecer el equilibrio patrimonial de TDP.

Es importante destacar que la situación financiera antes descrita es de acceso público, pues fue informada oportunamente por la administración de TDP en sus estados financieros y estados financieros auditados presentados trimestral y anualmente, respectivamente, a la Superintendencia de Mercado de Valores – SMV, así como mediante los hechos de importancia comunicados a dicha entidad.

Ante la situación antes mencionada y si bien al 31 de diciembre de 2024 la Compañía aún mantiene los ratios de solvencia legalmente requeridos, en el presente ejercicio 2025 TdP tiene que afrontar el pago de obligaciones financieras incluyendo sus respectivos intereses devengados con fechas de pago en 2025 por un monto aproximado de S/804 millones y necesidades operativas de caja de S/1,542 millones. Considerando los ingresos de TDP estimados para el 2025, resultaría imposible cumplir únicamente con sus propios recursos con todos los requerimientos de liquidez de la Compañía antes indicados para este ejercicio.

Por otra parte, Telefónica Hispanoamérica S.A. ha confirmado a TDP que brindará apoyo financiero mediante el otorgamiento de un nuevo préstamo por hasta S/ 1,549 millones, el cual está únicamente limitado para cubrir necesidades operativas que permitan a TDP seguir operando, es decir por ejemplo excluyendo el pago de contingencias y deuda financiera. El préstamo podrá ser parcialmente capitalizado a favor de Telefónica Hispanoamérica S.A., de mutuo acuerdo con éste.

Aun en este contexto, TDP continuará prestando los servicios públicos de telecomunicaciones que brinda a todo el país a más de 13 millones de clientes, y desarrollando la infraestructura y tecnología para ampliar su cobertura y mejorar los servicios, así como cumplir con sus compromisos de expansión en conectividad rural en el Perú asumidos con el Ministerio de Transportes y Comunicaciones.

En atención a todo lo expuesto y a partir del financiamiento limitado con el que efectivamente cuenta, la administración de TDP luego de la evaluación correspondiente, sometió a consideración del Directorio la aprobación de presentación de la solicitud de inicio de un Procedimiento Concursal Ordinario, como medida legalmente disponible para afrontar la situación de iliquidez que presenta. Con el desarrollo de este Procedimiento que se está solicitando con reestructuración, TdP podría reperfilar los pagos para hacer frente principalmente a la deuda financiera y tributaria con la generación futura de flujos de caja de la mano con una transformación operativa, como se desarrolla en el siguiente acápite.

El PCO solicitado e iniciado oportunamente permitirá bajo el paraguas de la suspensión de exigibilidad de las obligaciones y la protección patrimonial que se encuentran contempladas en la LGSC, a  TDP que pueda operar con normalidad prestando sus servicios, atendiendo a sus clientes y con el pago de sus obligaciones post concursales con trabajadores y proveedores hasta que se instale la Junta de Acreedores en la que se espera se confirme como destino la reestructuración patrimonial y se apruebe el plan de reestructuración que oportunamente presentará la administración de TDP. El PCO bajo dicho escenario busca entonces preservar el patrimonio y el valor de la compañía en marcha en beneficio de sus acreedores, clientes y demás grupos de interés.

### 2.3 Reestructuración de TDP mediante un Procedimiento Concursal Ordinario

El Procedimiento Concursal Ordinario resulta la herramienta jurídica disponible para que TDP pueda negociar de manera transparente y colectiva con todos sus acreedores con el objetivo de lograr la reestructuración de sus pasivos, principalmente, de la deuda financiera y fiscal, así como de todas las contingencias en proceso (fiscales, regulatorias, etc.).

El Procedimiento Concursal Ordinario permite entonces, por una parte, ofrecer a sus acreedores condiciones de pago de sus acreencias en función a los excedentes de caja que genere TDP en el tiempo bajo la condición de empresa en marcha y, por otra parte, no afectar la continuidad de sus negocios ni la prestación de los servicios públicos que brinda a millones a clientes, siendo esta última su prioridad.

Se trata entonces de, ante la imposibilidad de pago de la deuda financiera y fiscal y de las contingencias en proceso que se puedan materializar, proponer por medio del concurso a sus acreedores, la mejor oferta de pago posible, en función a la propia capacidad de pago de TDP.

Al respecto, como se ha indicado de manera precedente, los mecanismos y requerimientos específicos para la generación de los excedentes de caja necesarios hacer viable el reflotamiento de TDP, la proyección de flujo de caja por un periodo de dos años, así como el resumen ejecutivo fundamentando el inicio del Procedimiento Concursal Ordinario de TDP, se encuentran detallados en el Informe de Reestructuración.

En línea con lo antes señalado, consideramos importante destacar a la Comisión que la presentación de la solicitud de inicio de Procedimiento Concursal Ordinario de TDP no genera por sí sola los efectos legales de la protección patrimonial ni la suspensión de la exigibilidad de las obligaciones, por lo que existe el riesgo que si no se atiende la presente solicitud dentro de los plazos legales máximos, cualquier acreedor, incluyendo el tributario y/o los acreedores financieros que tengan acreencias vencidas y exigibles, puedan lograr trabar embargos sobre las cuentas y caja de la Compañía, con el alto riesgo que dichas acciones hostiles de cobro debido al importe significativo de las acreencias, afecte gravemente la continuación de la prestación de los servicios a los millones de clientes de TDP y en consecuencia, se afecte igualmente su viabilidad y se pierda el valor en marcha para el colectivo de los acreedores y con ello también las posibilidades de concretar una reestructuración patrimonial.

Por otra parte, si bien Telefónica Hispanoamérica S.A. se ha comprometido a brindar su apoyo financiero necesario durante el presente año e incluso con la disposición a otorgar un apoyo adicional sujeto a evaluación de sus órganos respectivos, hasta la instalación de la Junta de Acreedores, dicho apoyo tiene por finalidad atender

exclusivamente necesidades operativas [de caja] que permitan mantener la marcha e integridad de las operaciones de la Sociedad y con ello la continuidad normal de la prestación de los servicios de telecomunicaciones que se brinda actualmente a clientes y usuarios, por lo que la ocurrencia de cualquiera de las situaciones de cobro hostil indicadas en el párrafo precedente, también generarían que el financiamiento del flujo de caja operativo se interrumpa definitivamente.

Siendo ello así, lograr la reestructuración de TDP y que no se afecte la continuidad de la prestación de los servicios y la integridad de sus operaciones depende también y de manera relevante del cumplimiento de los plazos legales establecidos en la LGSC por parte de la autoridad concursal para la tramitación e inicio del Procedimiento Concursal Ordinario, luego de verificados el cumplimiento de los requisitos legales previstos para tales efectos.

Reiteramos que la presentación del Procedimiento Concursal Ordinario es con el auténtico objetivo de proponer a sus acreedores una reestructuración como mejor alternativa posible para el cumplimiento y pago de sus obligaciones en el tiempo a través de un plan de reestructuración que, conforme se ha indicado, se presentará oportunamente para su evaluación y aprobación ante la junta de acreedores una vez conformada y conforme a los resultados que se vaya teniendo de la reestructuración operativa. <u>Así, dejamos constancia que la presentación de esta solicitud no busca la quiebra de la empresa ni su liquidación</u>.

## III.   **FUNDAMENTOS DE DERECHO**

De conformidad con lo dispuesto en el artículo 24 de la LGSC, cualquier deudor podrá solicitar el inicio de un Procedimiento Concursal Ordinario, siempre que se encuentre en alguno de los supuestos establecidos en el artículo 24.1 de dicho cuerpo normativo.

Al respecto, dejamos constancia de que TDP se encuentra en el supuesto establecido en el inciso b) del artículo 24.1 de la LGSC, pues tiene pérdidas acumuladas, deducidas las reservas, cuyo importe es mayor al tercio del capital social pagado, tal como detallamos a continuación, en miles de soles:

| | |
|---|---|
| **Total pérdidas acumuladas al 31/12/2024** | S/349,522 |
| **Total reservas al 31/12/2024** | - |
| **1/3 del capital social pagado al 31/12/2024** | S/276,870 |

El cálculo mostrado en el cuadro precedente puede ser verificado por la Comisión con la información financiera y contable auditada por PricewaterhouseCoopers al 31 de diciembre de 2024 que se encuentra adjunta a la presente solicitud.

Siendo ello así, se adjunta a la presente solicitud, a manera de anexos, toda la información prevista en el artículo 25 de la LGSC, la cual tiene

carácter de declaración jurada, de conformidad con lo dispuesto en el artículo 10.1 de la LGSC.

**POR TANTO:**

Solicitamos a la Comisión admitir la presente solicitud y declarar, a la brevedad posible y dentro del plazo máximo legal, la situación de concurso y disponer la publicación del inicio del Procedimiento Concursal Ordinario de TDP en el Boletín Concursal.

**PRIMER OTROSÍ DECIMOS:** Que, de conformidad con lo dispuesto en el artículo 25 de la LGSC, se adjunta a la presente solicitud los siguientes documentos:

**ANEXO 1:**  Copia de la primera página del Libro de Actas de Directorio de TDP y de las fojas correspondientes al Acta de la Sesión de Directorio de TDP, de fecha 14 de febrero de 2025, mediante la cual se acordó el acogimiento de dicha empresa al Procedimiento Concursal Ordinario, y se otorgaron poderes a los señores Elena Eloisa Maestre Tinao, identificada con Carné de Extranjería No. 006104492, Alvaro Ignacio Parisi, identificado con Carné de Extranjería No. 005483684y Christiann Antonio Hudtwalcker Zegarra, identificado con Documento Nacional de Identidad No. 10221403, para que en nombre y representación de TDP, cualquiera de ellos de manera individual, puedan tramitar el inicio del referido Procedimiento. Asimismo, se adjunta como parte de este Anexo, copia simple del Documento Nacional de Identidad o Carné de Extranjería de los mencionados representantes. Se adjunta también <u>copia del Estatuto Social de TDP y sus modificaciones donde consta en el artículo 32 que es el Directorio el órgano competente para autorizar el ingreso de TDP a un procedimiento concursal ordinario</u>.

**ANEXO 2:**  Informe suscrito por el representante legal y por contador público colegiado, que acredita que las pérdidas acumuladas de TDP, deducidas sus reservas, no superan al total de su capital social pagado y por tanto habilita a TDP a pedir el Procedimiento Concursal Ordinario con reestructuración patrimonial.

**ANEXO 3:**  Resumen Ejecutivo fundamentando el inicio del Procedimiento Concursal Ordinario y en el que se especifican también los mecanismos y requerimientos necesarios para hacer viable su reflotamiento, y una proyección preliminar de sus resultados y flujo de caja por un período de dos (2) años.

**ANEXO 4:**  Información general relativa a TDP: Denominación social, actividad económica, domicilio y Ficha RUC.

**ANEXO 5:**   Copia de la documentación financiera auditada de TDP correspondiente a los dos últimos ejercicios (2023 y 2024), conteniendo la siguiente información: (i) Estados de Situación Financiera; (ii) Estados de Resultados Integrales; (iii) Estados de Flujos de Efectivo; y, (iv) Estados de Cambios en el Patrimonio Neto. Los Estados de Situación Financiera auditados cuentan con dictamen sin salvedades.

**ANEXO 6:**   Información acerca de las fuentes de financiamiento a las que TDP ha accedido en los dos (2) últimos ejercicios (2023 y 2024), así como la forma en que se ha acordado el retorno de dicho financiamiento.

**ANEXO 7:**   Información del PDT 0601 – Planilla Electrónica – PLAME correspondientes al mes de enero de 2025, mes anterior a la presentación del presente escrito, y la constancia de presentación electrónica respectiva.

Cabe señalar que, tomando en consideración lo señalado en el artículo 85 del Código Tributario[1] que dispone el carácter reservado de la información referida a la cuantía y la fuente de las rentas cuando estén contenidos en las declaraciones e informaciones que SUNAT obtenga por cualquier medio de los contribuyentes -como el caso de la planilla electrónica- no se está presentando copia del PDT 0601, ello además por motivos de seguridad de los trabajadores de TDP para evitar una innecesaria exposición considerando el contexto actual que se viene atravesando en el país; sin embargo, el Anexo 7 del presente escrito contiene la información agregada del referido PDT por categoría de trabajador donde consta el número total de sus trabajadores por categoría y el importe total de la planilla a enero del 2025.

**ANEXO 8:**   Relación detallada de todas las obligaciones de TDP a diciembre de 2024, indicando respecto de cada acreedor: (i) identidad (nombre o denominación social); (ii) domicilio; (iii) monto adeudado por capital (cabe señalar que las obligaciones no han generado intereses ni gastos); y, (iv) fecha de vencimiento de cada obligación en los casos en que ésta se haya pactado o establecido.

Se incluye como parte del presente anexo, la relación a las obligaciones de carácter contingente a diciembre de 2024, con precisión de la posición de cada parte.

---

[1]   **CÓDIGO TRIBUTARIO**
Artículo 85°.- RESERVA TRIBUTARIA  Tendrá carácter de información reservada, y únicamente podrá ser utilizada por la Administración Tributaria, para sus fines propios, la cuantía y la fuente de las rentas, los gastos, la base imponible o, cualesquiera otros datos relativos a ellos, cuando estén contenidos en las declaraciones e informaciones que obtenga por cualquier medio de los contribuyentes, responsables o terceros, así como la tramitación de las denuncias a que se refiere el Artículo 192°.

**ANEXO 9:** Relación de bienes muebles e inmuebles de TDP a diciembre de 2024, así como de las cargas y gravámenes que recaen sobre los mismos, titulares y montos de dichas cargas y gravámenes, si fuera el caso. El criterio de valorización utilizado ha sido a valor contable.

**ANEXO 10:** Relación de las cuentas por cobrar a diciembre de 2024, indicando la posibilidad de su recuperación.

**ANEXO 11:** Copia simple de la documentación que acredita a TDP como contribuyente activo de la Superintendencia Nacional de Aduanas y de Administración Tributaria (SUNAT).

**ANEXO 12:** Declaración jurada de vinculación con acreedores de TDP, conforme a los supuestos establecidos en el artículo 12 de la LGSC.

La información y documentos contenidos en los anexos antes detallados también se encuentran disponibles en el siguiente LINK.

TDP declara que la información de los Anexos 8, 9 y 10 se encuentra al 31 de diciembre de 2024, es decir tiene una antigüedad no mayor de dos (2) meses de la fecha de presentación de la presente solicitud y está conciliada con los estados financieros auditados al 31 de diciembre de 2024.

Asimismo, se deja constancia que la información y documentación adjunta se encuentra suscrita por la representante legal de TDP autorizada, Elena Eloisa Maestre Tinao, y que la documentación indicada en el Anexo 5 se encuentra además suscrita por el Contador Público Colegiado No. 18646, Marcos Serra Benavides.

**SEGUNDO OTROSÍ DECIMOS:** Se adjunta a la presente, el documento que acredita el pago de la tasa administrativa correspondiente.

Lima, 24 de febrero de 2025

**TELEFÓNICA DEL PERÚ S.A.A.**
Elena Eloisa Maestre Tinao

## **EXHIBIT B-1**

**PCO Petition Filing Certificate (Certified English Translation)**

# COLEGIO DE TRADUCTORES DEL PERÚ
### Creado por Ley N° 26684

**MAYRA MILAGROS ALAYO RUBIO**
**CTP N.° 0773**
**Certified Translator**
**Spanish – English – French – Portuguese**

# CERTIFIED TRANSLATION
# CT No. 0060-2025

**ACKNOWLEDGMENT OF RECEIPT 2025-V01-021641**



Mayra M. Alayo Rubio
CTP N° 0773

N° 0742533

Valor 3.50 Soles

VER INDICACIONES AL REVERSO



**ADVERTENCIA**

El presente documento está impreso con medidas de seguridad en papel sensibilizado resistente a solventes químicos contra falsificaciones y adulteraciones. Cualquier reacción o enmendadura anulará la validez del mismo. Para verificar su autenticidad deberá:

- Ver al trasluz la marca de agua TGS.
- Frotar con un papel blanco la orla decorativa para verificar que manche.
- Exponer el documento a la luz ultra violeta, utilizada para la verificación de billetes, a fin de visualizar las fibrillas impregnadas dentro de la masa del papel.
- Verificar si la numeración de color rojo impresa en el documento ha penetrado la masa del papel y se puede ver en el reverso. Es imposible removerla.



**MAYRA MILAGROS ALAYO RUBIO**
CTP No. 0773
Certified Translator

CERTIFIED TRANSLATION No. 0060-2025

Page 1 of 1

---

## VIRTUAL OFFICE OF DOCUMENTARY PROCEDURES

**Hello, Christiann Antonio!**

We have received your document with acknowledgment of receipt number: **2025-V01-021641**, on February 24, 2025 at 9:33:46 a.m.

### 1. SENDER

Identity Document
**Voter Registration Card (LE) / National Identity Card (DNI) 10221403**

E-mail
**CHRISTIANN.HUDTWALCKER@TELEFONICA.COM**

Full name
**CHRISTIANN ANTONIO HUDTWALCKER ZEGARRA**

Telephone
**51998910926**

Are you a representative?
**Yes**

Represented Company
**Tax ID Number (RUC): 20100017491 – TELEFONICA DEL PERU SAA**

### 2. DESTINATION AGENCY

Office or Location
**LIMA SOUTH OFFICE – SAN BORJA**

Agency
**BANKRUPTCY PROCEEDINGS COMMISSION**

### 3. DOCUMENTS SENT

No.   File

01.   **Petition for Commencement of Ordinary Bankruptcy Proceeding with Restructuring – VF 4926-0690-6399 v. 2.pdf**

02.   **Proof of Payment of Fees (Constancia de Pago de Tasa.pdf)**

Yours sincerely,

**VIRTUAL** OFFICE OF DOCUMENTARY PROCEDURES

Note: Automatic Message, please do not reply.

Virtual Office of Documentary Procedures. All rights reserved, 2025.





I, the undersigned Certified Translator, Member of the Peruvian Association of Professional Licensed Translators (CTP), do hereby certify that this Certified Translation, consisting of __ pages, is a true and correct translation into English of the original document in _Spanish_ enclosed herewith which has been produced before me.

This certification shall be considered an acknowledgment of the accuracy of the translation but not of the authenticity or contents of the document in source language attached hereto.

Signed in Lima, this 25th day of _February 2025_

Mayra M. Alayo Rubio
CTP N° 0773

**EXHIBIT B-2**

**PCO Petition Filing Certificate (Original)**



# ¡Hola Christiann Antonio!

Hemos recibido tu documento con cargo número: **2025-V01-021641**, el día 24/02/2025 a las 21:33:46h.

## 1. REMITENTE

| | |
|---|---|
| Documento | Correo |
| **LE/DNI - 10221403** | **CHRISTIANN.HUDTWALCKER@TELEFONICA.COM** |

Nombres y Apellidos
**CHRISTIANN ANTONIO HUDTWALCKER ZEGARRA**

| | |
|---|---|
| Teléfono | Es representante |
| **51998910926** | **SI** |

Representado
**RUC: 20100017491 - TELEFONICA DEL PERU SAA**

## 2. DEPENDENCIA DESTINO

Sede o Local
**SEDE LIMA SUR - SAN BORJA**

Dependencia
**COMISIÓN DE PROCEDIMIENTOS CONCURSALES**

## 3. DOCUMENTOS ENVIADOS

| N° | Archivo |
|---|---|
| **01.** | **Solicitud de Inicio PCO con Reestructuracio´n - VF 4926-0690-6399 v. 2.pdf** |
| **02.** | **Constancia Pago de Tasa.pdf** |

Cordialmente,



Nota: Mensaje Automático, por favor no responder.

## **EXHIBIT C-1**

**Board Resolutions Appointing Foreign Representative (Certified English Translation)**

# COLEGIO DE TRADUCTORES DEL PERÚ
## Creado por Ley Nº 26684

**MAYRA MILAGROS ALAYO RUBIO**
CTP N.° 0773
Certified Translator
Spanish – English – French – Portuguese

# CERTIFIED TRANSLATION
# CT No. 0058-2025

**MINUTES OF THE MEETING OF THE BOARD OF DIRECTORS
OF TELÉFONICA DEL PERÚ S.A.A.**



Mayra M. Alayo Rubio
CTP Nº 0773

Nº 0742531

Valor 3.50 Soles

VER INDICACIONES AL REVERSO

**ADVERTENCIA**

El presente documento está impreso con medidas de seguridad en papel sensibilizado
resistente a solventes químicos contra falsificaciones y adulteraciones. Cualquier reacción
o enmendadura, anulará la validez del mismo. Para verificar su autenticidad deberá:

- Ver al trasluz la marca de agua TGS.
- Frotar con un papel blanco la orla decorativa para verificar que manche.
- Exponer el documento a la luz ultra violeta, utilizada para la verificación de
  billetes, a fin de visualizar las fibrillas impregnadas dentro de la masa del papel.
- Verificar si la numeración de color rojo impresa en el documento ha penetrado
  la masa del papel y se puede ver en el reverso. Es imposible removerla.



**MAYRA MILAGROS ALAYO RUBIO**
CTP No. 0773
Certified Translator

CERTIFIED TRANSLATION No. 0058-2025

Page 1 of 3

### MINUTES OF THE MEETING OF THE BOARD OF DIRECTORS OF TELÉFONICA DEL PERÚ S.A.A.

**BOARD MEETING 2025.** In the city of Lima, on February 25, 2025, at 12:30 p.m., a meeting of the Board of Directors of TELEFÓNICA DEL PERÚ S.A.A. (hereinafter, the "Company") was held under the chairmanship of Elena Eloisa MAESTRE TINAO and with the participation of José Luis GOMEZ-NAVARRO NAVARRETE, Jose Maria DEL REY OSORIO, Bernardo QUINN and Eduardo CARIDE, who constitute all the members of the Board of Directors. It is placed on record that the meeting was held virtually through Microsoft Teams. Alfonso GÓMEZ PALACIO, representative of the controlling shareholder TELEFÓNICA HISPANOAMÉRICA, S.A., was invited to attend the meeting.

Álvaro PARISI, Christiann HUDTWALCKER ZEGARRA and Milagros MUÑOZ BAZÁN were also invited. The meeting was presided over by the Chief Executive Officer Elena Eloísa MAESTRE TINAO, a Spanish citizen, holder of Alien Registration Card (CE) 006104492, and Milagros Elena MUÑOZ BAZÁN, holder of National Identity Card (DNI) 08256183, acted as Secretary.

The Chairman declared the meeting of the Board of Directors to be validly called to order to deal with the matters on the agenda.

The Secretary read the following AGENDA:



I.   APPROVAL OF MINUTES.

II.   APPOINTMENT OF REPRESENTATIVE FOR THE FILING OF A PETITION FOR RECOGNITION OF FOREIGN PROCEEDING UNDER CHAPTER 15 IN THE UNITED STATES.

III.   CAPITALIZATION OF CREDITS GRANTED BY TELEFÓNICA HISPANOAMÉRICA, S.A. WITH THE CORRESPONDING CAPITAL INCREASE.

IV.   PROCEDURE FOR PREEMPTIVE SUBSCRIPTION RIGHTS AND INCREASE OF CAPITAL STOCK BY NEW CONTRIBUTIONS.

The meeting then proceeded in accordance with the agenda.

### I.   APPROVAL OF MINUTES

The Board of Directors approved the minutes of the meeting held on February 14, 2025.

### II.   APPOINTMENT OF REPRESENTATIVE FOR THE FOR THE FILING OF A PETITION FOR RECOGNITION OF FOREIGN PROCEEDING UNDER CHAPTER 15 IN THE UNITED STATES

The Chairwoman reported that, in accordance with the resolution adopted by the Board of Directors on February 14, the Company plans to file a petition for the ordinary bankruptcy restructuring procedure before the Bankruptcy Proceedings Commission of

**MAYRA MILAGROS ALAYO RUBIO**
CTP No. 0773
Certified Translator

CERTIFIED TRANSLATION No. 0058-2025

Page 2 of 3

the National Institute for the Defense of Free Competition and the Protection of Intellectual Property (INDECOPI), which has required a great effort considering the volume of the Company's operations.

She then informed that, as the Board of Directors is aware, on April 10, 2019 the Company issued an international bond under US law in the amount of PEN 1,700,000,000.00 (One Billion Seven Hundred Million and 00/100 Soles), maturing in April 2027.

She emphasized that, in consideration of such international issuance, it was convenient for the Company to initiate a Chapter 15 proceeding before a U.S. Bankruptcy Court in order to give effect to and recognize in such jurisdiction the ordinary bankruptcy proceeding initiated before INDECOPI. She referred to the benefits of filing a Chapter 15 proceeding for a foreign issuer that has initiated a bankruptcy proceeding in its respective country.

On this point, the Chair indicated that even though the Company did not have relevant assets in the United States, it was convenient to carry out such proceeding before the U.S. court in order to ensure that the Peruvian bankruptcy proceeding would become the negotiation forum with all bondholders, regardless of the place of issuance of the respective program.

She also indicated that for such purpose, contact was established with the law firm White & Case LLP, which has a great deal of experience in restructuring matters and, in particular, in the homologation of restructuring processes of telecommunications companies in Latin American countries. As a consequence of the above, the Chair submitted for consideration of the Board of Directors the authorization to initiate a procedure for the recognition of the local ordinary insolvency proceeding under Chapter 15 in the United States, as well as the appointment of a Foreign Representative or the purposes of such proceeding.



After discussion, the Board of Directors unanimously adopted the following resolution

**RESOLUTION:**

1. Authorize the Company to: (i) initiate a recognition proceeding under Chapter 15 before the U.S. Bankruptcy Court to recognize the effects of the ordinary bankruptcy restructuring proceeding (PCO - R) that is filed locally before the National Institute for the Defense of Free Competition and the Protection of Intellectual Property (INDECOPI) in Peru; and, (ii) perform all acts, steps and measures necessary or appropriate for the filing of a petition for recognition of the PCO - R under Chapter 15 before the U.S. Bankruptcy Court in order for it to be approved.

2. Appoint Timothy O'CONNOR, a U.S. citizen, holder of Passport A05626305, as Foreign Representative of the Company and of the ordinary bankruptcy

**MAYRA MILAGROS ALAYO RUBIO**
CTP No. 0773
Certified Translator

CERTIFIED TRANSLATION No. 0058-2025

Page 3 of 3

proceeding as defined in Section 101 (24) of Title 11 of the U.S. Bankruptcy Code, who is vested with specific powers to bind the Company and to represent it before the U.S. Bankruptcy Court and other pertinent authorities, including the filing of petitions available to a Foreign Representative under Chapter 15 of the U.S. Bankruptcy Code or other applicable rules. Mr. O'Connor, in his capacity as Foreign Representative, is hereby authorized to take all necessary actions and enforce such agreements, letters, notices, appointments of agents for the receipt or service of legal proceedings and other documents as may be required or deemed appropriate to: (i) support and promote the implementation of the Company's ordinary bankruptcy restructuring proceeding in the United States, including the recognition and enforcement of such ordinary bankruptcy proceeding as a foreign main or non-main proceeding, as well as the implementation of any reorganization plan approved by creditors in such ordinary bankruptcy proceeding, in each case under Chapter 15 of the U.S. Bankruptcy Code or other applicable law, and (ii) commence and conduct a proceeding with respect to the Company under Chapter 15 of the U.S. Bankruptcy Code or other applicable law.

3.   Authorize the engagement of the law firm White & Case LLP as legal counsel to the Company in the United States, to file on behalf of the Company a petition for recognition under Chapter 15 in the U.S. Bankruptcy Court, and to take all actions necessary for such petition for recognition to be granted.

(...)

There being no further business to be transacted, this meeting was adjourned at 1:15 p.m. on the same day the meeting began. In accordance with the provisions of the Company's Bylaws, the Chief Executive Officer and the Secretary of the Board of Directors hereunto set their hands.

Elena Eloisa Maestre Tinao                    Milagros Elena Muñoz Bazán

(...)



I, the undersigned Certified Translator, Member of the Peruvian Association of Professional Licensed Translators (CTP), do hereby certify that this Certified Translation, consisting of 2 pages, is a true and correct translation into English of the original document in Spanish enclosed herewith which has been produced before me.

This certification shall be considered an acknowledgment of the accuracy of the translation but not of the authenticity or contents of the document in source language attached hereto.
Signed in Lima, this 25th day of February 2025

Mayra M. Alayo Rubio
CTP Nº 0773

## **EXHIBIT C-2**

**Board Resolutions Appointing Foreign Representative (Original)**



02

ACTA DE SESIÓN DE DIRECTORIO DE TELÉFONICA DEL PERÚ S.A.A.

SESIÓN DE DIRECTORIO – 2025. En la ciudad de Lima, el día 25 de febrero de 2025, a las 12:30 horas se llevó a cabo la sesión del Directorio de Telefónica del Perú S.A.A. (en adelante, la "Sociedad") bajo la presidencia de la señora Elena Eloisa Maestre Tinao y con la participación de los señores José Luis Gomez-Navarro Navarrete, Jose Maria Del Rey Osorio, Bernardo Quinn y Eduardo Caride, quienes constituyen la totalidad de los miembros del Directorio. Se deja constancia que la sesión se realizó en forma no presencial a través de Microsoft Teams. El señor Alfonso Gómez Palacio, representante del accionista de control Telefónica Hispanoamérica, S.A., asistió invitado a la sesión.

Asimismo, participaron invitados los señores Álvaro Parisi, Christiann Hudtwalcker Zegarra y Milagros Muñoz Bazán. Presidió la presente sesión la presidenta ejecutiva Elena Eloísa Maestre Tinao, de nacionalidad española, identificada con carné de extranjería N° 006104492 y actuó como Secretaria la señora Milagros Elena Muñoz Bazán, identificada con DNI N° 08256183.

La presidenta declaró válidamente instalada la sesión de Directorio para tratar los asuntos materia de agenda.

El Secretario dio lectura a la siguiente AGENDA:

I.    APROBACIÓN DE ACTA.

II.   NOMBRAMIENTO DE REPRESENTANTE PARA EL INICIO DE PROCEDIMIENTO DE RECONOCIMIENTO BAJO EL CHAPTER 15 EN LOS ESTADOS UNIDOS.

III.  CAPITALIZACIÓN DE CRÉDITOS CONFERIDOS POR TELEFÓNICA HISPANOAMÉRICA, S.A. CON EL CONSIGUIENTE AUMENTO DEL CAPITAL SOCIAL.

IV.   PROCEDIMIENTO DE DERECHO DE SUSCRIPCIÓN PREFERENTE Y AUMENTO DEL CAPITAL SOCIAL POR NUEVOS APORTES.

Acto seguido, se procedió al desarrollo de la sesión de conformidad con la agenda.



03

I.        APROBACIÓN DE ACTA

El Directorio aprobó el acta de la sesión del 14 de febrero de 2025.

## II. NOMBRAMIENTO DE REPRESENTANTE PARA EL INICIO DE PROCEDIMIENTO DE RECONOCIMIENTO BAJO EL CHAPTER 15 EN LOS ESTADOS UNIDOS.

La presidenta dio cuenta que, en ejecución del acuerdo adoptado por el Directorio el 14 de febrero pasado, en la fecha se tiene previsto presentar la solicitud para el acogimiento al procedimiento concursal ordinario de reestructuración ante la Comisión de Procedimientos Concursales del Instituto Nacional de la Competencia y de la Propiedad Intelectual (Indecopi), lo que ha demandado un gran esfuerzo considerando el volumen de las operaciones de la Sociedad.

Seguidamente informó que, como es de conocimiento del Directorio, el 10 de abril de 2019 la Sociedad emitió un bono internacional bajo ley americana por S/ 1,700,000,000.00 (Mil Setecientos Millones y 00/100), con vencimiento a abril de 2027.

Destacó que, en consideración a tal emisión internacional era conveniente que la Sociedad inicie un procedimiento bajo Chapter 15 ante un Tribunal de Quiebras de los Estados Unidos para dar efecto y reconocimiento en tal jurisdicción al procedimiento concursal ordinario iniciado ante INDECOPI. Se refirió a los beneficios de plantear un procedimiento bajo el Chapter 15 para un emisor extranjero que tiene iniciado un procedimiento concursal en su respectivo país.

En este punto, indicó que aún cuando la Compañía no tenía activos relevantes en los Estados Unidos, era conveniente realizar tal procedimiento ante el juzgado norteamericano a fin de lograr que el procedimiento concursal peruano se constituya en el foro de negociación con todos los bonistas, con independencia del lugar de emisión del respectivo programa.

Indicó que para tal efecto, se estableció contacto con la Firma de abogados White & Case LLP, que tiene mucha experiencia en temas de reestructuración y, en particular, en la homologación de procesos de reestructuración de empresas de telecomunicaciones de países latinoamericanos. Como consecuencia de lo expuesto, la presidenta sometió a consideración del Directorio conceder la autorización para el inicio de un procedimiento





**04**

de reconocimiento del procedimiento concursal ordinario local a través de un Chapter 15 en los Estados Unidos, así como la designación de un representante ("*Foreign Representative*") para efectos de tal proceso.

Luego de deliberar al respecto, el Directorio adoptó por unanimidad el siguiente

ACUERDO:

1.      Autoriza a la Sociedad a: i) iniciar un procedimiento de reconocimiento conforme al *Chapter 15* ante el Tribunal de Quiebras de los Estados Unidos para dar reconocer los efectos del procedimiento concursal ordinario (PCO - R) de reestructuración que se presente localmente ante el Instituto Nacional de Competencia y de la Propiedad Intelectual (INDECOPI) en el Perú; y, (ii) realizar todos los actos, pasos y medidas necesarias o apropiadas para la presentación y solicitud de reconocimiento del PCO - R bajo el Chapter 15 ante el Tribunal de Quiebras de los Estados Unidos con el fin de que sea aprobado.

2. Designar al señor Timothy O'Connor, de nacionalidad estadounidense, identificado con Pasaporte N° A05626305, como "Foreign Representative" de la Sociedad y del procedimiento concursal ordinario tal y como se encuentra definido en la sección 101 (24) del Título 11 del Código de Quiebras de los Estados Unidos, a quien se confieren poderes específicos para obligar a la Sociedad y representarla ante el Tribunal de Quiebras de los Estados Unidos y otras autoridades competentes, incluyendo la presentación de las acciones disponibles para un "Foreign Representative" bajo el "Chapter 15" del Código de Quiebras de los Estados Unidos u otras normas que resulten aplicables. El designado señor O'Connor, en su condición de "Foreign Representative", queda autorizado para tomar todas las acciones necesarias y ejecutar acuerdos, cartas, notificaciones, designaciones de agentes para la recepción o notificación de procedimientos legales y otros documentos que sean requeridos o considerados apropiados para: (i) respaldar y promover la implementación del procedimiento concursal ordinario de reestructuración de la Sociedad en los Estados Unidos, incluyendo el reconocimiento y ejecución de dicho procedimiento concursal ordinario como un procedimiento extranjero principal o no principal, así como la ejecución de cualquier plan de reorganización aprobado por los acreedores en el indicado procedimiento concursal ordinario, en cada caso conforme al "Chapter 15" del Código de Quiebras de los Estados Unidos o cualquier otra legislación aplicable, y (ii) iniciar y llevar a cabo un procedimiento





05

con respecto a la Sociedad bajo el "Chapter 15" del Código de Quiebras de los Estados Unidos o cualquier otra legislación aplicable.

3.      Autorizar la contratación del despacho de abogados White & Case LLP como asesor legal de la Compañía en los Estados Unidos, a presentar en nombre de la Sociedad una petición de reconocimiento bajo el "Chapter 15" ante el Tribunal de Quiebras de los Estados Unidos, así como a tomar todas las acciones necesarias para que dicha petición de reconocimiento sea concedida.

III. CAPITALIZACIÓN DE CRÉDITOS CONFERIDOS POR TELEFÓNICA HISPANOAMÉRICA, S.A. CON EL CONSIGUIENTE AUMENTO DEL CAPITAL SOCIAL.

La presidenta ejecutiva cedió el uso de la palabra al señor Alvaro Parisi, quien comentó que, como era de conocimiento de los presentes, con el objetivo de mejorar la posición de liquidez de la Compañía, el 22 de julio de 2024 y el 14 de febrero de 2025 el Directorio aprobó la obtención de dos préstamos mercantiles con Telefónica Hispanoamérica, S.A. por los montos de hasta S/1,529 millones (en adelante, el "Primer Préstamo") y S/1,549 millones (en adelante, el "Segundo Préstamo".

En cumplimiento de lo pactado, Telefónica Hispanoamérica, S.A. efectuó los siguientes desembolsos a Telefónica del Perú S.A.A.:

a)      Préstamo de S/1,529,000,0000.00, íntegramente desembolsado, capitalizado parcialmente el 28 de octubre de 2024 por S/1,238,794,178.91, en las oportunidades que se indican a continuación:

| Desembolso | Importe S/ | Fecha desembolso | Fecha desembolso |
|---|---|---|---|
| Primero | 80,000,000.00 | 26/07/2024 | Capitalizado 28/10/2024 |
| Segundo | 180,000,000.00 | 25/09/2024 | Capitalizado 28/10/2024 |
| Tercero | 180,000,000.00 | 26/09/2024 | Capitalizado 28/10/2024 |
| Cuarto | 200,000,000.00 | 2/10/2024 | Capitalizado 28/10/2024 |
| Quinto | 220,000,000.00 | 3/10/2024 | Capitalizado 28/10/2024 |
| Sexto | 220,000,000.00 | 4/10/2024 | Capitalizado 28/10/2024 |
| Setimo | 84,000,000.00 | 7/10/2024 | Capitalizado 28/10/2024 |
| Octavo | 74,794,178.91 | 10/10/2024 | Capitalizado 28/10/2024 |
| Octavo - saldo | 60,205,821.09 | 10/10/2024 | Importe pendiente |
| Noviembre | 230,000,000.00 | 14/02/2025 | Importe pendiente |
|  | 1,529,000,000.00 |  |  |





06

b)   Préstamo de S/1,549,000,0000.00, respecto del cual el 20 de febrero de 2025 se recibió un primer desembolso de S/43,000,000.00.

Seguidamente dio cuenta que la Junta General de Accionistas del 26 de noviembre de 2024, al amparo de lo establecido en el numeral 2 del artículo 206° de la Ley General de Sociedades, delegó en el Directorio la facultad de acordar uno o varios aumentos de capital hasta por un monto de S/1,818,873,480.24 mediante nuevos aportes dinerarios y/o no dinerarios y/o capitalización de créditos contra la Compañía, realizados por accionistas o terceros, en un plazo máximo de 5 años en las fechas, montos, términos, condiciones y procedimientos que en cada oportunidad determine el Directorio, sin necesidad de realizar previa consulta a la Junta General de Accionistas.

Precisó que al 25 de febrero de 2025 la Sociedad tiene créditos por pagar a Telefónica Hispanoamérica, S.A. por la suma total de S/337,251,865.30, compuesto por S/333,205,821.09 de principal desembolsado por dicho accionista Telefónica Hispanoamérica, S.A. y S/4,046,044.21 por intereses devengados y registrados contablemente a esa fecha, motivo por el cual, se propone al Directorio: (i) capitalizar el íntegro de los intereses devengados hasta por la suma de S/2,832,230.95 que es el importe neto de los intereses después de haber efectuado la retención del impuesto a la renta de no domiciliados aplicable sobre tales intereses devengados (que asciende a S/1,213,813.26) y, (ii) capitalizar respecto del principal, el monto de S/331,542,769.05, dejando constancia que queda un saldo por pagar de principal a la fecha de S/1,663,052.04 de los créditos que mantiene Telefónica Hispanoamérica, S.A. contra la Sociedad.

Destacó que el importe total destinado a la capitalización sería de S/334,375,000.00 - neto del impuesto a la renta retenido a la misma para el pago a la autoridad tributaria por los intereses devengados-; y, (ii) las aportaciones dinerarias que efectúen los accionistas distintos a Telefónica Hispanoamérica, S.A. o las personas a las que éstos transfieran su derecho de suscripción preferente (en adelante, los "Titulares") que ejerzan el derecho de suscripción preferente conforme a lo dispuesto en los artículos 207° y 214° de la LGS, hasta por el importe máximo que les permita mantener la participación que a la fecha tienen en el capital.

De los S/334,375,000.00 a capitalizar, el precio a pagar por acción será de S/1.07 siendo que S/0.16 se destinarán al pago y suscripción del valor nominal y con la consiguiente creación de una prima de S/0.91 por cada acción a suscribirse-, de modo que el importe





07

de S/50,000,000.00 se destinará a la cuenta capital social y la suma de S/284,375,000.00 a la creación de una prima de capital, emitiéndose 312,500,000 nuevas acciones Clase B nominativas de valor nominal de S/0.16 cada una que serán suscritas por Telefónica Hispanoamérica, S.A.

El importe máximo que podrían pagar los Titulares en atención a su participación en el capital social de la Sociedad sería de hasta S/2,301,242.58. Para efectos de la conversión y la determinación del número de acciones a ser emitidas a favor de Telefónica Hispanoamérica, S.A. se ha utilizado como criterio afectar de manera mínima a los accionistas minoritarios y fijar un precio de suscripción con una prima de capital que tiene por función fortalecer el patrimonio de la Sociedad y proponer a la junta general que pueda ser aplicada a absorber las pérdidas reflejadas en los estados financieros de la Sociedad en la fecha que lo determine el Directorio, con el objetivo de poder mantener el equilibrio patrimonial de la Sociedad y asegurar que la misma pueda seguir operando en condición de regularidad, dado que la prima de capital se registrará de manera inmediata como parte del patrimonio sin exceder los límites autorizados por la junta general en la delegación de facultades para aumentos de capital otorgadas al Directorio con fecha 26 de noviembre de 2024, procurando además que el accionista mayoritario Telefónica Hispanoamérica, S.A. afronte dichas pérdidas con el menor perjuicio y dilución posible para los Titulares. Como resultado de lo anterior se emitirá una (1) acción de un valor nominal de S/0.16 (0.16 céntimos de Sol) por cada S/1.07 que se capitalice. En tal sentido, el precio a pagar por acción tanto por Telefónica Hispanoamérica, S.A. como por los Titulares será de S/1.07 lo que conlleva una prima de S/0.91 por cada acción a suscribirse. En consecuencia, como resultado del referido aumento de capital por nuevos aportes en efectivo de los Titulares, el capital de la Sociedad se podrá incrementar hasta en la suma de S/344,111.04 y se destinaría a la prima de capital un importe de hasta S/1,957,131.54, pudiendo emitirse hasta 2,139,157 nuevas acciones Clase B y 11,537 nuevas acciones Clase C nominativas de valor nominal de S/0.16 cada una.

Como consecuencia de la capitalización de créditos y de los nuevos aportes que podrían efectuarse, el capital social de la Sociedad podría aumentar de la suma actual de S/830,610,436.96 (ochocientos treinta millones seiscientos diez mil cuatrocientos treinta y seis con 96/100 Soles), hasta la nueva suma de S/880,954,548.00 (ochocientos ochenta millones novecientos cincuenta y cuatro mil quinientos cuarenta y ocho con 00/100 Soles), en caso la totalidad de los Titulares ejerciera su derecho de suscripción preferente. En este punto, el señor Parisi destacó que el aumento de capital conllevaría beneficios muy relevantes para la Sociedad, toda vez que (i) fortalecería su patrimonio; (ii) reduciría



08

sustancialmente su endeudamiento financiero; y (iii) proporcionará una estructura de capital adecuada. Destacó que en la medida que el aumento de capital se ofrece en igualdad de condiciones para todos los accionistas, no se pone de manifiesto la existencia de un posible conflicto de interés derivada de la participación del accionista de control.

Se informó al Directorio que en esta oportunidad conforme a ley no se requería contar con un Informe previo de valorización al amparo del artículo 53 c de la Ley del mercado de Valores en la medida que el monto de la capitalización ni supera el umbral establecido, cual es el 5% de los activos de la Sociedad de acuerdo con los estados financieros auditados al 31 de diciembre de 2024.

Por último, el señor Hudtwalcker intervino para reiterar que de procederse con tal capitalización, de acuerdo a ley correspondería que el Directorio habilite el derecho de suscripción preferente contemplado en la LGS a los accionistas distintos a Telefónica Hispanoamérica, S.A. o las personas a las que éstos transfieran su derecho de suscripción preferente (en adelante, "los Titulares"), quienes podrían realizar nuevos aportes en efectivo y recibir acciones de un valor nominal de S/0.16 cada una a su favor, conforme se detallará en el siguiente punto de agenda.

Ante ello, el señor Alfonso Gómez Palacio, en representación de Telefónica Hispanoamérica, S.A. manifestó su conformidad a la capitalización en los términos señalados respecto de los montos que adeuda la Sociedad a la fecha a su representada y declaró que, de aprobarse el acuerdo, el Primer Préstamo quedaría íntegramente cancelado, y el Segundo Préstamo quedarían parcialmente cancelado.

Luego de deliberar al respecto, el Directorio adoptó por unanimidad el siguiente

ACUERDO:

1.      Emitir opinión favorable a la capitalización de los créditos que mantiene a la fecha Telefónica Hispanoamérica, S.A. contra la Sociedad para efectos del cumplimiento de lo dispuesto artículo 214° de la LGS de cara a sustentar la conveniencia para la Sociedad de recibir tales aportes.

2.      Aprobar el aumento del capital social por la capitalización de los créditos que mantiene Telefónica Hispanoamérica, S.A. contra la Sociedad, específicamente del monto de S/334,375,000,00. Como consecuencia de ello, el precio a pagar por acción será de





S/1.07, lo que conlleva una prima de S/0.91 por cada acción a suscribirse. Como resultado de la capitalización de créditos antes indicada se aumentará el capital de la Sociedad en el importe de S/50,000,000.00, la suma de S/284,375.000.00 se destinará a la prima de capital y se emitirán 312,500,000 nuevas acciones Clase B nominativas de valor nominal de S/0.16 cada una que serán suscritas por Telefónica Hispanoamérica, S.A.

Se deja constancia de lo siguiente:

(i)     El Directorio adopta el presente aumento de capital por capitalización de créditos de conformidad con el numeral 2 del artículo 202° de la LGS, en consideración a la delegación de facultades efectuada por la junta general de accionistas del 26 de noviembre de 2024 y previo cumplimiento de lo dispuesto en el artículo 214° de la LGS.

(ii)    El representante de Telefónica Hispanoamérica, S.A., señor Alfonso Gómez Palacio, ha dejado constancia expresa en la presente sesión de la decisión de su representada de capitalizar el íntegro del Primer Préstamo y de la capitalización parcial del Segundo Préstamo que mantiene contra la Sociedad, en los términos señalados en el presente acuerdo.

(iii)   El Primer Préstamo queda íntegramente cancelado, en tanto que el Segundo Préstamo parcialmente cancelado por Telefónica del Perú S.A.A. a Telefónica Hispanoamérica, S.A. y, conforme a lo pactado, la primera retendrá a la segunda la suma de S/1,213,813.26 para efectos de la cancelación por cuenta de ésta del Impuesto a la Renta a su cargo.

(iv)    De conformidad con lo dispuesto en el artículo 214° y segundo párrafo 213° de la LGS, el presente acuerdo de aumento de capital por capitalización de créditos contra la Sociedad reconocerá el derecho de los Titulares de realizar aportes dinerarios por un monto que les permita ejercer su derecho de suscripción preferente para mantener su proporción en la participación en el capital social, en estricta aplicación de lo señalado en el artículo 5° del estatuto social, el artículo 207° y siguientes de la LGS. Se deja constancia que el accionista Telefónica Hispanoamérica, S.A., a través de su representante en la presente sesión, reconoce que no le corresponde derecho de suscripción preferente alguno con motivo del aumento de capital por aportes dinerarios, sin perjuicio de lo cual cumple con manifestar su renuncia a cualquier derecho de preferencia que le pudiera corresponder.



10

3.    Aumentar el capital social de la Sociedad por nuevos aportes en efectivo con motivo del ejercicio del derecho de suscripción preferente por parte de los Titulares, considerando un aporte en efectivo de hasta S/2,301,242.58 y la creación de nuevas acciones representativas del capital social de la Sociedad, conforme con el siguiente detalle: hasta 2,139,157 acciones Clase B de un valor nominal de S/0.16 cada una y hasta 11,537 acciones Clase C de un valor nominal de S/0.16 cada una. Se deja constancia que el precio a pagar por acción será de S/1.07 lo que conlleva una prima de S/0.91 por cada acción a suscribirse.

Como resultado del referido aumento de capital por nuevos aportes en efectivo, el capital de la Sociedad se podrá incrementar hasta en la suma de S/344,111.04 y se destinaría a la prima de capital un importe de hasta S/1,957,131.54

Como consecuencia de la capitalización de créditos referida y de los nuevos aportes que podrían efectuarse conforme a lo mencionado en el numeral 3 anterior, el capital social de la Sociedad podría aumentar de la suma actual de S/830,610,436.96 hasta la nueva suma de S/880,954,548.00), en caso la totalidad de los accionistas distintos a Telefónica Hispanoamérica, S.A. ejerciera su derecho de suscripción preferente.

4.    El número total de acciones con derecho a participar en la suscripción asciende a 35,483,583 dentro de las que se incluyen acciones Clase B por un número de 35,293,237 y Clase C por un número de 190,346.

5. Las nuevas acciones podrán ser suscritas y pagadas por los Titulares. En este sentido, el número total de acciones con derecho a participar en la suscripción asciende a 2,150,694.

IV. PROCEDIMIENTO DE DERECHO DE SUSCRIPCIÓN PREFERENTE Y AUMENTO DEL CAPITAL SOCIAL POR NUEVOS APORTES.

A continuación, el señor Parisi señaló que, como consecuencia del acuerdo de aumento de capital social adoptado en el punto anterior de la agenda en ejecución de las facultades delegadas por la Junta General de Accionistas del 26 de noviembre de 2024, corresponde al Directorio aprobar el procedimiento aplicable para el ejercicio del derecho de suscripción preferente relativo a los Titulares. A estos efectos, la presidenta propuso a los directores aprobar el procedimiento cuyo texto se encuentra adjunto a la



presente acta en calidad de Anexo N° 1, el mismo que se pone a disposición de los Directores.

Luego de deliberar al respecto, el Directorio aprobó por unanimidad el siguiente

ACUERDO:

1.      Aprobar el procedimiento de aumento de capital y ejercicio del Derecho de Suscripción Preferente, Fecha de Corte, Registro y Entrega y otros procedimientos correspondientes según las leyes aplicables, adjunto a la presente acta en calidad de Anexo N° 1.

2.      Encargar a la señora Elena Eloísa Maestre Tinao, de nacionalidad española, identificada con carné de extranjería N° 006104492; Alvaro Parisi, de nacionalidad argentina, identificado con carné de extranjería N° 005483684; Marcos David Serra Benavides, identificado con Documento Nacional de Identidad N° 09396959; Renzo Ignacio Contreras Palacios, identificado con Documento Nacional de Identidad N° 44277603; Christiann Antonio Hudtwalcker Zegarra, con Documento Nacional de Identidad N° 10221403; y, Milagros Elena Muñoz Bazán identificada con Documento Nacional de Identidad N° 08256183, la publicación del aviso, la emisión de los certificados de suscripción preferente y de la constancia de suscripción, así como de cuantos documentos se requieran de conformidad con los artículos 208°, 209°, 211° y siguientes de la LGS, sin que el presente encargo pueda considerarse insuficiente o restringido porque es voluntad expresa del Directorio conferir a los referidos funcionarios los más amplios poderes para la ejecución de los acuerdos adoptados en la presente sesión. Asimismo, se les encarga las funciones de complementar y/o precisar cualquier información relacionada con el proceso de suscripción preferente que corresponda de acuerdo con las leyes aplicables o sea requerido por la Bolsa de Valores de Lima, la Superintendencia del Mercado de Valores, CAVALI S.A. ICLV, SUNARP o cualquier otra entidad, pública o privada, que sea competente.



No existiendo más asuntos a tratar se dio por concluida la presente reunión, siendo las 13:15 horas del mismo día en que inició la Sesión. De acuerdo con lo establecido en el estatuto social suscriben la presente acta la presidenta ejecutiva y quien actuó como secretaria del Directorio.


Elena Eloisa Maestre Tinao                    Milagros Elena Muñoz Bazán



**13**

ANEXO N° 1

Procedimiento de Aumento de Capital y Ejercicio del Derecho de Suscripción
Preferente, Fecha de Corte, Registro y Entrega y otros procedimientos correspondientes
según las leyes aplicables

El presente procedimiento de suscripción preferente está referido al aumento de capital
por nuevos aportes acordado en sesión de directorio de fecha 25 de febrero de 2025, en
virtud del cual se aprobó un aporte de hasta S/2,301,242.58, con la consiguiente emisión
de hasta 2,139,157 acciones Clase B de un valor nominal de S/0.16 cada una y de hasta
11,537 acciones Clase C de un valor nominal de S/0.16 cada una. Considerando que el
precio a pagar por acción será de S/1.07, que conlleva una prima de S/0.91 por cada
acción a suscribirse, el aumento del capital de la Sociedad será hasta por la suma total de
S/880,954,548.00 (Ochocientos ochenta millones novecientos cincuenta y cuatro mil
quinientos cuarenta y ocho con 00/100 Soles) y se destinaría a la prima de capital un
importe de hasta S/1,957,131.54.

El procedimiento de suscripción será el siguiente:

Monto del aumento de capital por nuevos aportes acordado:

Aporte dinerario hasta por la suma de S/2,301,242.58. Como consecuencia de ello, a
continuación, se detalla el monto máximo a pagar y suscribir por cada clase de acciones
representativas del capital social de la Sociedad:

| Clase | Monto máximo a pagar S/ | Monto máximo destinado a capital S/ | Monto máximo destinado a prima de capital S/ | Número máximo de Acciones a Suscribir (en adelante, las "Acciones") |
|---|---|---|---|---|
| Clase B | 2,288,897.99 | 342,265.12 | 1,946,632,87 | 2,139,157 |
| Clase C | 12,344.59 | 1,845.92 | 10,498.67 | 11,537 |

Número de Acciones con derecho a participar:

Las acciones deberán ser suscritas por los accionistas, excepto el accionista Telefónica
Hispanoamérica, S.A., titular de 5,155,831,648 acciones clase B, ha reconocido que no le
corresponde derecho de preferencia alguno como consecuencia del aumento de capital
por nuevos aportes aprobado en sesión de directorio del 25 de febrero de 2025 en tanto
que el mismo se produce como consecuencia de la capitalización de sus créditos y para
el ejercicio del derecho de suscripción preferente del resto de accionistas para tener la
posibilidad de mantener su proporción en el capital. Sin perjuicio de lo anterior, dicho
accionista ha renunciado de manera expresa a cualquier derecho de suscripción que
pudiera corresponderle.



14

A continuación, se detalla, el número de acciones con derecho a participar en el procedimiento de suscripción preferente:

| Clase | Número |
|-------|--------|
| Clase B* | 35,293,237 |
| Clase C | 190,346 |

Porcentaje de Suscripción

| Clase | Porcentaje de participación respecto del Capital Social | Porcentaje de participación respecto del Aumento por Nuevos Aportes | Porcentaje de Suscripción** |
|-------|------|------|------|
| Clase B* | 0.679852% | 99.463566% | 2.7684% |
| Clase C | 0.003667% | 0.536434% | 2.7684% |

*Se deja constancia que el accionista Telefónica Hispanoamérica, S.A., titular de 5,155,831,648 acciones clase B, ha reconocido que no le corresponde derecho de preferencia alguno como consecuencia del aumento de capital por nuevos aportes aprobado en sesión de directorio del 25 de febrero de 2025 en tanto que el mismo se produce como consecuencia de la capitalización de sus créditos y para el ejercicio del derecho de suscripción preferente del resto de accionistas para tener la posibilidad de mantener su proporción en el capital. Sin perjuicio de lo anterior ha renunciado de manera expresa a cualquier derecho de suscripción que pudiera corresponderle.

**Se deja constancia que el porcentaje de suscripción correspondiente al accionista Telefónica Hispanoamérica, S.A.- titular de 5,155,831,648 acciones clase B – con motivo del acuerdo de capitalización de créditos e intereses que da origen el presente aumento por aportes en efectivo, también es de 2.7684%.

En caso la aplicación de los porcentajes de suscripción, en cualquiera de las ruedas de suscripción, diera como resultado un número de acciones a suscribir que no sea un número entero, aquellos números que contengan decimales serán redondeados al número entero inmediato inferior. En este sentido, la obligación de pago de las acciones suscritas corresponderá al monto total del valor de estas, considerando el redondeo antes mencionado.

Derechos de las Acciones

Las nuevas acciones comunes que se emitan tendrán los mismos derechos que las demás acciones de la Sociedad ya emitidas. Considerando que el capital social está representando en acciones de Clase B y acciones de Clase C, se emitirán las acciones que



**15**

correspondan en la fecha del ejercicio del derecho de suscripción preferente en estricta aplicación del artículo 5° del estatuto social de Telefónica del Perú S.A.A.

Se deja constancia que Telefónica Hispanoamérica, S.A., titular de 5,155,831,648 acciones clase B ha renunciado a cualquier derecho de preferencia que le corresponda como consecuencia del aumento de capital por nuevos aportes aprobado por el directorio conforme a lo señalado precedentemente.

Certificados de Suscripción Preferente:

Los Certificados de Suscripción Preferente (los "Certificados") serán instrumentos nominativos, divisibles, libremente transferibles, total o parcialmente, que expresarán el derecho a suscribir las acciones creadas como consecuencia del aumento de capital por nuevos aportes; y emitidos conforme con lo siguiente:

| Tipo de Certificado | Características |
|---|---|
| Certificados representados en títulos físicos | La Sociedad emitirá Certificados físicos para los accionistas cuyas acciones Clase B y Clase C se encuentren representadas en títulos físicos. |
| Certificados representados en anotaciones en cuenta | La Sociedad emitirá Certificados representados mediante anotaciones en cuenta para los accionistas cuyas acciones Clase B y Clase C, estén representadas mediante anotaciones en cuenta en el registro de Cavali ICLV S.A. |



Los Certificados serán emitidos a favor de los accionistas Clase B y Clase C, a prorrata de sus respectivas tenencias de acciones en la Fecha de Registro indicada más adelante, según lo regulado en el Reglamento sobre Fecha de Corte, Registro y Entrega aprobado por Res. CONASEV 069-2006-EF.94.10 (el "Reglamento").

Titulares del Derecho de Suscripción Preferente:

Tendrán derecho de suscripción preferente aquellos accionistas que aparezcan registrados como tales en la Matrícula de Acciones y/o el Registro Contable de CAVALI S.A. ICLV, de ser el caso, de la Sociedad al cierre de la Fecha de Registro, a prorrata de sus tenencias de acciones a dicha fecha las cuales se determinarán sin considerar la participación del accionista Telefónica Hispanoamérica, S.A. Los Titulares del derecho de suscripción preferente podrán transferir su derecho a favor de terceras personas, con arreglo a las normas vigentes.

Fecha de Registro:

17 de marzo de 2025



Fecha de Entrega:

18 de marzo de 2025

Lugar de Entrega de los Certificados:

Los Certificados estarán a disposición de los Titulares del derecho de suscripción preferente, en la Fecha de Entrega desde las 09:00 horas hasta las 17:00 horas conforme con lo siguiente:

| Tipo de Certificado | Características |
|---|---|
| Certificados representados en títulos físicos | La Sociedad emitirá Certificados físicos para los accionistas cuyas acciones Clase B y Clase C se encuentren representadas en títulos físicos.<br><br>Los accionistas podrán recabar los Certificados físicos en las oficinas del Emisor ubicadas en Jirón Domingo Martínez Luján N° 1130, piso 1, Surquillo, desde las 9:00 hasta las 17:00 horas, a partir del día hábil siguiente de la Fecha de Registro. Para ello deberán acreditar su condición de accionista con los respectivos certificados de acciones correspondientes. |
| Certificados representados en anotaciones en cuenta | La Sociedad emitirá Certificados representados mediante anotaciones en cuenta para los accionistas cuyas acciones Clase B y Clase C, estén representadas mediante anotaciones en cuenta en el registro de Cavali ICLV S.A.<br><br>Los Certificados representados mediante anotaciones en cuenta serán entregados a partir del día hábil siguiente de la Fecha de Registro por Cavali ICLV S.A. |

Para cualquier información al respecto, los accionistas podrán acercarse las oficinas de la Sociedad sito en Jirón Domingo Martínez Luján N° 1130, piso 1, Surquillo, en el horario comprendido entre las 9:00 y las 17:00 horas, de lunes a viernes o contactarse mediante correo electrónico dirigido a la siguiente dirección: acc.minoritariotdp@movistar.com.pe.



17

Ruedas:

El derecho de suscripción preferente para la suscripción de las acciones podrá ejercerse en dos (2) ruedas, según se indica a continuación:

Primera Rueda: Al tenedor de cada Certificado le corresponderá el derecho de suscribir y pagar en primera rueda (en adelante, la "Primera Rueda"), hasta la cantidad máxima de las Acciones que dicho Certificado señale.

En Primera Rueda, los tenedores de los Certificados tendrán derecho preferencial para suscribir y pagar a prorrata de su participación accionaria las nuevas acciones creadas, conforme a la clase que corresponda, para lo cual se emitirán los Certificados conforme a las leyes aplicables.

Segunda Rueda: En caso quedasen Acciones sin suscribir luego de la Primera Rueda, se realizará una segunda rueda (en adelante, la "Segunda Rueda") en la que podrán participar aquellas personas que hayan suscrito acciones en Primera Rueda. En la Segunda Rueda, cada suscriptor tendrá derecho a suscribir un número máximo de las acciones no suscritas en la Primera Rueda, proporcionalmente a la cantidad de acciones que hubieren suscrito en la Primera Rueda, según hubieran hecho uso de manera total o parcial de su derecho de suscripción preferente.

Destino de las Acciones sin suscribir:

Si una vez culminado el plazo de la Segunda Rueda quedaran Acciones sin suscribir o Acciones que habiendo sido suscritas no hubieran sido pagadas en su integridad en los plazos y condiciones antes mencionadas, dichas Acciones no serán emitidas ni consideradas como parte del aumento de capital por nuevos aportes. Consecuentemente, el monto del aumento de capital quedará fijado considerando únicamente las acciones que hayan sido suscritas en primera y segunda rueda e íntegramente pagadas en las condiciones mencionadas en los numerales precedentes, mediante aportes en efectivo.

Plazo para la negociación de los Certificados de Suscripción Preferente:

Los Certificados podrán ser negociados libremente fuera de Bolsa, con observancia de las normas que regulan la transferencia de valores mobiliarios, a partir del mismo día 18 de marzo de 2025 hasta el 7 de abril, inclusive.

Plazos para las Ruedas de Suscripción:

Los plazos para el ejercicio del Derecho de Suscripción Preferente de las Acciones se indican a continuación, pudiendo el Directorio ampliar o variar el plazo y las fechas de las ruedas:

Primera Rueda: tendrá un plazo de duración de diecisiete (17) días hábiles, contados a partir del día 18 de marzo de 2025 y hasta el día 9 de abril del mismo año, inclusive.



**18**

Segunda Rueda: Tendrá un plazo de duración de tres (3) días hábiles, contados a partir del día 10 de abril de 2025 (día hábil siguiente de finalizada la Primera Rueda) hasta el día 14 del mismo mes y año, inclusive, en los mismos horarios y lugar señalados para la Primera Rueda.

Precio de suscripción:

El precio de suscripción por las nuevas acciones tanto de la Clase B como la Clase C será de S/1.07 por acción.

Plazo y Forma de Pago:

Las acciones deberán ser pagadas íntegramente mediante aportes en efectivo realizados mediante transferencias y/o depósitos bancarios en la oportunidad en que se efectúe la suscripción de las acciones, en cualquiera de las siguientes cuentas de la Sociedad:

Titular: Telefónica del Perú S.A.A.
Banco: Scotiabank
Moneda: Soles
Cuenta: 3096636
CCI: 009 170 000003096636 20

Lugar y Modo de Suscripción:

Los titulares de los Certificados físicos que decidan ejercer su derecho de suscripción preferente, deberán remitir una comunicación a las oficinas de la Sociedad (Jirón Domingo Martínez Lujan N° 1130, Surquillo, Lima), con atención a la presidenta ejecutiva de la misma, indicando el número de acciones que desea suscribir; especificando la clase; y adjuntando los comprobantes de los depósitos efectuados en la Cuenta en Soles indicada de titularidad de la Sociedad, hasta el último día de vigencia de la rueda de suscripción respectiva. 

Los titulares de Certificados representados en anotaciones en cuenta, suscribirán sus acciones a través de CAVALI ICLV S.A.

Destino de los Fondos a ser obtenidos por el Aumento de Capital:

Los aportes que pudieran recaudarse del presente procedimiento de ejercicio del derecho de suscripción preferente serían destinados al reforzamiento patrimonial de la Sociedad.

Modificación de la cuenta del Capital Social:

El monto final de modificación de la cuenta de capital social, consecuencia del aumento de capital por nuevos aportes, se determinará al culminar el proceso de ruedas y corresponderá al monto efectivamente suscrito por los titulares de los Certificados.



19

La Junta General de Accionistas de fecha 26 de noviembre de 2024 delegó en el Directorio las facultades necesarias para determinar el monto final del aumento de capital y modificar los estatutos de la Sociedad, así como para formalizar dicha modificación, de acuerdo con lo requerido por las leyes aplicables.





20

## CERTIFICACIÓN

De conformidad con lo establecido por la Primera Disposición Complementaria Final del Decreto Supremo 006-2013-JUS, declaro bajo responsabilidad que los Directores de Telefónica del Perú S.A.A. (la "Sociedad") son quienes aparecen en la parte introductoria de la presente acta y que las firmas que obran al final del acta corresponden a quien suscribe la presente y a quien actuó como secretaria del Directorio. Así lo certifica la presidenta ejecutiva de la Sociedad, quien suscribe a continuación.

Lima, 25 de febrero de 2025

Presidenta Ejecutiva
Elena Eloísa Maestre Tinao
Carné de extranjería N° 006104492



# **EXHIBIT D-1**

**Certificate of Corporate Registry (Certified English Translation)**

# COLEGIO DE TRADUCTORES DEL PERÚ
## Creado por Ley N° 26684

**MAYRA MILAGROS ALAYO RUBIO**
**CTP N.° 0773**
**Certified Translator**
Spanish – English – French – Portuguese

# CERTIFIED TRANSLATION
# CT No. 0057-2025

**CERTIFICATE OF GOOD STANDING OF**
**TELEFONICA DEL PERU S.A.A.**



N° 0742530

Mayra M. Alayo Rubio
CTP N° 0773

Valor 3.50 Soles

VER INDICACIONES AL REVERSO

**ADVERTENCIA**

El presente documento está impreso con medidas de seguridad en papel sensibilizado resistente a solventes químicos contra falsificaciones y adulteraciones. Cualquier reacción o enmendadura anulará la validez del mismo. Para verificar su autenticidad deberá:

- Ver al trasluz la marca de agua TGS.
- Frotar con un papel blanco la orla decorativa para verificar que manche.
- Exponer el documento a la luz ultra violeta, utilizada para la verificación de billetes, a fin de visualizar las fibrillas impregnadas dentro de la masa del papel.
- Verificar si la numeración de color rojo impresa en el documento ha penetrado la masa del papel y se puede ver en el reverso. Es imposible removerla.



**MAYRA MILAGROS ALAYO RUBIO**
CTP No. 0773
Certified Translator

CERTIFIED TRANSLATION No. 0057-2025

Page 1 of 5

**REPÚBLICA DEL PERÚ (THE REPUBLIC OF PERU)**
**SUPERINTENDENCIA NACIONAL DE LOS REGISTROS PÚBLICOS – SUNARP**
**(NATIONAL SUPERINTENDENCY OF PUBLIC RECORDS OFFICES – SUNARP)**
**ZONA REGISTRAL IX (NINTH REGISTRATION AREA)**
OFICINA REGISTRAL DE LIMA (PUBLIC RECORDS OFFICE IN AND FOR LIMA)

QR CODE
**Verification Code 89776991**
**Application No. 2024-6626091**
**Date and Time: October 17, 2024; 4:14:38 p.m.**

REGISTRY OF COMPANIES
BOOK OF JOINT-STOCK COMPANIES

<u>**CERTIFICATE OF GOOD STANDING**</u>

I, the undersigned Officer, **HEREBY ATTEST THAT**:

As shown in Electronic Card 11015766 of the Registry of Companies of the Public Records Office in and for Lima, the **Certificate of Good Standing of a Legal Entity** is duly recorded and is in full force and effect. The details of said certificate are set forth below:



| | | |
|---|---|---|
| **CORPORATE NAME**: | | TELEFONICA DEL PERU S.A.A. |
| **BOOK** | : | JOINT STOCK COMPANIES |
| **ENTRY** | : | PAGE 301 OF VOLUME 12 |
| **POSITION** | : | CERTIFICATE OF GOOD STANDING OF A LEGAL ENTITY |

**POWERS**:
Page **301** of Volume **12**

By virtue of the Notarially Recorded Instrument dated April 2, 1998, executed by Jaime Alejandro MURGUIA CAVERO, Attorney-at-Law and Notary Public in and for Lima, and by virtue of the Shareholders' Meeting held on March 9, 1998, it was resolved to: Adapt the Bylaws of the Company to the **restated Business Corporations' Act** under the following terms: The current name of the company is "**TELEFÓNICA DEL PERÚ S.A.A.**".

**PURPOSE**:

a)      Operate and provide all kinds of telecommunications services.

b)      Participate in the operation and provision of international telecommunications services via satellites, undersea cables and other means offered by technological development.

**MAYRA MILAGROS ALAYO RUBIO**
CTP No. 0773
Certified Translator

CERTIFIED TRANSLATION No. 0057-2025

Page 2 of 5

d)   Market all kinds of goods and services, as well as publish, print and market telephone directories.

e)   Acquire and hold shares, units of interest or other securities in companies or other entities, whatever their purpose or activity. It may also carry out all kinds of acts it deems appropriate for the fulfillment of its corporate purpose.

**Thus, it is shown in Entry B00001 by virtue of the Notarially Recorded Instrument dated April 2, 1998, executed by Jaime Alejandro MURGUIA CAVERO, Attorney-at-Law and Notary Public, and by virtue of the Shareholders' Meeting held on March 9, 1998.**

EXISTENCE: The Company shall have perpetual existence.

**Thus, it is shown in Entry B00001 by virtue of the Notarially Recorded Instrument dated April 2, 1998, executed by Jaime Alejandro MURGUIA CAVERO, Attorney-at-Law and Notary Public, and by virtue of the Shareholders' Meeting held on March 9, 1998.**

**PRINCIPAL PLACE OF BUSINESS**: Lima, being authorized to establish branches elsewhere in the country or abroad.

**Thus, it is shown in Entry B00001 by virtue of the Notarially Recorded Instrument dated April 2, 1998, executed by Jaime Alejandro MURGUIA CAVERO, Attorney-at-Law and Notary Public, and by virtue of the Shareholders' Meeting held on March 9, 1998.**



C00967: By virtual Board Meeting dated April 27, 202, it was resolved to:

1.   Appoint Bernardo QUINN, holder of Passport U5422846, as (...) (II) Vice-chairman of the Board of Directors.

3.   Maintain the Secretary of the Board of Directors and the Assistant Secretary, namely Christiann Antonio HUDTWALCKER ZEGARRA, holder of National Identity Card (DNI) 10221403, and Milagros Rosa Elena MUNOZ BAZAN, holder of National Identity Card (DNI) 08256183, respectively.

C00997
At the Board Meeting held on June 19, 2023, it was resolved to:

1.   Accept, with effect as from July 1, 2023, the resignation of **Pedro Salvador CORTEZ ROJAS**, a Peruvian citizen, holder of National Identity Card (DNI) 07965347, from his position as General Manager, Director and Chairman of the Board of Directors of TELEFÓNICA DEL PERÚ S.A.A. (positions registered in Entries C 886, C 914, C 957 and C 967 of Registration Card 11015766 of the Registry of Companies in and for Lima).

**MAYRA MILAGROS ALAYO RUBIO**
CTP No. 0773
Certified Translator

CERTIFIED TRANSLATION No. 0057-2025

Page 3 of 5

3. it is resolved to incorporate into the Board of Directors, by way of co-optation ad with effect as from July 1, 2023, **Elena Eloisa MAESTRE TINAO**, a Spanish citizen, holder of Spanish National Identity Card (DNI) 07502760E, **who is appointed as Chair of the Board of Directors. It is hereby placed on record that Elena Eloisa MAESTRE TINAO shall have the executive functions inherent to her position of General Manager, and in accordance with the provisions of Article 40 of the Bylaws, she shall assume the position of Chief Executive Officer as of July 1, 2023.**

In Entry B00035, by Notarially Recorded Instrument dated September 5, 2024 executed by Eduardo Jose Atilio LAOS DE LAMA, Attorney-at-Law and Notary Public in and for Lima, and by virtue of the Shareholders' Meeting held on March 25, 2024 and Board Meeting dated April 25, 2024, it was resolved to:

**Article Five: The capital stock of the Company amounts to PEN 1,818,873,480.24 (One Billion Eight Hundred and Eighteen Million Eight Hundred and Seventy-Three Thousand Four Hundred and Eighty and 24/100 Soles)**, represented by 5,052,426,334 registered shares of PEN 0.36 (36/100 Soles) each, fully subscribed and paid up and divided into two classes as follows:

(i)   5,052,235,988 Class "B" shares
(ii)  190,346 Class "C" shares

In entry C01012, by virtual Special Meeting of Class B Shareholders held on March 25, 2024, it was resolved to:

1. Appoint the following persons as directors for the following three-year term from the date hereof until March 31, 2027, or the date of the corresponding Special Shareholders' Meeting for the election of directors, whichever occurs first:

(...).

**Eduardo CARIDE, an Argentine citizen, holder of Passport AAE575294, as an independent director.**

Lu---

I.   **DOCUMENT GIVING RISE TO THIS FILING**

By Notarially Recorded Instrument dated April 2, 1998, executed by Jaime Alejandro MURGUIA CAVERO, Attorney-at-Law and Notary Public, and by virtue of the Shareholders' Meeting held on March 9, 1998, it was resolved to: Adapt the Bylaws to the restated Business Corporations' Act under the following terms: The current name of the company is "TELEFÓNICA DEL PERÚ S.A.A.".



**MAYRA MILAGROS ALAYO RUBIO**
CTP No. 0773
Certified Translator

CERTIFIED TRANSLATION No. 0057-2025

Page 4 of 5

II.     **ANNOTATIONS IN THE PERSONAL REGISTER OR IN THE ITEM ENTITLED "MISCELLANEOUS":**

None.

III.    **TITLES PENDING REGISTRATION**

| No. | Title | Submission date | Deed |
|-----|-------|-----------------|------|
| 1 | 2024-3048638 | October 18, 2024 | Revocation of Power of Attorney granted by a Joint Stock Company |
| 2 | 2024-3048638 | October 18, 2024 | Granting of Power of Attorney by a Joint Stock Company |

IT IS HEREBY PLACED ON RECORD THAT THIS CERTIFICATE IS ISSUED PURSUANT TO SECTION 67 OF THE REGULATIONS FOR THE DISCLOSURE OF OFFICIAL RECORDS, ACCORDING TO WHICH THE EXISTENCE OF TITLES PENDING REGISTRATION DOES NOT HINDER THE ISSUANCE OF A CERTIFICATE.

IV.     **IMPORTANT ADDITIONAL INFORMATION FOR DISCLOSURE TO THIRD PARTIES:**

None.

V.      **PAGES ATTACHED TO THIS CERTIFICATE:**

None.



Number of pages of this Certificate: 4
Fees paid:      PEN 30.90           Receipt 2024-99999-2271192
Total fees:     PEN 30.90

Verified and issued by Leticia URBINA GARCIA, Certifying Attorney of the Public Records Office in and for Lima, on October 29, 2024 at 8:11:09 a.m.

(signed)     Esther Leticia Urbina Garcia
             Certifying Attorney
             Ninth Registration Area – Lima Office / Seal

Certificates issued by Public Records Offices evidence the existence or non-existence of entries or annotations in the register at the time of their issue (Section 140 of the Consolidated Text (TUO) of the General Regulations of the Public Records Office, as approved by Resolution 126-2012-SUNARP-SN)

To verify the authenticity of this document, you can visit the website: https://enlinea.sunarp.gob.pe/sunarpweb/pages/publicidadcertificada/verificarcertificadoliteral.faces within a period of ninety (90) calendar days as from its date of issue.

**MAYRA MILAGROS ALAYO RUBIO**
CTP No. 0773
Certified Translator

CERTIFIED TRANSLATION No. 0057-2025

Page 5 of 5

**Regulations for the Disclosure of Official Records: Section 81 – Limitation of Liability:** The Officer issuing the official records does not assume any liability as to the defects or inaccuracies found in the filing entries, automated indices and titles pending registration that are not recorded in the computer system.

Page 4 of 4



I, the undersigned Certified Translator, Member of the Peruvian Association of Professional Licensed Translators (CTP), do hereby certify that this Certified Translation, consisting of _____ pages, is a true and correct translation into English of the original document in _Spanish_ enclosed herewith which has been produced before me

This certification shall be considered an acknowledgment of the accuracy of the translation but not of the authenticity or contents of the document in source language attached hereto

Signed in Lima, this 25ᵗʰ day of February 2025

Mayra M. Alayo Rubio
CTP Nº 0773

## **EXHIBIT D-2**

**Certificate of Corporate Registry (Original)**



**ZONA REGISTRAL Nº IX**
**Oficina Registral de LIMA**



Código de Verificación:
89776991
Publicidad N° 2024 - 6626091

17/10/2024 16:14:38

## REGISTRO DE PERSONAS JURÍDICAS
## LIBRO DE SOCIEDADES ANONIMAS

### CERTIFICADO DE VIGENCIA

El servidor que suscribe, **CERTIFICA**:

Que, en la partida electrónica N° 11015766 del Registro de Personas Jurídicas de la Oficina Registral de LIMA, consta registrado y vigente el **poder** a favor de VIGENCIA  DE , PERSONA JURIDICA, cuyos datos se precisan a continuación:

**DENOMINACIÓN O RAZÓN SOCIAL:** TELEFONICA DEL PERU S.A.A.
**LIBRO:** SOCIEDADES ANONIMAS
**ASIENTO:** FOJAS  301 DEL  TOMO 12
**CARGO:** VIGENCIA DE PERSONA JURIDICA

**FACULTADES:**

Fojas **301** del  Tomo **12**

 POR ESCRITURA  PÚBLICA  DEL  02/04/1998 OLTORGADA ANTE NOTARIO JAIME ALEJANDRO MURGUIA CAVERO Y POR JUNTA GENERAL DE FECHA 09/03/1998 SE ACORDÓ ADECUAR LOS ESTATUTOS DE LA SOCIEDAD A LA **NUEVA LEY GENERAL DE SOCIEDADES** EN LOS TÉRMINOS SIGUIENTES: DENOMINACIÓN ACTUAL DE LA SOCIEDAD "**TELEFÓNICA DEL PERÚ S.A.A.**".

**OBJETO**: A) EXPLOTAR Y PRESTAR TODA CLASE DE SERVICIOS DE TELECOMUNICACIONES.. B) PARTICIPAR EN LA OPERACIÓN Y EXPLOTACIÓN DE SERVICIOS DE TELECOMUNICACIONES INTERNACIONALES A TRAVÉS DE SATÉLITES, CABLES SUBMARINOS Y OTROS MEDIOS QUE OFREZCA EL DESARROLLO TECNOLÓGICO. D) COMERCIALIZAR TODA CLASE DE BIENES Y SERVICIOS, ASÍ COMO REALIZAR LA EDICIÓN, IMPRESIÓN Y COMERCIALIZACIÓN DE DIRECTORIO TELEFÓNICOS. E) ADQUIRIR Y SER TITULAR DE ACCIONES, PARTICIPACIONES U OTRO TÍTULOS DE SOCIEDADES U OTRAS ENTIDADES, CUALQUIERA QUE SEA SU OBJETO O ACTIVIDAD. IGUALMENTE PODRÁ REALIZAR TODO TIPO DE ACTOS QUE CONSIDERE CONVENIENTE PARA EL CUMPLIMIENTO DE SU OBJETO SOCIAL. *ASI CONSTA REGISTRADO EN EL ASIENTO B00001 EN MERITO A LA ESCRITURA  PÚBLICA DEL  02/04/1998 OLTORGADA ANTE NOTARIO JAIME ALEJANDRO MURGUIA  CAVERO Y POR JUNTA GENERAL DE FECHA 09/03/1998*

**DURACIÓN** DE LA SOCIEDAD ES INDETERMINADO. *ASI CONSTA REGISTRADO EN EL ASIENTO B00001 EN MERITO A LA ESCRITURA  PÚBLICA  DEL  02/04/1998 OLTORGADA ANTE NOTARIO JAIME ALEJANDRO MURGUIA  CAVERO Y POR JUNTA GENERAL DE FECHA 09/03/1998*

**DOMICILIO** LA CIUDAD DE LIMA PUDIENDO ESTABLECER SUCURSALES EN CUALQUIER LUGAR DEL

LOS CERTIFICADOS QUE EXTIENDEN LAS OFICINAS REGISTRALES ACREDITAN LA EXISTENCIA O INEXISTENCIA DE INSCRIPCIONES O ANOTACIONES EN EL REGISTRO AL TIEMPO DE SU EXPEDICION (ART. 140° DEL T.U.O DEL REGLAMENTO GENERAL DE LOS REGISTROS PUBLICOS APROBADO POR RESOLUCION N° 126-2012-SUNARP-SN)

LA AUTENTICIDAD DEL PRESENTE DOCUMENTO PODRÁ VERIFICARSE EN LA PÁGINA WEB HTTPS ://ENLINEA.SUNARP.GOB.PE/SUNARPWEB/PAGES/ PUBLICIDADCERTIFICADA/VERIFICARCERTIFICADOLITERAL.FACES EN EL PLAZO DE 90 DÍAS CALENDARIO CONTADOS DESDE SU EMISIÓN

REGLAMENTO DEL SERVICIO DE PUBLICIDAD REGISTRAL : ARTÍCULO 81 - DELIMITACIÓN DE LA RESPONSABILIDAD. EL SERVIDOR RESPONSABLE QUE EXPIDE LA PUBLICIDAD FORMAL NO ASUME RESPONSABILIDAD POR LOS DEFECTOS O LAS INEXACTITUDES DE LOS ASIENTOS REGISTRALES, ÍNDICES AUTOMATIZADOS, Y TÍTULOS PENDIENTES QUE NO CONSTEN EN EL SISTEMA INFORMÁTICO.



**ZONA REGISTRAL Nº IX**
Oficina Registral de LIMA



Código de Verificación:
89776991
Publicidad N° 2024 - 6626091

17/10/2024 16:14:38

PAÍS O DEL EXTRANJERO, *ASI CONSTA REGISTRADO EN EL ASIENTO B00001 EN MERITO A LA ESCRITURA PÚBLICA DEL 02/04/1998 OLTORGADA ANTE NOTARIO JAIME ALEJANDRO MURGUIA CAVERO Y POR JUNTA GENERAL DE FECHA 09/03/1998*

C00967, POR SESION DE DIRECTORIO NO PRESENCIAL DE FECHA 27 DE ABRIL DE 2021 SE ACORDO
1. DESIGNAR COMO (...) (II) VICEPRESIDENTE DEL DIRECTORIO, AL SENIOR BERNARDO QUINN, IDENTIFICADO CON PASAPORTE N* U5422846
3. MANTENER AL SECRETARIO DEL DIRECTORIO Y SUB SECRETARIA, A SABER. LOS SEÑORES CHRISTIANN ANTONIO HUDTWALCKER ZEGARRA, IDENTIFICADO CON DOCUMENTO NACIONAL DE IDENTIDAD N° 10221403 Y MILAGROS ROSA ELENA MUNOZ BAZAN IDENTIFICADA CON DOCUMENTO NACIONAL DE IDENTIDAD N° 08256183. RESPECTIVAMENTE

C00997
POR SESIÓN DE DIRECTORIO DEL 19/06/2023 SE ACORDÓ;
1. ACEPTAR. CON EFECTIVIDAD AL 1 DE JULIO DE 2023, LA RENUNCIA FORMULADA POR EL SEÑOR **PEDRO SALVADOR CORTEZ ROJAS**. DE NACIONALIDAD PERUANA. IDENTIFICADO CON DNI N° 07965347, A SU CONDICIÓN DE GERENTE GENERAL, DIRECTOR Y PRESIDENTE DEL DIRECTORIO DE TELEFÓNICA DEL PERÚ S.A.A. (CARGOS INSCRITOS EN LOS ASIENTOS C 886, C 914, C 957 Y C 967 DE LA PARTIDA REGISTRAL N° 11015766 DEL REGISTRO DE PERSONAS JURÍDICAS DE LIMA).

3. SE ACUERDA INCORPORAR POR COOPTACIÓN AL DIRECTORIO, CON EFECTIVIDAD AL 1o DE JULIO DE 2023, A LA SEÑORA **ELENA ELOISA MAESTRE TINAO**. DE NACIONALIDAD ESPAÑOLA, IDENTIFICADA CON DOCUMENTO NACIONAL DE IDENTIDAD ESPAÑOL N* 07502760E, **A QUIEN SE DESIGNA COMO PRESIDENTA DEL DIRECTORIO. SE DEJA CONSTANCIA QUE LA SEÑORA ELENA ELOISA MAESTRE TINAO TENDRÁ LAS FUNCIONES EJECUTIVAS PROPIAS DEL CARGO DE GERENTE GENERAL Y DE CONFORMIDAD CON LO ESTABLECIDO EN EL ARTÍCULO 40° DEL ESTATUTO SOCIAL ASUMIRÁ DESDE EL 1 DE JULIO DE 2023 LA POSICIÓN DE PRESIDENTA EJECUTIVA.**

EN EL ASIENTO B00035, Por ESCRITURA PÚBLICA del 05/09/2024 otorgada ante Notario LAOS DE LAMA, EDUARDO JOSE ATILIO en la ciudad de LIMA, por junta general de fecha 25/03/2024 y sesión de directorio del 25/04/2024 se acordó
**ARTÍCULO 5.- EL CAPITAL DE LA SOCIEDAD ES DE S/I,818'873,480.24 (MIL OCHOCIENTOS DIECIOCHO MILLONES OCHOCIENTOS SETENTA Y TRES MIL CUATROCIENTOS OCHENTA CON 24/100 SOLES),** REPRESENTADO POR 5,052,426,334 ACCIONES NOMINATIVAS DE S/0.36 (36/100 SOLES) CADA UNA, ÍNTEGRAMENTE SUSCRITAS Y PAGADAS Y DIVIDIDAS EN DOS CLASES DE LA SIGUIENTE FORMA:
(i) 5,052,235,988 ACCIONES DE CLASE "B"
(ii) 190 346 ACCIONES DE CLASE "C"

LOS CERTIFICADOS QUE SE EXTIENDEN LAS OFICINAS REGISTRALES ACREDITAN LA EXISTENCIA O INEXISTENCIA DE INSCRIPCIONES O ANOTACIONES EN EL REGISTRO AL TIEMPO DE SU EXPEDICION (ART. 140° DEL T.U.O. DEL REGLAMENTO GENERAL DE LOS REGISTROS PUBLICOS APROBADO POR RESOLUCION N° 126-2012-SUNARP-SN)

LA AUTENTICIDAD DEL PRESENTE DOCUMENTO PODRÁ VERIFICARSE EN LA PÁGINA WEB HTTPS://ENLINEA.SUNARP.GOB.PE/SUNARPWEB/PAGES/PUBLICIDADCERTIFICADA/VERIFICARCERTIFICADOLITERAL.FACES EN EL PLAZO DE 90 DÍAS CALENDARIO CONTADOS DESDE SU EMISIÓN

REGLAMENTO DEL SERVICIO DE PUBLICIDAD REGISTRAL : ARTÍCULO 61 - DELIMITACIÓN DE LA RESPONSABILIDAD. EL SERVIDOR RESPONSABLE QUE EXPIDE LA PUBLICIDAD FORMAL NO ASUME RESPONSABILIDAD POR LOS DEFECTOS O LAS INEXACTITUDES DE LOS ASIENTOS REGISTRALES, ÍNDICES AUTOMATIZADOS, Y TÍTULOS PENDIENTES QUE NO CONSTEN EN EL SISTEMA INFORMÁTICO



**ZONA REGISTRAL Nº IX**
**Oficina Registral de LIMA**



Código de Verificación:
89776991
Publicidad N° 2024 - 6626091

17/10/2024 16:14:38

EN EL ASIENTO C01012, POR JUNTA ESPECIAL DE ACCIONISTAS DE CLASE B NO PRESENCIAL DE 25/03/2024 SE ACORDÓ:

1. NOMBRAR A LAS SIGUIENTES PERSONAS COMO DIRECTORES POR EL SIGUIENTE MANDATO DE TRES AÑOS CONTADOS A PARTIR DE LA FECHA HASTA EL 31 DE MARZO DE 2027 O LA FECHA DE CELEBRACIÓN DE LA JUNTA ESPECIAL DE ACCIONISTAS QUE CORRESPONDA PARA LA ELECCIÓN DE DIRECTORES, LO QUE OCURRA PRIMERO: (■■■)■

**EDUARDO CARIDE, DE NACIONALIDAD ARGENTINA, IDENTIFICADO CON PASAPORTE N° AAE575294, EN CALIDAD DE DIRECTOR INDEPENDIENTE.**

Lu---

**DOCUMENTO QUE DIO MÉRITO A LA INSCRIPCIÓN:**
POR ESCRITURA PÚBLICA DEL 02/04/1998 OLTORGADA ANTE NOTARIO JAIME ALEJANDRO MURGUIA CAVERO Y POR JUNTA GENERAL DE FECHA 09/03/1998 SE ACORDÓ ADECUAR LOS ESTATUTOS DE LA SOCIEDAD A LA NUEVA LEY GENERAL DE SOCIEDADES EN LOS TÉRMINOS SIGUIENTES: DENOMINACIÓN ACTUAL DE LA SOCIEDAD ¿TELEFÓNICA DEL PERÚ S.A.A.¿.

**II. ANOTACIONES EN EL REGISTRO PERSONAL O EN EL RUBRO OTROS:**
NINGUNO.

**III. TITULOS PENDIENTES:**

| N° Título | Fecha de Presentación | Actos |
|---|---|---|
| 1  2024-3048638 | 18/10/2024 | REVOCATORIA DE PODER DE SOCIEDAD ANONIMA |
| 2  2024-3048638 | 18/10/2024 | OTORGAMIENTO DE PODER DE SOCIEDAD ANONIMA |

SE DEJA CONSTANCIA QUE EL PRESENTE CERTIFICADO SE EXPIDE DE ACUERDO AL ART. 97º DEL REGLAMENTO DEL SERVICIO DE PUBLICIDAD REGISTRAL SEGÚN EL CUAL LA EXISTENCIA DE TITULOS PENDIENTES DE INSCRIPCIÓN NO IMPIDE LA EXPEDICION DE UN CERTIFICADO.

**IV. DATOS ADICIONALES DE RELEVANCIA PARA CONOCIMIENTO DE TERCEROS:**
NINGUNO.

**V. PÁGINAS QUE ACOMPAÑAN AL CERTIFICADO:**
NINGUNO.

N° de Fojas del Certificado: 4

Derechos Pagados:   2024-99999-2271192     S/ 30.90
Tasa Registral del Servicio              S/ 30.90

Verificado y expedido por URBINA GARCIA, LETICIA, Abogado Certificador de la Oficina Registral de Lima, a las 08:11:09 horas del 29 de Octubre del 2024.

LOS CERTIFICADOS QUE EXTIENDEN LAS OFICINAS REGISTRALES ACREDITAN LA EXISTENCIA O INEXISTENCIA DE INSCRIPCIONES O ANOTACIONES EN EL REGISTRO AL TIEMPO DE SU EXPEDICION (ART. 140° DEL T.U.O. DEL REGLAMENTO GENERAL DE LOS REGISTROS PUBLICOS APROBADO POR RESOLUCION N° 126-2012-SUNARP-SN)

LA AUTENTICIDAD DEL PRESENTE DOCUMENTO PODRÁ VERIFICARSE EN LA PÁGINA WEB HTTPS://ENLINEA.SUNARP.GOB.PE/SUNARPWEB/PAGES/ PUBLICIDADCERTIFICADA/VERIFICARCERTIFICADOLITERAL.FACES EN EL PLAZO DE 90 DÍAS CALENDARIO CONTADOS DESDE SU EMISIÓN

REGLAMENTO DEL SERVICIO DE PUBLICIDAD REGISTRAL - ARTÍCULO 81 - DELIMITACIÓN DE LA RESPONSABILIDAD. EL SERVIDOR RESPONSABLE QUE EXPIDE LA PUBLICIDAD FORMAL NO ASUME RESPONSABILIDAD POR LOS DEFECTOS O LAS INEXACTITUDES DE LOS ASIENTOS REGISTRALES, ÍNDICES AUTOMATIZADOS, Y TÍTULOS PENDIENTES QUE NO CONSTEN EN EL SISTEMA INFORMÁTICO.



**ZONA REGISTRAL Nº IX**
**Oficina Registral de LIMA**



Código de Verificación:
89776991
Publicidad N° 2024 - 6626091

17/10/2024 16:14:38

ESTHER LETICIA URBINA GARCIA
ABOGADO CERTIFICADOR
Zona Registral Nº IX - Sede Lima

LOS CERTIFICADOS QUE EXTIENDEN LAS OFICINAS REGISTRALES ACREDITAN LA EXISTENCIA O INEXISTENCIA DE INSCRIPCIONES O ANOTACIONES EN EL REGISTRO AL TIEMPO DE SU EXPEDICION (ART. 140° DEL T.U.O DEL REGLAMENTO GENERAL DE LOS REGISTROS PUBLICOS APROBADO POR RESOLUCION N° 126-2012-SUNARP-SN).

LA AUTENTICIDAD DEL PRESENTE DOCUMENTO PODRÁ VERIFICARSE EN LA PÁGINA WEB HTTPS://ENLINEA.SUNARP.GOB.PE/SUNARPWEB/PAGES/PUBLICIDADCERTIFICADA/VERIFICARCERTIFICADOLITERAL.FACES EN EL PLAZO DE 90 DÍAS CALENDARIO CONTADOS DESDE SU EMISIÓN.

REGLAMENTO DEL SERVICIO DE PUBLICIDAD REGISTRAL : ARTÍCULO 81 - DELIMITACIÓN DE LA RESPONSABILIDAD. EL SERVIDOR RESPONSABLE QUE EXPIDE LA PUBLICIDAD FORMAL NO ASUME RESPONSABILIDAD POR LOS DEFECTOS O LAS INEXACTITUDES DE LOS ASIENTOS REGISTRALES, ÍNDICES AUTOMATIZADOS, Y TÍTULOS PENDIENTES QUE NO CONSTEN EN EL SISTEMA INFORMÁTICO.