**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| In re | ) | |
| | ) | Case No. 25-90022 (ARP) |
| *Telefónica del Perú S.A.A.,*[1] | ) | |
| | ) | |
| Debtor in a Foreign Proceeding. | ) | Chapter 15 |
| | ) | |

**PETITIONER'S DECLARATION AND VERIFIED PETITION FOR RECOGNITION**
**OF THE PERUVIAN PROCEEDING AND MOTION FOR ORDER GRANTING**
**RELATED RELIEF PURSUANT TO 11 U.S.C. §§ 105, 1509, 1515, 1517, 1520 AND 1521**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this petition was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this petition was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

---

[1] The debtor in this chapter 15 case (the "**Chapter 15 Case**") and the last four digits of the tax number in the jurisdiction in which it pays taxes is Telefónica del Perú S.A.A. (7491 – Peru).

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................2

BACKGROUND ...........................................................................................................5

    A.    General Background and History.......................................................5

          i.    Overview of the Company's Business...................................5

          ii.    The Company's Corporate Structure and Offices................................6

    B.    Connections to the United States .....................................7

    C.    The Chapter 15 Debtor's Financial Obligations to Third Parties .....................8

    D.    Events Precipitating Commencement of the Peruvian Proceeding...................9

    E.    The Peruvian Proceeding ......................................................13

JURISDICTION, ELIGIBILITY AND VENUE...................................................15

RELIEF REQUESTED.................................................................................................16

REQUIRED DISCLOSURES .....................................................................................16

BASIS FOR RELIEF ..................................................................................................17

    A.    The Court Has Jurisdiction to Recognize the Peruvian Proceeding and Grant the Relief Requested ...................................................18

    B.    The Requirements of Section 1517(a) of the Bankruptcy Code Are Satisfied 18

    C.    The Peruvian Proceeding is a "Foreign Proceeding".......................................19

          i.    The Petitioner is a Proper "Foreign Representative"...........................23

          ii.    The Petition Was Properly Filed Under Sections 1504 and 1509 and Meets the Requirements of Section 1515 and Bankruptcy Rule 1007(a)(4) ...................................................24

    D.    The Peruvian Proceeding Satisfies the Requirements for Recognition as a "Foreign Main Proceeding" ...................................................26

RESERVATION OF RIGHTS ....................................................................................29

NOTICE.......................................................................................................................30

NO PRIOR REQUEST................................................................................................30

i

CONCLUSION................................................................................................................30

# TABLE OF AUTHORITIES

Page(s)

## CASES

*In re ABC Learning Ctrs. Ltd.*,
445 B.R. 318, 333 (Bankr. D. Del. 2010) ................................................................ 20, 27

*In re ABC Learning Ctrs. Ltd.*,
728 F.3d 301, 307 (3d Cir. 2013) ............................................................................. 19, 27

*In re Abeinsa Holding, Inc.*,
562 B.R. 265 (Bankr. D. Del. 2016) ...............................23, **Error! Bookmark not defined.**

*Ad Hoc Group of Vitro Noteholders v. Vitro, S.A.B., de C.V. (In re Vitro, S.A.B. de C.V.)*,
470 B.R. 408 (Bankr. N.D. Tex. 2012) ................................................................... 19

*Ad Hoc Group of Vitro Noteholders v. Vitro, S.A.B., de C.V. (In re Vitro, S.A.B. de C.V.)*,
701 F.3d 1031 (5th Cir. 2012) ................................................................... 19, 23, 25

*In re AllSaints USA Ltd.*,
No. 20-33072 (Bankr. S.D. Tex. July 6, 2020) ................................................... 19

*In re Andrade Gutierrez Engenharia S.A.*,
645 B.R. 175 (Bankr. S.D.N.Y. 2022) ................................................................. 24

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
374 B.R. 122 (Bankr. S.D.N.Y. 2007) ................................................................. 25

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
389 B.R. 325 (S.D.N.Y. 2008) .............................................................................. 25

*In re Betcorp Ltd.*,
400 B.R. 266 (Bankr. D. Nev. 2009) ................................................................... 20

*In re British Am. Ins. Co. Ltd.*,
425 B.R. 884 (Bankr. S.D. Fla. 2010) ................................................................. 28

*In re Grand Prix Assocs.*,
No. 09-16545 (DHS), 2009 Bankr. LEXIS 1239 (Bankr. D.N.J. May 18, 2009) ........ **Error! Bookmark not defined.**

*In re Irish Bank Resolution Corp. (Special Liquidation)*,
No. 13-12159 (CSS), 2014 Bankr. LEXIS 1990 (Bankr. D. Del. Apr. 30, 2014) .............. 19

i

*In re Light S.A. – Em Recuperação Judicial*,
    No. 24-90531 (Bankr. S.D. Tex. Nov. 12, 2024).................................................................. 19

*In re Manley Toys Ltd.*,
    580 B.R. 632 (Bankr. D.N.J. 2018) .............................................................................. 20, 23

*In re Metrofinanciera*,
    No. 10-2066 (RSS), 2010 Bankr. LEXIS 6540 (Bankr. S.D. Tex. Sept. 24, 2010)............ 24

*In re Millennium Glob. Emerging Credit Master Fund Ltd.*,
    474 B.R. 88 (Bankr. S.D.N.Y. 2012).................................................................................. 28

*Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*,
    714 F.3d 127 (2d Cir. 2013).......................................................................................... 27, 27

*In re Netia Holdings S.A.*,
    277 B.R. 571 (Bankr. S.D.N.Y. 2002)...........................22, **Error! Bookmark not defined.**

*In re OAS S.A.*,
    533 B.R. 83 (Bankr. S.D.N.Y. 2015)........................................................................ 24, 25, 28

*In re Oi Brasil Holdings Coöperatief U.A.*,
    578 B.R. 169 (Bankr. S.D.N.Y. 2017)............................................................................ 24, 28

*In re PizzaExpress Fin. 2 PLC*,
    No. 20-34868 (Bankr. S.D. Tex. Nov. 3, 2020).................................................................. 19

*In re Poymanov*,
    571 B.R. 24 (Bankr. S.D.N.Y. 2017)...................................**Error! Bookmark not defined.**

*In re Ran*,
    607 F.3d 1017 (5th Cir. 2010) ...................................................................... 19, 25, 27, 28

*In re Selecta Fin. UK Ltd.*,
    No. 20-34947 (Bankr. S.D. Tex. Oct. 30, 2020).................................................................. 19

*In re Serviços de Petróleo Constellation S.A.*,
    600 B.R. 237 (Bankr. S.D.N.Y. 2019)................................................................................ 24

*In re Serviços de Petróleo Constellation S.A.*,
    613 B.R. 497 (Bankr. S.D.N.Y. 2020)................................................................................ 28

*In re SPhinX, Ltd.*,
    351 B.R. 103 (Bankr. S.D.N.Y. 2006)................................................................................ 27

*In re Stanford Int'l Bank, Ltd.*,
  No. 3:09-CV-0721-N, 2012 WL 13093940 (N.D. Tex. July 30, 2012) .............................. 27

*In re Suntech Power Holdings Co., Ltd.*,
  520 B.R. 399 (Bankr. S.D.N.Y. 2014) ............................................................................ 28

*In re Yukos Oil Co.*,
  321 B.R. 396 (Bankr. S.D. Tex. 2005) ...................................................................... 15, 18

## FEDERAL STATUTES

11 U.S.C. § 101 ................................................................................................... 1, 19, 23

11 U.S.C. § 105 .............................................. 1, 2, 16, **Error! Bookmark not defined.**

11 U.S.C. § 109 .............................................................................................. 15, 17, 18

11 U.S.C. § 152 .............................................................................................................. 1

11 U.S.C. § 362 ................................................. 5, **Error! Bookmark not defined.**

11 U.S.C. § 1501 ......................................................................................................... 18

11 U.S.C. § 1502 ................................................................................................... *passim*

11 U.S.C. § 1504 .................................................................................................... 3, 25

11 U.S.C. § 1509 ................................................................................................... *passim*

11 U.S.C. § 1515 ................................................................................................... *passim*

11 U.S.C. § 1516 ......................................................................................................... 26

11 U.S.C. § 1517 ................................................................................................... *passim*

11 U.S.C. § 1519 ................................................. 2, **Error! Bookmark not defined.**

11 U.S.C. § 1520 ................................................................................................... *passim*

11 U.S.C. § 1521 .............................................................................................. 1, 2, 16

28 U.S.C. § 157 ..................................................................................................... 15, 18

28 U.S.C. § 1334 ................................................................................................... 15, 18

28 U.S.C. § 1408 ......................................................................................................... 15

28 U.S.C. § 1409 ........................................................................................ 15

28 U.S.C. § 1410 ................................................................................... 18, 18

28 U.S.C. § 1746 ....................................................................................... 2, 2

## FEDERAL RULES

Fed. R. Bankr. P. 1007 ...................................................................... *passim*

Fed. R. Bankr. P. 7007.1 ........................................................................ 15, 26

Fed. R. Bankr. P. 7052 ............................................................................... 2

Fed. R. Bankr. P. 9014 ............................................................................... 2

I, Timothy O'Connor (the "**Petitioner**" or "**Foreign Representative**"), the duly-authorized foreign representative of Telefónica del Perú S.A.A. ("**Telefónica Perú**," the "**Company**" or the "**Chapter 15 Debtor**") in its voluntary ordinary restructuring proceeding ("**PCO**" or the "**Peruvian Proceeding**") commenced before the National Institute for the Defense of Competition and Protection of Intellectual Property (*Instituto Nacional de Defensa de la Competencia y de la Protección de la Propiedad Intelectual*) ("**INDECOPI**") on February 24, 2025 pursuant to Article 24 the General Insolvency Law (*Ley General del Sistema Concursal*) (Law No. 27809) (the "**Peruvian Insolvency Law**"), of the laws of the Republic of Peru ("**Peru**"),[2] respectfully submit this *Petitioner's Declaration and Verified Petition for Recognition of the Peruvian Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 105, 1509, 1515, 1517, 1520 and 1521* (the "**Verified Petition**").  This Verified Petition is filed in furtherance of the form of voluntary petition [ECF No. 1] (the "**Form of Petition**" and, together with this Verified Petition, the "**Petition**").  The Petitioner hereby requests that the Court enter an order substantially in the form attached hereto (the "**Proposed Order**") pursuant to sections 105(a), 1509, 1515, 1517, 1520 and 1521 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"):[3]

> (a)      granting the Petition in this Chapter 15 Case and recognizing the Peruvian Proceeding as the "foreign main proceeding" for the Chapter 15 Debtor pursuant to section 1517 of the Bankruptcy Code;

> (b)      finding that the Petitioner is the duly-appointed "foreign representative"

---

[2]   The Foreign Representative will notify the Court of the case number that INDECOPI assigns to the Peruvian Proceeding.

[3]   Except as otherwise indicated, section and chapter references are to the Bankruptcy Code.

of the Chapter 15 Debtor within the meaning of section 101(24) of the Bankruptcy Code and is authorized to act on behalf of the Chapter 15 Debtor; and

> (c) granting such other and further relief as the Court deems just and proper (collectively, the "**Relief Requested**").[4]

In support of this Verified Petition, the Petitioner relies upon and incorporates by reference the *Declaration of Jose Antonio Jimenez Pursuant to 28 U.S.C. § 1746 in Support of the Petitioner's Declaration and Verified Petition for Recognition of the Peruvian Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 105, 1509, 1515, 1517, 1520 and 1521* [ECF No. 3] (the "**Peruvian Counsel Declaration**"). In further support of the relief requested herein, the Petitioner respectfully represents as follows:

## PRELIMINARY STATEMENT

1. The Chapter 15 Debtor is a Peruvian telecommunications company offering mobile, fixed, television, and business-to-business services throughout Peru. In 2024, the Company generated revenue of around S$6.02 billion (US$1.60 billion).[5]

2. While the Company remains one of the largest providers of telecommunication services in the country, its operational metrics and market share have persistently fallen in recent years due to increased competition, the COVID-19 pandemic, and other operational challenges. These difficulties have led to the Company's deteriorating liquidity position, resulting in downgrades to its credit ratings and creating uncertainty regarding its ability to refinance the first

---

[4] Pending this Court's decision on recognition of the Peruvian Proceeding, the Petitioner is also seeking certain provisional injunctive relief pursuant to section 1519 of the Bankruptcy Code in a separate motion filed contemporaneously herewith. *See Emergency Motion for Provisional Relief Pursuant to 11 U.S.C. §§ 1519, 105(a) and 362* [ECF No. 4] (the "**Provisional Relief Motion**").

[5] The currency of Peru is the Peruvian Sol ("**S$**"). The foreign exchange rate used in the amounts in this Verified Petition is 3.7640:1 from S$ to US$ as of December 31, 2024.

installment of its outstanding notes due in April 2025.

3.       Further, the Company is expected to face heightened liquidity constraints in the near future due to large tax obligations.  In April 2024, the Company disclosed it would pay more than S\$1.4 billion (US\$371.9 million) to the Peruvian tax authority (*Superintendencia Nacional de Aduanas y de Administración Tributaria*) ("**SUNAT**") in compliance with a ruling by the Peruvian Supreme Court in January 2023 relating to tax liability for the years 2000 and 2001.  To fund this liability, the Company's board approved a loan from its largest shareholder, Telefónica Hispanoamérica S.A. ("**Telefónica Hispam**") for S\$771 million (US\$209.5 million) that matured in December 2024.  The board also authorized the Company to obtain bank financing for up to S\$1.2 billion (US\$462.0 million) and secure medium-term bank letters of credit for S\$1.7 billion (US\$451.6 million) to cover guarantees requested by SUNAT.  In addition, the Company will likely have other near-term significant tax obligations related to the final settlement of tax disputes.

4.       On February 24, 2025 (the "**PCO Petition Date**"), the Chapter 15 Debtor commenced the Peruvian Proceeding with the filing of a petition for PCO, a debtor-in-possession voluntary insolvency proceeding under the Peruvian Insolvency Law, with INDECOPI (the "**PCO Petition**") to stabilize its business, continue providing public telecommunications services to its approximately 13 million customers, and provide a forum for negotiations with its creditors with respect to a value-maximizing restructuring solution.  *See* Form of Petition, Exs. A, B.  However, until INDECOPI—through the Insolvency Proceedings Commission (*Comisión de Procedimientos Concursales*) (the "**Commission**")—makes a formal determination as to whether the Chapter 15 Debtor has satisfied the requirements to proceed with a PCO (which may take up to ninety (90) days) and publishes its decision in the Insolvency Gazette (*Boletín Concursal*) (which may take an addition three (3) to four (4) weeks), the Chapter 15 Debtor is vulnerable to

adverse creditor action.

5.      As discussed in the Peruvian Counsel Declaration, the Peruvian Proceeding aims to protect against the risk of irreparable harm that may result by creditors taking actions against the Chapter 15 Debtor.  In support of the Peruvian Proceeding, the Petitioner commenced this Chapter 15 Case to protect the Chapter 15 Debtor and its assets in the United States, given a significant portion of the Chapter 15 Debtor's debt is U.S.-law governed.  Specifically, the Petitioner seeks relief to protect the Chapter 15 Debtor against the risk of U.S. lawsuits from creditors that may interfere with the Chapter 15 Debtor's restructuring negotiations.

6.      In particular, holders of NY Notes (as defined below) may claim the NY Notes have been automatically accelerated by the filing of the PCO Petition and commence litigation against the Chapter 15 Debtor in the United States.[6]  If the Chapter 15 Debtor is forced to defend itself against litigation brought by its creditors in the United States, it will need to divert funds and efforts that would otherwise be employed in negotiating a successful reorganization in Peru.  Such litigation could also cause disruption to the Chapter 15 Debtor's business and the Peruvian Proceeding.  For example, counterparties to contracts that may be located in the United States may threaten to terminate their agreements as a result of the Chapter 15 Debtor's restructuring or its inability to pay pre-filing debts.  Creditors who are successful in obtaining a judgment or prejudgment attachment may attempt to execute such orders on property of the Chapter 15 Debtor in the United States and Peru.  Such creditors would likely also use their judgment liens to gain leverage over other creditors in the Peruvian Proceeding, thwarting the Chapter 15 Debtor's restructuring efforts.  Accordingly, the risk of litigation in the United States could undermine the

---

[6]      An ad hoc group of holders of such NY Notes has been formed and is represented by Akin Gump Strauss Hauer & Feld LLP.

4

Peruvian Proceeding, resulting in irreparable harm to the Chapter 15 Debtor.

7.     The Petitioner submits that recognition of the Peruvian Proceeding as the foreign main proceeding for the Chapter 15 Debtor is warranted because, as set out in further detail below, (i) the Petitioner is the duly-appointed "foreign representative" of the Peruvian Proceeding with respect to the Chapter 15 Debtor, (ii) the Peruvian Proceeding is a foreign proceeding under section 101(23) of the Bankruptcy Code, (iii) the Peruvian Proceeding satisfies the standard to be considered a "foreign main proceeding" as defined under section 1502(4) of the Bankruptcy Code for the purposes of chapter 15 because the center of main interests ("**COMI**") for the Chapter 15 Debtor is in Peru, and (iv) the Petition meets the standards under section 1515.[7]

## **BACKGROUND**

### A.     **General Background and History**

#### i.     *Overview of the Company's Business*

8.     The Chapter 15 Debtor is a Peruvian telecommunications company that has offered telecommunications services throughout Peru for over thirty years.  The Company provides a wide range of services, including local, domestic and international long-distance services, broadband services, cable television services, interconnection services, prepaid and postpaid mobile services and cellphone sales.  The Company has also been a pioneer in the deployment of fiber optics in Peru, providing access to this technology to more than 4.4 million homes.

9.     The Company is one of Peru's largest providers, serving approximately 13 million

---

[7]    In the alternative, if this Court declines to recognize the Peruvian Proceeding as the "foreign main proceeding", it is eligible for recognition and relief under section 1521 as a "foreign nonmain proceeding" within the meaning of section 1502(5).  Recognition and application of the stay will allow for the efficient and orderly administration of the Chapter 15 Debtor's assets and affairs in the Peruvian Proceeding, thus protecting the interests of all creditors and maximizing the value of assets by preventing certain opportunistic creditors from circumventing the Peruvian Proceeding and commencing action in the United States at the expense of the broader process.

customers in Peru.  The Company employs more than 3,600 employees in Peru, works with many business partners, vendors and suppliers, and is also indirectly responsible for the employment of thousands of other people throughout Peru.  The Company's infrastructure supports approximately 33.05% of Peru's internet connections and almost a third of Peru's mobile connections.  The Company is also committed to expanding access to telecommunications in rural areas with Peru's Ministry of Transport and Communications, and provides access to more than 55,000 people in more than 18,000 communities and remote locations.

10.     The Company's largest shareholder is Telefónica Hispam, which holds roughly 99.3% of the Company's equity.  The remaining shares are traded on the Lima Stock Exchange (*Bolsa de Valores de Lima*).     Telefónica Hispam is a subsidiary of Spain-based telecommunications company Telefónica S.A., which is the leading operator in Brazil, Argentina, Chile and has substantial operations in Colombia, Ecuador, Mexico, Nicaragua, Panama, Uruguay and Venezuela.  Telefónica S.A. entered the Peruvian market in 1994 with the acquisition of two government-owned telecommunications companies through a privatization process, and it has invested more than $9.2 billion in Peru since.

11.     The Company operates independent of its parent but receives technical, operational and administrative support from Telefónica Hispam.

### ii.        The Company's Corporate Structure and Offices

12.     The Company's operational and economic activities are located in Peru.  The Company is incorporated pursuant to the laws of Peru, and has maintained its registered offices in Peru at all times since its incorporation.  The Company is managed by a board of directors and board of executive officers, the latter who reside in Peru.

13.     Pursuant to Peruvian law, the Company's board of directors and Chief Executive

6

Officer have primary responsibility for the management and administration of the Company. The Company's board of directors is comprised of two executive members and three independent members. The Company's executive officers consist of (i) the President of the Board of Directors and Chief Executive Officer, (ii) the Chief Financial Officer, (iii) the General Secretary, and (iv) seven Directors. These executive officers oversee business operations and are responsible for the execution of the policy decisions of the board and of the shareholders' meetings.

14.     Every aspect of the Company's operations, finances, corporate management, employee management and payroll, and short- and long-term strategic planning is directed from its administrative office in Lima, Peru. Additionally, the Company files its taxes in Peru, its managers are based in Peru, and its board of officers' meetings are all held in Peru.

**B.     Connections to the United States**

15.     Although substantially all of the Chapter 15 Debtor's assets are located in Peru, some of its assets and obligations are also located in or connected to the United States. The Chapter 15 Debtor, as issuer, has contract rights under the Indenture (defined below) for the U.S. dollar-denominated NY Notes. The Indenture is governed by New York law and contains a forum selection clause that provides that the parties have consented to the jurisdiction of the courts in New York and federal courts located in the Borough of Manhattan, New York, with respect to any action that may be brought in connection with the Indenture of the NY Notes.

16.     Additionally, the Chapter 15 Debtor holds an undrawn retainer in the amount of $100,000 in its Houston retainer account (the "**Houston Retainer Account**") as well as US$5,000 in a separate trust account located in Houston in the name of the Chapter 15 Debtor (the "**Houston Escrow Account**").

17.     Further, section 12.14 of the Indenture contains a forum-selection clause in which

the obligors consent to the jurisdiction of New York State courts and U.S. federal courts sitting in New York. Likewise, Citibank, serving as trustee, paying agent, calculation agent and registrar under each of the NY Notes, is based in United States. The Indenture Trustee can seek to pursue any proceeding to enforce performance of any provision in the NY Notes in the courts in New York.

18. Although the Chapter 15 Debtor's customers are primarily located in Peru, they continue to use the mobile services provided by the Chapter 15 Debtor when they go abroad by continuing to receive and or transmit voice calls, text messages and internet data through their primary cellphone lines. The Chapter 15 Debtor enters into contracts (the "**Roaming Agreements**") with telecommunication providers worldwide, including providers in the United States, to ensure that the Chapter 15 Debtor's customers benefit from coverage internationally. The international roaming capabilities provided pursuant to the Roaming Agreements are a major selling point for the Chapter 15 Debtor's telecommunications services.

**C.    The Chapter 15 Debtor's Financial Obligations to Third Parties**

19. As of the PCO Petition Date, the Chapter 15 Debtor had aggregate assets of approximately S$9.4 billion (approximately US$2.50 billion) and liabilities of approximately S$8.9 billion (approximately US$2.4 billion). Among the Chapter 15 Debtor's liabilities, S$2.27 billion (approximately US$603.1 million) is on account of its obligations as an obligor under the following international NY Notes and seven tranches of Local Notes (as defined below), all of which is also subject to the Peruvian Proceeding (collectively, the "**Prepetition Debt**"):

> (i)    7.375% senior notes issued by the Chapter 15 Debtor in aggregate principal amount of S$1.7 billion (US$451.6 million) (the "**NY Notes**"), maturing on April 10, 2027, governed by that certain indenture (the "**Indenture**") dated as of April 10, 2019, and Citibank, N.A. ("**Citibank**" or the "**Indenture Trustee**"), as trustee, paying agent, calculation agent and registrar;

(ii)     5.500% notes issued by the Chapter 15 Debtor in aggregate principal amount of S$105 million (US$27.9 million), maturing in April 2025;

(iii)    7.2813% notes issued by the Chapter 15 Debtor in aggregate principal amount of S$80 million (US$21.3 million), maturing in October 2026;

(iv)    3.625% notes issued by the Chapter 15 Debtor in aggregate principal amount of S$108 million (US$28.7 million), maturing in July 2027;

(v)     2.875% notes issued by the Chapter 15 Debtor in aggregate principal amount of S$85 million (US$22.6 million), maturing in April 2028;

(vi)    3.125% notes issued by the Chapter 15 Debtor in aggregate principal amount of S$83 million (US$22.1 million), maturing in May 2028

(vii)   3.1875% notes issued by the Chapter 15 Debtor in aggregate principal amount of S$34 million (US$9.0 million), maturing in July 2028; and

(viii)  3.0938% notes issued by the Chapter 15 Debtor in aggregate principal amount of S$77 million (US$20.5 million), maturing in May 2030 (the notes described in (ii)–(viii), the "**Local Notes**").

20.     With the exception of the NY Notes (which are governed by New York law), the Chapter 15 Debtor's indebtedness is governed by Peruvian law.

21.     The following approximate amounts (including accrued interest) remained outstanding under the Prepetition Debt as of the PCO Petition Date:

| Prepetition Debt | Outstanding Amounts |
|---|---|
| NY Notes | S$1.7 billion (US$451.6 million) |
| Local Notes | S$570 million (US$151.5 million) |
| **TOTAL** | **S$2.27 billion (US$603.1 million)** |

**D.     Events Precipitating Commencement of the Peruvian Proceeding**

22.     In recent years, the Company has faced numerous operational challenges that have led to reduced revenues and increased commercial expenses, all of which have affected its ability to service its debt obligations.  In addition, the Company has recently settled a longstanding tax

9

dispute with SUNAT and continues to face significant near-term tax obligations, further contributing to its deteriorating liquidity.  These challenges have led to a negative market outlook and made it difficult for the Company to attract investors and obtain new financing at market rates.

### i.   *Operational Challenges and Loss of Market Share*

23.     The Company provides telecommunications services in Peru pursuant to concessions granted by the Peruvian government through concession agreements.  In recent years, the Company has faced significant competition in each of its markets.  As of December 31, 2018, seventeen total concessions had been granted for telecommunications service to a number of providers operating in Peru, including to the Company's main competitors in the mobile sector, Entel and Bitel, which has significantly reduced the Company's revenues, increased its commercial expenses, and altered the dynamics of the market.  Since 2019, the Company's market share in the mobile market fell from 35.8% to 26.6%.

24.     While the Company remains a leader in the fixed business market providing fixed telephone, internet, and television services, it has lost significant market share since 2019 due to intensified competition from over-the-top platforms and optical fiber operators, which have attracted customers by offering discounts, promotions, temporary speed increases and bonuses for on-time payments.  Since 2019, the Company's share in (i) the fixed telephone market fell from 71.6% to 41.4%, (ii) the television market fell from 62.2% to 51.8%, and (iii) the fixed internet market fell from 70.1% to 33.1%.

25.     Further exacerbating the operational challenges due to increased competition, the Company faced problems collecting revenue and retaining its customer base during the COVID-19 crisis in 2020.  In 2022, the Company also faced significant challenges and costs transitioning from the hybrid fiber-coaxial network to fiber-to-home network.  In addition, unauthorized

copying, distribution, and piracy of programming and films interfere with the Company's cable television services, and the Company has expended substantial resources to protect its content.

26.     Since 2019, the Company's annual revenue has decreased from S$7.88 billion (US$2.10 billion) to S$6.02 billion (US$1.60 billion), representing an average annual decrease of 6%.   The reduction in revenues, combined with the increase in trade expenses, has negatively impacted operating income.   The difficulty of adjusting operating expenses to the new size of the business, including network, commercial and labor expenses, has also affected the Company's profitability.

### ii.     Tax Liability and Contingencies With SUNAT

27.     The Company has a longstanding tax liability with SUNAT arising from disputes over revenue recognition for the 1998–2001 tax period.   In April 2024, the Company disclosed it would pay more than S$1.4 billion (US$371.9 million) to SUNAT in compliance with a ruling by the Peruvian Supreme Court in January 2023 relating to the Company's tax liability for 2000 and 2001.   To fund this liability, the Company's board approved a loan from Telefónica Hispam for S$771 million (US$204.8 million) that matured in December 2024.   The board also authorized the Company to obtain bank financing for up to S$1.2 billion (US$318.8 million) and secure medium-term bank letters of credit for S$1.7 billion (US$451.6 million) to cover guarantees requested by SUNAT.   In July 2024, the board capitalized the intercompany loans with Telefónica Hispam to correct negative shareholders' equity.[8]

28.     Aside from the settlement of legacy tax disputes, since 2019, the Company has paid S$2.65 billion (US$706.7 million) in tax contingency to SUNAT.   The possibility of a tax dispute

---

[8]     Outstanding tax payments are expected to be settled through a 2025 installment program, through which Peruvian companies may extend a portion of a final settlement up to six years under SUNAT's standard procedures.

has led the Company to adopt a conservative position with respect to new investments to preserve resources in the event of a contingency, which limits the Company's ability to pursue certain projects.  In addition, continuous tax inspections have caused uncertainty about new cash outflows, which limits the Company's ability to obtain credit and financing for its operations and to refinance financial obligations.

### iii.       The Company's Liquidity Constraints

29.       All of the aforementioned factors have led to accumulated net losses totaling S$8.92 billion (US$2.37 billion) from 2019 to 2024.[9]  Further, since 2019, the Company has not distributed dividends to its shareholders due to the losses generated.  In order to meet its financial obligations, the Company received financial support from Telefónica Hispam in the form of intra-group loans totaling S$4.06 billion (US$1.08 billion).  At the end of 2024, 98% of the intra-group loans granted since 2022 (S$3.45 billion (US$916.6 million)) were capitalized, which is roughly 50% of the Chapter 15 Debtor's revenue in 2024.  To date, the Chapter 15 Debtor maintains an outstanding balance of intra-group loans equivalent to 2%.  No repayments have been made since 2022.

30.       On December 11, 2024, Moody's downgraded the Company's Corporate Family Rating and senior unsecured rating from B2 to Caa1 and placed the ratings under review for further downgrades.  According to Moody's, the downgrade reflected the increasing risk of refinancing and debt restructuring due to the Company's weak operating performance and significant tax liability.  On December 19, 2024, Fitch downgraded the Company from B+ to B- for similar reasons citing "limited options given the [C]ompany's upcoming maturity of its first installment

---

[9]       The provision for fiscal contingencies represents S$2.85 billion (US$757.17 million) of the net losses.  Likewise, payment to SUNAT for the tax contingencies materialized between 2019 and 2024 have amounted to S$2.65 billion (US$704.04 million).

of its 2027 amortizing notes, amidst weak operating performance and remaining tax liability."[10] The market's negative outlook has made it difficult for the Company to attract investors and obtain new financing at market rates.

### E.    The Peruvian Proceeding

31.    In light of these financial difficulties, the Chapter 15 Debtor has determined that it is unable to service its near-term debt obligations to creditors.  Additionally, the Chapter 15 Debtor's parent company, Telefónica Hispam, has committed S$1.78 billion (approximately US$483.70 million) that is intended to be exclusively used for working capital by the Chapter 15 Debtor over the next twelve months.  The Chapter 15 Debtor filed the PCO Petition on the PCO Petition Date so that it may continue to operate its business and provide public telecommunications services to approximately 13 million customers in Peru, while providing a forum for negotiations with creditors with respect to a value-maximizing restructuring solution.  *See* Form of Voluntary Petition, Exs. A, B; Peruvian Counsel Decl. Ex. B.  The Chapter 15 Debtor has requested that the Commission accept the PCO Petition on a timely basis to avoid potential creditor actions and harm to the restructuring negotiations.

32.    The Peruvian Proceeding is currently in its interim phase.  While the filing of the PCO Petition formally commences a PCO, it does not automatically result in a stay of creditor actions.  Peruvian Counsel Decl. ¶¶ 12, 17.  Rather, it triggers a prohibition period during which certain acts, such as certain transfers of assets or encumbrances, may be declared ineffective if they occur between the PCO Petition Date and the date on which the creditors appoint or ratify the Chapter 15 Debtor's administration (in the case of financial restructuring) or approves and signs

---

[10]    *Fitch Downgrades Telefonica del Peru's IDRs to 'B-'; Rating Watch Negative*, FITCHRATINGS, https://www.fitchratings.com/research/corporate-finance/fitch-downgrades-telefonica-del-peru-idrs-to-b-rating-watch-negative-19-12-2024 (Dec. 19, 2024).

the respective liquidation agreement (in the case of dissolution or liquidation). *Id.* ¶ 16. During this interim phase, the Commission will review the PCO Petition and determine within ninety (90) days whether the PCO is lawful and that all requirements for PCO have been met. *Id.* ¶ 17.

33.     If the Commission determines that all requirements have been satisfied, it will issue a decision that will become final once the deadline to challenge such decision (*i.e.*, fifteen (15) business days after issuance) passes. *Id.* Within three (3) to four (4) weeks, the Commission will publish such decision in the official Insolvency Gazette (*Boletin Concursal*) (the "**Publication**"). *Id.* During this period, the Chapter 15 Debtor is not protected by the automatic stay under Peruvian Insolvency Law. *Id.*

34.     Upon the issuance of the Publication, an automatic stay of all pre-Publication obligations of the Chapter 15 Debtor will immediately take effect, which will remain in place until creditors approve a restructuring plan (or liquidation agreement), which may take between twelve (12) or eighteen (18) months. *Id.* ¶¶ 18, 19.

35.     After the issuance of the Publication, creditors will have thirty (30) business days to submit proofs of claims, and once notified by INDECOPI, the Chapter 15 Debtor will have ten (10) business days thereafter to review and opine on such proofs of claims. *Id*. ¶ 20. The Commission will then adjudicate on the existence and quantum of creditor claims.[11] Only creditors whose claims have been adjudicated and allowed will be entitled to participate in the PCO, including by speaking in all creditors' meetings and voting on whether the debtor should pursue a restructuring or liquidation, voting on a plan in a restructuring, or adopting certain decisions regarding the debtor in the PCO, such as whether to displace management. *Id.*

---

[11]     The Commission has a period of up to ninety (90) business days for this process, but in practice it typically takes between eight (8) to twelve (12) months from the date of the Publication. *Id*. ¶ 20. Adjudication could take up to eighteen (18) months for large, complex cases. *Id.*

36.     The Chapter 15 Debtor now awaits confirmation from the Commission that the PCO eligibility requirements have been satisfied.  The Company and Peruvian counsel to the Company (Rebaza, Alcázar & de las Casas) believe the PCO Petition meets all the eligibility requirements.  However, as the Commission has not yet issued the Publication, there is no injunction or stay in place preventing creditors from seeking to enforce all obligations of the Chapter 15 Debtor.[12]  Once the Commission issues the Publication, several protective measures will be implemented, including the suspension of the effects of all acceleration provisions in the Company's debt documents and a stay against any enforcement actions and orders attaching assets or rights of the Company.  *Id.*

## JURISDICTION, ELIGIBILITY AND VENUE

37.     The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Foreign Representative confirms his consent to the entry of a final order by the Court.

38.     Venue is proper pursuant to 28 U.S.C. § 1408 and 1409.

39.     The predicates for the relief requested herein are sections 105, 1509, 1515, 1517, 1520 and 1521 of title 11 of the United States Code (the "**Bankruptcy Code**"), and rules 1007(a) and 7007.1 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

40.     The presence of assets within the United States renders the Chapter 15 Debtor eligible to file the Chapter 15 Case pursuant to section 109(a) of the Bankruptcy Code.  *See In re Yukos Oil Co.*, 321 B.R. 396, 407 (Bankr. S.D. Tex. 2005) (stating that courts routinely hold that

---

[12]     There is no legal mechanism for the debtor to request or obtain a preliminary stay during the period between filing the PCO Petition and the Publication.  *Id.*

nominal amounts of property located in the United States enable foreign corporations to qualify as debtors under section 109(a) of the Bankruptcy Code) (citations omitted).

## **RELIEF REQUESTED**

41.     The Petitioner requests that this Court enter an order, substantially in the form of the Proposed Order attached hereto and pursuant to sections 105(a), 1509, 1515, 1517, 1520, and 1521 of the Bankruptcy Code:

(a)     granting the Petition in the Chapter 15 Case and recognizing the Peruvian Proceeding as the "foreign main proceeding" for the Chapter 15 Debtor pursuant to section 1517 of the Bankruptcy Code;

(b)     finding that the Petitioner is the duly appointed "foreign representative" of the Chapter 15 Debtor within the meaning of section 101(24) of the Bankruptcy Code and is authorized to act on behalf of the Chapter 15 Debtor in the Chapter 15 Case; and

(c)     granting such other and further relief as the Court deems just and proper.

## **REQUIRED DISCLOSURES**

42.     The Petitioner hereby provides the following disclosures in accordance with Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"):

(a)     The following disclosure identifies any corporation, other than a governmental unit, that directly or indirectly owns 10% or more of any class of the Chapter 15 Debtor's equity interests as of the commencement of the Chapter 15 Case:

(i)     99.3% of the Chapter 15 Debtor's equity is directly owned by Telefónica Hispam.

(ii)     Telefónica Hispam is a wholly-owned subsidiary of Telefónica S.A.

(b)     Aside from the Petition, the Chapter 15 Debtor does not have a pending petition with this Court for relief under any chapter of the Bankruptcy Code;

(c)     Aside from the Peruvian Proceeding, the Chapter 15 Debtor is not involved in any other foreign proceedings;

(d)     Aside from the Petitioner with respect to this Chapter 15 Case, no other persons are presently authorized to administer foreign proceedings of the Chapter 15 Debtor at this time;

(e)     The Chapter 15 Debtor is not a party to any litigation in the United States that is pending as of the date of the commencement of the Chapter 15 Case; and

(f)     In conjunction with this Verified Petition, the Petitioner is seeking provisional relief in the Provisional Relief Motion submitted substantially contemporaneously herewith.

## BASIS FOR RELIEF

43.     The Court should grant the Verified Petition and recognize the Peruvian Proceeding as the foreign main proceeding for the Chapter 15 Debtor.  As is set out below, each of the procedural requirements of section 1517(a) of the Bankruptcy Code is satisfied.  Notably, the Court has the jurisdiction to hear and determine this Chapter 15 Case, as the Chapter 15 Debtor has assets in the United States in accordance with section 109(a) of the Bankruptcy Code and is thus eligible to be a debtor under chapter 15 of the Bankruptcy Code.  Additionally, the Petitioner is the duly-authorized "foreign representative" of the Peruvian Proceeding with respect to the Chapter 15 Debtor.  The Peruvian Proceeding is a "foreign proceeding" under section 101(23) of the Bankruptcy Code as it is a collective administrative proceeding in a foreign country under the Peruvian Insolvency Law subject to supervision by INDECOPI (or the Commission).  The Peruvian Proceeding also satisfies the standard to be considered a "foreign main proceeding" for the purposes of chapter 15 because the COMI for the Chapter 15 Debtor is in Peru.  There is a presumption that the COMI of a business entity lies in the location of its registered offices.  Here, the Chapter 15 Debtor's registered offices are located in the city of Lima, Peru.  Even if that presumption were challenged, the facts regarding the operations of the Chapter 15 Debtor also support a finding that its COMI is in Peru.  A finding that the Chapter 15 Debtor's COMI is located in Peru also aligns with the expectations of the Chapter 15 Debtor's creditors.  *See generally* Ex. B (NY Notes Offering Memorandum).  Further, as explained below, the Petition meets the requirements of section 1515 of the Bankruptcy Code.

A. **The Court Has Jurisdiction to Recognize the Peruvian Proceeding and Grant the Relief Requested**

44.     This Court has jurisdiction to hear and determine this Chapter 15 Case, as the Chapter 15 Debtor has assets in the United States in accordance with section 109(a) of the Bankruptcy Code and is thus eligible to be a debtor under chapter 15 of the Bankruptcy Code in accordance with section 109(a) of the Bankruptcy Code. *See Yukos Oil Co.*, 321 B.R. at 407.

45.     The Chapter 15 Debtor's principal assets in the United States are located in this district and, accordingly, venue is also proper here. 28 U.S.C. § 1410(1). The Chapter 15 Debtor has no employees or operations in the United States and is not a party to any lawsuits in the United States. *Supra* ¶¶ 9, 12–14 , 42. The Chapter 15 Debtor has no United States affiliates or equity holders. *Supra* ¶¶ 10, 42. The Chapter 15 Debtor's principal connection to the United States are the funds deposited in the Houston Retainer Account and Houston Escrow Account held with White & Case LLP, the Chapter 15 Debtor's U.S. counsel in connection with the filing of the Chapter 15 Case, which are located in Houston, Texas. *Supra* ¶ 16.

46.     Accordingly, the Petitioner respectfully submits that (i) this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(2)(P) and 1334 of title 28 of the United States Code and section 1501 of the Bankruptcy Code as well as the Order of Reference and (ii) venue in this district is consistent with the interests of justice and the convenience of the parties and is proper pursuant to 28 U.S.C. §§ 1410(1), (3).

B. **The Requirements of Section 1517(a) of the Bankruptcy Code Are Satisfied**

47.     Section 1517(a) of the Bankruptcy Code provides that, after notice and a hearing, the Court shall enter an order recognizing a foreign proceeding as a foreign main proceeding if each of the following three requirements are met: (1) such foreign proceeding is a "foreign main proceeding" within the meaning of section 1502 of the Bankruptcy Code; (2) the foreign

18

representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515 of the Bankruptcy Code.  *See* 11 U.S.C. § 1517(a); *Ad Hoc Group of Vitro Noteholders v. Vitro, S.A.B., de C.V. (In re Vitro, S.A.B. de C.V.*), 470 B.R. 408, 410 (Bankr. N.D. Tex. 2012), *aff'd*, 701 F.3d 1031 (5th Cir. 2012); *In re Ran*, 607 F.3d 1017, 1021 (5th Cir. 2010).

48.     As explained below, this Petition satisfies all of the requirements of section 1517(a).  Therefore, the Peruvian Proceeding should be recognized as the foreign main proceeding of the Chapter 15 Debtor.

**C.     The Peruvian Proceeding is a "Foreign Proceeding"**

49.     The Peruvian Proceeding satisfies the general definition of "foreign proceeding" as set forth in section 101(23) of the Bankruptcy Code.  11 U.S.C. § 101(23).  Section 101(23) requires that a "foreign proceeding" be: (i) either judicial or administrative in character; (ii) collective in nature; (iii) pending in a foreign country and authorized or conducted under a law related to insolvency or the adjustment of debtors; (iv) a proceeding in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and (v) for the purpose of reorganizing or liquidating the assets and affairs of the debtor.  *Id.*; *see In re ABC Learning Ctrs. Ltd.*, 728 F.3d 301, 307 (3d Cir. 2013); *In re Irish Bank Resolution Corp. (In Special Liquidation)*, No. 13-12159 (CSS), 2014 Bankr. LEXIS 1990, at *39-40 (Bankr. D. Del. Apr. 30, 2014); *see also In re Light S.A. – Em Recuperação Judicial*, No. 24-90531 (CML) (Bankr. S.D. Tex. Nov. 12, 2024) [ECF No. 32] (recognizing Brazilian proceeding as a foreign main proceeding); *In re PizzaExpress Fin. 2 PLC*, No. 20-34868 (MI) (Bankr. S.D. Tex. Nov. 3, 2020) [ECF No. 35] (recognizing an English proceeding as a foreign main proceeding); *In re Selecta Fin. UK Ltd.*, No. 20-34947 (DRJ) (Bankr. S.D. Tex. Oct. 30, 2020) [ECF No. 61] (same); *In re AllSaints USA Ltd.*,

No. 20-33072 (MI) (Bankr. S.D. Tex. July 6, 2020) [ECF No. 54] (recognizing an English company's voluntary arrangement proceeding as foreign main proceeding).  The Bankruptcy Code defines "foreign court" as "a judicial or other authority competent to control or supervise a foreign proceeding."  11 U.S.C. § 1502(3).

50.    First, the Peruvian Proceeding is an administrative proceeding[13] that Telefónica Perú commenced pursuant to the Peruvian Insolvency Law with INDECOPI, which is an administrative agency of the executive branch of Peru's government.[14]  Peruvian Counsel Decl. ¶¶ 9, 45.  Insolvency cases are automatically assigned to the Commission, which supervises the cases to ensure compliance with the Peruvian Insolvency Law and is responsible for, among other things, (i) determining whether the Chapter 15 Debtor satisfies the requirements of PCO, (ii) publishing the PCO Acceptance Notice, (iii) collecting, verifying, allowing (or disallowing), and classifying creditors' claims and their amounts, (iv) calling and publishing the date, time and location of meetings of creditors, and (v) appointing one or more representative to represent INDECOPI.  *Id.* ¶¶ 9, 17, 19–22, 24–25.  INDECOPI also plays an administrative role preventing unfair treatment of creditors, overseeing the appointment of an administrator for any plan of reorganization, and

---

[13]  Courts have held that an administrative proceeding is sufficient to satisfy this element of section 101(23).  *In re Betcorp Ltd.*, 400 B.R. 266, 281 (Bankr. D. Nev. 2009) ("[S]ection 101(23) requires only that a proceeding have either an administrative *or* judicial character.") (emphasis in original); *see In re Manley Toys Ltd.*, 580 B.R. 632, 639 (Bankr. D.N.J. 2018); *In re ABC Learning Ctrs. Ltd.*, 445 B.R. 318, 333 (Bankr. D. Del. 2010), *aff'd*, 728 F.3d 301 (3d Cir. 2013).  In *Betcorp*, the court found that the Australian voluntary winding up proceeding had an "administrative character" because the initial actions of the Australian liquidator, such as sending a notice of liquidation and requesting proofs of debt, had an "administrative character," and the submission of proofs of debt and the ultimate payment to creditors were made "pursuant to the administrative framework created" by the Australian insolvency law.  400 B.R. at 280.  In *ABC*, the court found that a majority of the liquidators' tasks (under the same Australian insolvency law), such as collecting assets, distributing assets pursuant to the statutory priorities, conducting investigations of possible voidable transactions, circulating information to creditors, preparing various required reports, and convening meetings, were "administrative in nature." 445 B.R. at 328.  For similar reasons, the *Manley Toys* court found that the liquidation under Hong Kong law was "largely administrative in nature," and therefore satisfied this element of section 101(23).  580 B.R. at 639.

[14]  There are also judicial aspects to the Peruvian Proceeding.  For example, creditors may judicially challenge certain transfers of a debtor's assets during the interim period between the filing of a PCO petition and when the Commission publishes the decision accepting the PCO.  *Id.* ¶ 33.

supervising the execution of such plan.  *Id.* ¶ 31.

51.     Second, the Peruvian Proceeding is "collective," in that it "considers the rights and obligations of all creditors" in a single proceeding.  *See id.*; *see In re Poymanov*, 571 B.R. 24, 33 (Bankr. S.D.N.Y. 2017) ("A proceeding is collective if it considers the rights and obligations of all of a debtor's creditors, rather than a single creditor.").  Indeed, its purpose is to create a forum for collective negotiation between the Chapter 15 Debtor and its creditors, who are notified of their opportunity to participate in the PCO via the Publication.  *Id.* ¶¶ 11, 44–45, 47.  All creditors must submit their claims with the Commission, which will review such claims and determine their validity, and cannot receive recoveries outside of the Peruvian Proceeding.  *Id.* ¶¶ 20–21, 32.  Creditors holding claims that have been deemed allowed by the Commission will have the ability to vote on various key matters, such as whether the debtor should be restructured or liquidated, and vote on the terms of any restructuring plan.[15]  *Id.* ¶¶ 21, 37.  An approved plan binds the debtor and all of its creditors, even if they opposed the plan, did not attend creditors' meetings, or did not timely request the allowance of their claims.  *Id.* ¶ 38.

52.     Third, the Peruvian Proceeding is pending in a foreign country—Peru—under a law relating to insolvency, the Peruvian Insolvency Law.  *Id*. ¶¶ 8–11.

53.     Fourth, throughout the Peruvian Proceeding, the assets and affairs of the Chapter 15 Debtor are supervised by INDECOPI.  *Id*. ¶ 45.  The Commission will supervise the adjudication of creditors' claims and ensure that creditors' rights, including their right to vote on the restructuring plan and the terms thereof, are preserved.  *Id*..  While the debtor's board of directors and management remain in place during the Peruvian Proceeding, creditors may vote to

---

[15]   If the debtor fails to comply with the provisions of an approved plan, the Commission will declare the dissolution and liquidation of the debtor.  *Id.* ¶ 39.  This decision of the Commission may be reversed at a creditors' meeting, where the creditors' may agree again on the restructuring and approve a new plan.  *Id.* ¶ 39.

remove management after issuance of the Publication and may challenge various actions taken by management, including by clawing back or avoiding transactions that were outside the ordinary course of business or that encumber assets. *Id.* ¶ 28, 30–34. The declaration of ineffectiveness is processed judicially, and if the criteria for ineffectiveness is met, a court will order the return of assets to the debtor's estate and/or lift liens and encumbrances, as applicable, for the benefit of all creditors. *Id.* ¶ 33. In practice, these abilities afforded to creditors serve to guide management's decision-making. *Id.* ¶ 34. Once a restructuring plan has been approved, INDECOPI monitors its implementation and ensures compliance with the terms of the plan. *Id.* ¶ 41. INDECOPI's oversight of the Chapter 15 Debtor's assets and affairs will continue until it demonstrates to INDECOPI that all claims (recognized and non-recognized) in an approved plan of reorganization have been extinguished, at which point INDECOPI will declare in a resolution the conclusion of the PCO. *Id.* ¶ 42.

54.     Fifth, Telefónica Perú commenced the Peruvian Proceeding for the purpose of reorganizing the Chapter 15 Debtor and receiving the protection of an automatic stay against creditor action. *Id.* ¶¶ 44. As set forth in the Peruvian Counsel Declaration, the Peruvian Proceeding is intended to protect the Chapter 15 Debtor so that it may continue to operate its business and negotiate a value-maximizing restructuring plan that will reorganize its capital structure. *Id.* ¶¶ 28, 44. As noted above, the Chapter 15 Debtor has requested INDECOPI accept the PCO Petition on a timely basis to avoid potential creditor actions and harm to the restructuring negotiations. *Id.* ¶ 44.

55.     The fact that the Peruvian Proceeding is in its interim phase does not change the conclusion that it is a "foreign proceeding." *See In re Netia Holdings S.A.*, 277 B.R. 571, 582–83 (Bankr. S.D.N.Y. 2002) (holding that Polish insolvency proceedings that were in their "pre-

opening phase" were "foreign proceedings"); *see also In re Abeinsa Holding, Inc.*, 562 B.R. 265, 269–70 (Bankr. D. Del. 2016) (granting recognition of Spanish conciliation procedure under Spanish insolvency law where debtor and its affiliates filed notices with the Spanish court that negotiations regarding a global settlement had commenced with principal creditors).  In *Netia*, objectors argued that while the Polish arrangement proceeding had commenced, it was not a "foreign proceeding" because it "ha[d] not yet reached the procedural stage of 'opened.'"  277 B.R. at 582.  However, the court found that "proceedings commenced by the [p]etitioners were the start of a *continuing* process, the entirety of which was a 'foreign proceeding.'"  *Id.* at 583 (emphasis in original).  Even if the pre-opening phase were examined in isolation, it would still meet the criteria, as section 101(23) "is broad, and by its terms encompasses a broad array of types of proceedings."  *Id.* at 580.[16]

### i.     The Petitioner is a Proper "Foreign Representative"

56.     The Petitioner is the "foreign representative" authorized by the Company's board, thereby satisfying sections 101(24) and 1517(a)(2) of the Bankruptcy Code.  Section 101(24) of the Bankruptcy Code provides that "the term 'foreign representative' means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."  11 U.S.C. § 101(24); *see also In re Vitro, S.A.B. de C.V.*, 701 F.3d at 1045.  The Bankruptcy Code does not require that the foreign representative be appointed by the foreign court or administrator.   Instead, a debtor may appoint a foreign representative pursuant to corporate authorizations passed in accordance with Peruvian law.  *See,*

---

[16]     The fact that there is not yet an automatic stay in place in the Peruvian Proceeding does not change the analysis.  *Id.* at 586 (rejecting argument that a requirement to qualify as "foreign proceedings" is the presence of an automatic stay and deeming it inappropriate to "judicially craft such requirements now").

*e.g.*, *In re Metrofinanciera*, No. 10-20666 (RSS), 2010 Bankr. LEXIS 6540, at *5 (Bankr. S.D. Tex. Sept. 24, 2010) (recognizing individual "properly and specifically authorized" to commence the chapter 15 proceeding by the board of directors as the foreign representative); *In re Andrade Gutierrez Engenharia S.A.*, 645 B.R. 175, 183 (Bankr. S.D.N.Y. 2022) (holding that the foreign representative duly authorized by the chapter 15 debtors' board was a foreign representative within 11 U.S.C. §101(24)); *In re Serviços de Petróleo Constellation S.A.*, 600 B.R. 237, 270 (Bankr. S.D.N.Y. 2019) (recognizing as proper foreign representative authorized under resolutions to commence a chapter 15 case on behalf of each of the foreign debtors); *In re Oi Brasil Holdings Coöperatief U.A.*, 578 B.R. 169, 184–85 (Bankr. S.D.N.Y. 2017) (recognizing appointment of foreign representative "pursuant to resolutions and powers of attorney signed by authorized representatives of" foreign debtors); *In re OAS S.A.*, 533 B.R. 83, 95 (Bankr. S.D.N.Y. 2015) (recognizing foreign insolvency proceeding and holding that the "Bankruptcy Code does not require the judicial authorization or appointment of the foreign representative").

57.     Here, the Petitioner is an individual who has been duly appointed by the board of the Chapter 15 Debtor as its foreign representative in accordance with section 101(24) of the Bankruptcy Code and has been granted authority to commence this Chapter 15 Case.  *See* Form of Petition, Ex. C.  As explained in the Peruvian Counsel Declaration, nothing in the Peruvian Insolvency Law requires a foreign representative be approved by INDECOPI or any other court. Peruvian Counsel Decl. ¶¶ 29, 46.

      **ii.**     ***The Petition Was Properly Filed Under Sections 1504 and 1509 and Meets the Requirements of Section 1515 and Bankruptcy Rule 1007(a)(4)***

58.     The third and final requirement for recognition of a foreign proceeding under section 1517(a) of the Bankruptcy Code is that the petition for recognition meet the procedural

requirements of section 1515 of the Bankruptcy Code.  *See* 11 U.S.C. § 1517(a)(3).  Here, all of those procedural requirements are satisfied.

59.    First, the Petitioner duly and properly commenced this Chapter 15 Case in accordance with sections 1504 and 1509(a) of the Bankruptcy Code by filing the Petition with all the documents and information required by sections 1515(b) and 1515(c).  *Ran*, 607 F.3d at 1021-22; *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008) ("A case under chapter 15 is commenced by a foreign representative filing a petition for recognition of a foreign proceeding under section 1515 of the Bankruptcy Code.").

60.    Second, in accordance with sections 1515(b)(1)-(2) and (d) of the Bankruptcy Code, the Petitioner has submitted evidence of the existence of the Peruvian Proceeding and the appointment of the foreign representative.  *See* Form of Petition, Exs. A, B, C; Peruvian Counsel Decl. Ex. B.  As such, the Petitioner satisfies sections 101(24) and 1517(a)(2) of the Bankruptcy Code.  *See, e.g.*, *In re Vitro, S.A.B. de C.V.*, 701 F.3d at 1046–47 (holding that an individual appointed as foreign representative by the debtor's board in anticipation of a Mexican *concurso* proceeding, which contemplates "self-management" during the proceeding similar to that of a debtor in possession, fit within the scope of the Bankruptcy Code's definition of "foreign representative," and recognizing the individual as the foreign representative); *see also In re OAS S.A.*, 533 B.R. at 93 (citing *In re Vitro, SAB. de C.V.*, 701 F.3d at 1046).

61.    Third, in accordance with section 1515(c) of the Bankruptcy Code, this Verified Petition contains a statement identifying the Peruvian Proceeding as the only foreign proceeding currently pending with respect to the Chapter 15 Debtor.  *See supra* ¶ 42.

62.    Fourth, the Foreign Representative has also satisfied the additional requirements

set forth in Rule 1007(a)(4) of the Bankruptcy Rules:  (a) including corporate ownership statements containing the information described in Bankruptcy Rule 7007.1 with respect to the Chapter 15 Debtor and (b) filing a list containing the names and addresses of all person or bodies authorized to administer the foreign proceedings of the Chapter 15 Debtor and all parties to litigation pending in the United States in which the Chapter 15 Debtor is a party at the time of the filing of the Petitions.  *See supra* ¶ 42; Form of Petition, Ex. E.

### D.     The Peruvian Proceeding Satisfies the Requirements for Recognition as a "Foreign Main Proceeding"

63.     With respect to the Chapter 15 Debtor, the Peruvian Proceeding is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code.  A "foreign main proceeding" is defined in the Bankruptcy Code as a "foreign proceeding pending in the country where the debtor has the center of its main interests."  11 U.S.C. § 1502(4).

64.     The COMI for the Chapter 15 Debtor is Peru.  As previously stated, Telefónica Perú is incorporated in Peru and, at all times since its incorporation, has maintained its registered offices and employees in Peru.  *See supra* ¶ 12.  While the Bankruptcy Code does not define COMI, section 1516(c) provides that, in the absence of evidence to the contrary, a debtor's registered offices or habitual residence "is presumed to be the center of the debtor's main interests."  11 U.S.C. § 1516(c).  The legislative history indicates that this rebuttable presumption was "designed to make recognition as simple and expedient as possible" in cases where the COMI of a debtor is not controversial.  H. Rep. No. 109-31, pt. 1, at 112-13 (2005).  The Chapter 15 Debtor is operationally and functionally centered in Lima, Peru, organized under a centralized and interconnected senior management and, is subject to combined cash management and accounting functions in Peru.

65.     Here, the presumption that the Chapter 15 Debtor's COMI is Peru is correct.  In

26

assessing whether the registered office statutory presumption withstands scrutiny, courts have developed a list of non-exclusive factors for determining a debtor's COMI.  *See Ran*, 607 F.3d at 1023-24 (citing the *SPhinX* factors); *ABC*, 445 B.R. at 333, *aff'd*, 728 F.3d 301 (3d Cir. 2013) (citation omitted); *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137-38 (2d Cir. 2013) (referring to the COMI factors developed by the court in *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006)).  Those factors include: (i) the location of the debtor's headquarters; (ii) the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); (iii) the location of the debtor's primary assets; (iv) the location of the majority of the debtor's creditors or a majority of the creditors who would be affected by the case; and (v) the jurisdiction whose law would apply to most disputes.  *See Fairfield Sentry Ltd.*, 714 F.3d at 137; *In re Stanford Int'l Bank, Ltd.*, No. 09-0721 (DCG), 2012 WL 13093940, at *18 (N.D. Tex. July 30, 2012) (enumerating the *SPhinX* factors).

66.     All of the main business decisions with respect to the Chapter 15 Debtor are made in Peru, further supporting a finding that the Chapter 15 Debtor's COMI is Peru.  Indeed, the Chapter 15 Debtor has the following connections to Peru:

(a)     the Chapter 15 Debtor's operations are managed and directed from Telefónica Perú's office in Lima, Peru and are carried out in Peru;

(b)     corporate governance for the Chapter 15 Debtor is directed from Lima, Peru;

(c)     in-person management meetings of the Chapter 15 Debtor are held in Lima, Peru;

(d)     the Chapter 15 Debtor's statutory books, records, and corporate documents are kept in Peru, have been public, and are therefore ascertainable by creditors and third parties;

(e)     strategic and key operating decisions and key policy decisions for the Chapter 15 Debtor are made by management located in Lima, Peru;

(f)     the Chapter 15 Debtor's corporate accounting, accounts payable, insurance procurement, accounts receivable, financial planning, internal auditing, marketing, treasury, real estate, research and development, and tax services are provided in Lima, Peru;

(g)    the Chapter 15 Debtor's finance, legal, human resources, payroll, billing, freight management, procurement and engineering services are carried out in Lima, Peru;

(h)    key information technology and systems used by the Chapter 15 Debtor are provided from Lima, Peru;

(i)    the Chapter 15 Debtor's cash management functions are maintained and directed from Lima, Peru;

(j)    management and senior staff of the Chapter 15 Debtor regularly attend meetings in Lima, Peru;

(k)    the Chapter 15 Debtor's assets are located in Peru; and

(l)    capital expenditure decisions affecting the Chapter 15 Debtor are managed in Lima, Peru.

67.    Courts have also emphasized the need for the debtor's COMI to be readily ascertainable by third parties. *See Ran*, 607 F.3d at 1025 ("[I]t is important that the debtor's COMI be ascertainable by third parties."); *In re British Am. Ins. Co. Ltd.*, 425 B.R. 884, 912 (Bankr. S.D. Fla. 2010) ("The location of a debtor's COMI should be readily ascertainable by third parties").

68.    Some courts look to the expectations of creditors, which can be "evaluated through examination of the public documents and information available to guide creditor understanding of the nature and risks of their investments." *In re Serviços de Petróleo Constellation S.A.*, 613 B.R. 497, 508 (Bankr. S.D.N.Y. 2020) (citing *In re Oi Brasil Holdings Coöperatief U.A.*, 578 B.R. at 228); *OAS*, 533 B.R. at 101-03 (reviewing offering memorandum to establish noteholder expectations as part of a COMI analysis); *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 474 B.R. 88, 93-94 (Bankr. S.D.N.Y. 2012) (same); *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 418 (Bankr. S.D.N.Y. 2014) (considering terms of indenture to establish creditor expectations regarding likely location of a restructuring as part of a COMI analysis).

69.    The fact that the holders of the NY Notes expect that the value of those notes derives from Telefónica Perú's business in Peru further supports a finding that the Chapter 15 Debtor's COMI is Peru. The offering memorandum of the NY Notes provides that the main responsible

party for generating income to satisfy the NY Notes is the issuer, Telefónica Perú,[17] which conducts most of its business in Peru.  *See* Ex. B (NY Notes Offering Memorandum) at 11-18. The risk factors in the offering memorandum highlight that the NY Notes are heavily influenced by the Peruvian economy, such that the noteholders are aware that their investment directly relies on the parent entity's business operation in Peru.  *Id.* at 18-23.  The offering memorandum also specifically discloses that the "[NY] Notes will be subject to the insolvency and administrative laws of Peru." *Id.* at 24.  Therefore, the objective evidence of creditor expectations supports COMI in Peru.

70.     Accordingly, the COMI for the Chapter 15 Debtor is in Peru, and therefore, the Peruvian Proceeding is, and should be recognized as, the foreign main proceeding of the Chapter 15 Debtor, pursuant to section 1517(b)(1) of the Bankruptcy Code.

*     *     *

71.     For all of the reasons set forth above, the Petitioner respectfully submits that all of the requirements of section 1517(a) have been satisfied and that the Chapter 15 Debtors are entitled to all of the relief provided by section 1520 of the Bankruptcy Code.  Thus, the Court should enter the Proposed Order attached hereto recognizing the Peruvian Proceeding as foreign main proceeding.

**<u>RESERVATION OF RIGHTS</u>**

72.     The Foreign Representative hereby reserves his right to supplement this Verified Petition with additional or supplemental pleadings prior to the hearing on the Verified Petition.

---

[17]    There are no guarantors under the NY Notes.

29

## **NOTICE**

73.     Notice of this Verified Petition has been provided to the parties set forth in **Exhibit A** attached hereto (the "**Notice Party List**").  The Foreign Representative respectfully submits that no other or further notice is required.

## **NO PRIOR REQUEST**

74.     No previous request for the relief requested herein has been made to this or any other court.

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Petitioner respectfully requests that the Court: (i) enter the Proposed Order, upon notice and a hearing, substantially in the form attached hereto, and (ii) grant such other and further relief as the Court deems just and proper.

Dated: February 25, 2025
Houston, Texas

/s/ Charles R. Koster
**WHITE & CASE LLP**
Charles R. Koster (Texas Bar No. 24128278)
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone: (713) 496-9700
Facsimile: (713) 496-9701
Email:  charles.koster@whitecase.com

John K. Cunningham (*pro hac vice* pending)
Richard S. Kebrdle (*pro hac vice* pending)
Amanda Parra Criste (*pro hac vice* pending)
Andrea Kropp (*pro hac vice* pending)
Southeast Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email:  jcunningham@whitecase.com
           rkebrdle@whitecase.com
           aparracriste@whitecase.com
           andrea.kropp@whitecase.com

Jason Zakia (*pro hac* vice pending)
111 South Wacker Drive
Suite 5100
Chicago, IL 60606-4302
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: jzakia@whitecase.com

*Attorneys for Timothy O'Connor,*
*as Petitioner and Foreign Representative*

31

## **<u>Certificate of Service</u>**

I certify that on February 25, 2025, I caused a copy of the foregoing document to be served via electronic mail, U.S. mail, or first-class postage, as applicable, and by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Charles R. Koster*
Charles R. Koster

1

## <u>VERIFICATION OF CHAPTER 15 PETITION</u>

Pursuant to 28 U.S.C. § 1746, I, Timothy O'Connor, declare under penalty of perjury under the laws of the United States of America as follows:

I am the authorized foreign representative of the Chapter 15 Debtor with respect to the Peruvian Proceeding for purposes of this Chapter 15 Case.  I declare under penalty of perjury that the factual contents of the foregoing Verified Petition as well as the factual contents of each of the attachments and appendices thereto, are true and accurate to the best of my knowledge, information, and belief, and I respectfully represent as follows:

I have over 30 years of extensive corporate finance and recapitalization experience at firms including Sandler O'Neill & Partners, Gleacher & Company, and Jefferies & Company, Inc.  I formerly served as Chief Financial Officer and Chief Restructuring Officer of Kaiser Group International, Inc., a billion-dollar international professional services contractor where I led its financial restructuring.  My prior experience also includes senior positions with both General Electric and Lockheed Martin.  Prior to March 2024, I have served as a Managing Director of Imperial Capital, where I work with a diverse group of clients and investors in a wide range of industries. I have significant corporate operational experience and have spent approximately seventy percent of my career representing creditors, banks, and unsecured creditor committees, fifteen percent representing distressed investors, and fifteen percent representing debtors.

On February 24, 2025, the Chapter 15 Debtor (i) appointed me as the foreign representative of the Peruvian Proceeding and authorized me to file the Verified Petition and to act on its behalf in the Chapter 15 Case, and (ii) authorized the commencement of this Chapter 15 Case with respect to such Chapter 15 Debtor.  Accordingly, I am fully authorized and take related action as the Foreign Representative.

Unless otherwise indicated, all facts set forth in this Verified are based upon: (a) my review of relevant information, data and documents (including oral information) furnished to me by the Chapter 15 Debtor and its legal advisors; (b) information supplied to me by the Chapter 15 Debtor's officers, directors, employees and professionals; or (c) my analyses of the information I have received on the Chapter 15 Debtor's operations and financial condition.  I have also been kept abreast of major discussion with stakeholders, including the Chapter 15 Debtor's primary financial creditors and its shareholders.  I am an individual over the age of 18.  If I am called to testify, I will do so competently and based on the facts set forth herein.

Dated: February 25, 2025

Respectfully submitted,                    _/s/ Timothy O'Connor_

Foreign Representative of the Chapter 15 Debtor