**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| | ) |
| In re | ) |
| | ) Case No. 25-90022 (ARP) |
| *Telefónica del Perú S.A.A.*,[1] | ) |
| | ) |
| Debtor in a Foreign Proceeding. | ) Chapter 15 |
| | ) |

**DECLARATION OF JOSE ANTONIO JIMENEZ PURSUANT TO 28 U.S.C. § 1746**
**IN SUPPORT OF PETITIONER'S DECLARATION AND VERIFIED PETITION**
**FOR RECOGNITION OF THE PERUVIAN PROCEEDING**
**AND MOTION FOR ORDER GRANTING RELATED**
**RELIEF PURSUANT TO 11 U.S.C. §§ 105, 1509, 1515, 1517, 1520 AND 1521**

I, Jose Antonio Jimenez, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States that the following is true and correct:

1. I submit this declaration (the "**Declaration**") in support of the *Petitioner's Declaration and Verified Petition for Recognition of the Peruvian Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 105, 1509, 1515, 1517, 1520 and 1521* [ECF No. 2] (the "**Verified Petition**"),[2] filed contemporaneously herewith, which seeks entry of an order: (i) granting the Petition in this Chapter 15 Case and recognizing the Peruvian Proceeding as the "foreign main proceeding" for Telefónica del Perú S.A.A. ("**Telefónica Perú**" or the "**Chapter 15 Debtor**") pursuant to section 1517 of the Bankruptcy Code; (ii) finding that the Petitioner is the duly appointed "foreign representative" of the Chapter 15 Debtor within the meaning of section 101(24) of the Bankruptcy Code and is authorized to act on behalf of the Chapter 15 Debtor; and (iii) granting such other and further relief as the Court

---

[1] The debtor in this chapter 15 case (the "**Chapter 15 Case**") and the last four digits of the tax number in the jurisdiction in which it pays taxes is (7491–Peru). A translated, true and correct copy of Telefónica Perú's certificate of registry is attached to the Chapter 15 Debtor's voluntary petition [ECF No. 1] (the "**Form of Petition**") as **Exhibit D-1** and **Exhibit D-2**.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Verified Petition.

deems just and proper (collectively, the "**Relief Requested**") and in support of the voluntary ordinary restructuring proceeding (the "**Peruvian Proceeding**") commenced before National Institute for the Defense of Competition and Protection of Intellectual Property (*Instituto Nacional de Defensa de la Competencia y de la Protección de la Propiedad Intelectual*) ("**INDECOPI**") by the Chapter 15 Debtor on February 24, 2025 pursuant to Article 24 of the General Law of the Bankruptcy System  (*Ley General del Systema Concursal*) (Law No. 27809) (as modified, the "**Peruvian Insolvency Law**"), of the laws of the Republic of Peru ("**Peru**").

## BACKGROUND AND QUALIFICATIONS

2.      I am a partner of Rebaza, Alcázar & De Las Casas Abogados, a Peruvian law firm.  I am admitted to practice law in Peru and am registered with the Bar Association (*Colegio de Abogados*) of Arequipa.

3.      Pertinent aspects of my training are as follows: I hold a Juris Doctor from the Universidad Santa María Law School (Peru) and a Master of Laws from the University of Toronto Law School (Canada).

4.      I have been a professor of: (i) Bankruptcy Law at the Law School of the Pontificia Universidad Católica del Perú; (ii) Financial Law at the Faculty of Administration and Finance of the Peruvian University of Applied Sciences; and (iii) Bankruptcy Law in the Business Law Program of the San Francisco Xavier University of Arequipa.  I also have several publications in Peruvian law magazines, such as "ADVOCATUS" and "IUS ET VERITAS," as well as in the book "*The General Law of the Bankruptcy System, Exegetical Analysis*" by Juan Espinoza Espinoza.

5.      Over the last 20 years, I have practiced law in Peru, including in matters involving, among others, business restructurings, bankruptcy procedures, acquisitions of assets in corporate liquidations, and also advising in mergers, spin-offs, and other corporate

2

reorganizations.  In addition, I have experience providing insolvency preventive legal advice to companies in financial distress.  Examples of my experience, among many others, are as follows:

    a.  Cross-Border Restructurings:  I advised financial advisers in Peru in the cases of China Fishery[3] and LATAM Airlines[4] under processes of chapter 11 of the Bankruptcy Code.  In addition, I advised Automotores Gildemeister Peru and its subsidiaries in all those aspects related to the restructuring of the corporate bonds of its parent company (Automotores Gildemeister SpA)[5] and other group companies within the framework of a prepacked chapter 11 proceeding.

    b.  Ordinary Restructuring Proceedings under Peruvian Insolvency Law:  I advised textile company Franky & Ricky, Agroindustrial Lima, Don Diego Agroindustrias, Pesquera Hayduk, Maderera Vulcano, C.A.M.E. Contractors and General Services, Incorp Engineering and Construction among others in each entity's ordinary restructuring proceedings in Peru.  I also participated in advising on the modification of the restructuring plans of América Televisión, Pesquera Hayduk and AGP Industrias to achieve the conclusion of their ordinary restructuring proceedings; and

    c.  General Bankruptcy Advice: I provided legal advice to different financial entities and companies in various bankruptcy procedures, case evaluations and consultations, including, among others, Banco de Crédito del Perú, Interbank, Citibank N.A. Sucursal del Lima, Chubb, Atlas Copco Peruana, Quimpac, Tecnológica de Alimentos S.A., Volcan Compañía Minera, Axxion Capital

---

[3]    *In re CFG Investment S.A.C., et al.*, Case No. 16-11891 (JLG) (Bankr. S.D.N.Y. June 30, 2016).

[4]    *In re LATAM Airlines Group S.A., et al.*, Case No. 20-11254 (Bankr. S.D.N.Y. May 26, 2020).

[5]    *In re Automotores Gildemeister SpA, et al.*, Case No. 21-10685 (LGB) (Bankr. S.D.N.Y. Apr. 12, 2021).

Partners.

6.      To assist this Court in its consideration of the Verified Petition, I submit this Declaration describing the relevant features of Peruvian restructuring proceedings available under the Peruvian Insolvency Law, with a specific focus on the ordinary proceeding (PCO), as well as certain actions taken to date in connection with the Peruvian Proceeding.

7.      The facts and matters contained in this Declaration are true and correct to the best of my information, knowledge, and belief.  To the extent matters stated in this Declaration are statements of legal opinion, such statements represent my views as a practicing Peruvian attorney.

## PERUVIAN REORGANIZATION PROCEEDINGS

8.      Reorganization Proceedings (as defined herein) in Peru are governed by the Peruvian Insolvency Law.  The Peruvian Insolvency Law is a statute that provides for, among other things, the recovery of debts of Peruvian companies under the Peruvian Insolvency Law by way of a restructuring plan or a liquidation.  Peruvian Insolvency Law applies mandatorily to the insolvency proceedings of debtors domiciled in Peru.  A translated, true, and correct copy of the Peruvian Insolvency Law is attached hereto as **Exhibit A-1** and **Exhibit A-2**..

9.      Pursuant to the Peruvian Insolvency Law, reorganization or liquidation proceedings are of administrative nature and ruled by INDECOPI, which is an administrative agency of the Peruvian executive branch, through the Insolvency Proceeding Commission (*Comisión de Procedimientos Concursales*) (the "**Commission**").  The Commission plays a crucial role by supervising insolvency cases to ensure compliance with the Peruvian Insolvency Law.

10.      The Peruvian Insolvency Law provides for two (2) forms of proceedings (collectively, the "**Reorganization Proceedings**"): (i) an ordinary proceeding (a "**PCO**"), and (ii) a preventive proceeding.  A PCO can be filed either voluntarily by the debtor or

4

involuntarily by one or multiple creditors.  A preventive proceeding may only be filed voluntarily by the debtor.

11.     This Declaration will focus on the PCO given that the Peruvian Proceeding is a voluntary PCO seeking to restructure its debt through a plan of reorganization (a "**Plan**").  As described herein, a PCO allows for a transparent and collective process with a Peruvian debtor's creditors for the restructuring of its liabilities through a Plan.

### A.     Requirements for Commencing a PCO

12.     Either the debtor or one or more creditors may commence a PCO under the Peruvian Insolvency Law provided that certain requirements are met.  A PCO is formally commenced by the filing of an initial petition with INDECOPI (the "**PCO Petition**").  For the debtor to commence a PCO, it must demonstrate in the PCO Petition that (a) over one-third of its outstanding liabilities are past due for over thirty (30) days, and/or (b) its accumulated losses minus its retained earning exceed one-third of its paid-in capital.  For a creditor to commence a PCO, one or more unpaid creditors of the debtor must have debts which are due and payable in excess of fifty Tax Units[6] (approximately USD\$72,690.21)[7] that are unpaid for thirty (30) days prior to the commencement of the PCO.

13.     For a voluntary restructuring PCO, the debtor must include in the PCO Petition a report signed by a legal representative and a certified public accountant that demonstrates that the accumulated losses, after deducting reserves, do not exceed the total of the debtor's paid-in share capital.  The debtor should specify the mechanisms and requirements necessary to make the restructuring viable, including a preliminary projection of results and cash flow for a period of two (2) years.

---

[6]     The currency of Peru is the Peruvian Sol (S\$).  One (1) Tax Unit (*Unidad Impositiva Tributaria*) ("**Tax Unit**") for 2025 is S\$5,350.00 and 50 Tax Units are S\$267,500.00.

[7]     The foreign exchange rate used in the amounts in this Declaration is \$3.68:1 from S\$ to US\$ as of December 31, 2024.

14.    The PCO Petition must also include the following information:

i.    a summary justifying the initiation of the ordinary voluntary proceeding, the economic viability of its activities, if applicable, and the means to settle the outstanding obligations;

ii.    the debtor's financial statements for the last two (2) years and a monthly financial statement not more than 2 months old from the date of submitting the PCO Petition, all duly audited, along with the corresponding unqualified opinion;

iii.    a detailed list of claims and creditors, including contingent claims, reconciled to the Balance Sheet;

iv.    a detailed list of the debtor's movable and immovable property and their encumbrances and liens, as well as the holders and amounts thereof, reconciled to the Balance Sheet;

v.    a copy of the minutes of the shareholders' meeting or the corresponding body that records the agreement to file the voluntary PCO Petition;

vi.    a detailed list of the debtor's accounts receivable, indicating their recoverability, reconciled to the Balance Sheet;

vii.    information about the sources of financing accessed by the debtor during the last two years, as well as the manner in which the repayment of such financing has been agreed upon and the time allocated for it;

viii.    documentation proving to be an active taxpayer before the Peruvian tax administration;

ix.    Payroll book corresponding to the last month, and

x.    Affidavit stating existence or non-existence of relationship with each creditor.

**B.    Stages of a Peruvian PCO**

15.    Under the Peruvian Insolvency Law, the PCO proceeds in five stages to implement a restructuring of the debts of a debtor under Peruvian Insolvency Law.

16.    *First*, the PCO Petition with the information described above is filed. The filing of the PCO Petition triggers the commencement of a prohibition period during which certain acts may be declared ineffective if they are carried out between (i) the date on which the debtor files the PCO petition, and (ii) the date on which the Committee (as defined below) appoints

or ratifies the debtor's administration (in the case of financial restructuring) or approves and signs the respective liquidation agreement (in case of dissolution and liquidation). For example, this may include encumbrances and transfers made by the debtor of its own assets, whether for valuable consideration or free of charge, or guarantees granted on the debtor's assets during the specified period to secure the payment of obligations incurred prior to that date. Creditors with verified claims or the administrator or liquidator appointed in the PCO must bring a judicial action to challenge such actions and render them ineffective.

17.     ***Second***, once the PCO Petition has been filed, the Commission will review the PCO Petition and determine if the basis for the PCO is lawful and that all the requirements mentioned above and certain other additional eligibility requirements have been met. If the Commission determines that all requirements have been satisfied, it will issue a decision that will become final once the term for challenging it (fifteen (15) business days after its issuance) has elapsed. The formal acceptance of the PCO (and its consequent legal effects) starts once the notice of the PCO acceptance is published by the Commission in the Insolvency Gazette (*Boletín Concursal)* (the "**Publication**"). The Publication ensures that all creditors are given sufficient notice of the PCO and provided an opportunity to participate. The Commission has a maximum of ninety (90) business days after the day of the filing to evaluate the PCO Petition and issue a resolution and it takes approximately three (3) to four (4) additional weeks for the Commission to issue the Publication. During this period, the debtor is not protected by the automatic stay under the Peruvian Insolvency Law. There is no legal mechanism for the debtor to request or obtain a preliminary stay during the period between filing of the PCO Petition and the Publication. A voluntary PCO petition is public and can be accessed by creditors upon request to INDECOPI.

18.     Upon the issuance of the Publication, an automatic stay of all of the debtor's obligations immediately takes effect. The date of the Publication serves as the relevant date

for determining which claims are subject to the PCO and the stay. Pursuant to Article 17 of the Peruvian Insolvency Law, all enforcement actions against the debtor in respect of obligations that existed prior to the Publication date ("**Pre-Publication Claims**") of the debtor are stayed. The Peruvian Insolvency Law does not permit local creditors to receive preferential treatment, as all creditors are only able to collect their Pre-Publication Claims within the PCO. Further, debts arising or generated after the Publication date are not subject to the stay and may be collected regardless of the PCO.

19.     The stay will remain in effect until the creditors approve a restructuring Plan or a Liquidation Agreement, which may take between 12 or 18 months depending on the time that the Commission needs to verify all the Pre-Publication Claims and call the first creditors' meeting. During this period, the debtor cannot make any payments to the creditors in respect of their Pre-Publication Claims, otherwise the debtor and its administrator may be fined by INDECOPI.

20.     ***Third***, creditors have a period of thirty (30) business days from the date on which the Commission issues the Publication to submit their proofs of claim to the Commission. The debtor will have a period of ten (10) business days to review and opine on the proofs of claim once it has been notified by INDECOPI of such claim. Pursuant to the Peruvian Insolvency Law, the Commission has a period of up to ninety (90) business days to adjudicate on the existence and quantum of the claims submitted by debtor's creditors. However, in practice, the adjudication of claims typically takes 8 to 12 months from the date of the Publication, but for large, complex cases, adjudication could take up to 18 months. Only creditors whose claims have been adjudicated and allowed by INDECOPI will be entitled to participate in the PCO, including by speaking in all creditors' meetings and voting on whether the debtor should pursue a restructuring or liquidation, voting on a Plan in a restructuring or adopting certain decisions regarding the debtor in the PCO, such as whether to displace

management.  If a creditor fails to file a proof of claim in a timely manner, it will not have any

such speaking and voting rights in the creditors' meetings and will not be able to participate in

the discussions or decisions in the PCO.

21.     *Fourth*, once the Commission adjudicates the creditors' claims presented

within the 30 business days from the date of the Publication, the Commission will call an initial

creditors' meeting (collectively with all creditors' meetings, the "**Meeting of Creditors**") by

publishing the date, time, location of the meeting in the Insolvency Gazette.  Creditors are

invited to participate and can also appoint representatives to attend on their behalf.  The

Commission will also appoint one or more representatives to represent INDECOPI at the

Meeting of Creditors, who may participate at the Meeting of Creditors but not have the right to

vote.  At the first Meeting of Creditors, creditors may vote on certain topics, such as:

- Appointing a president and a vice-president of the creditors' meeting.
- Approving (i) the Company's restructuring (continuation of the company in the market) or (ii) the Company's dissolution and liquidation (in case the insolvency proceeding has not been initiated with liquidation in case the debtor's accumulated losses minus its reserves exceed the total capital stock).
- Electing the debtor's management regime:
  - *In Restructuring*: the creditors can choose to: (i) maintain the same management; (ii) agree on a mixed administration by changing managers and/or directors; or (iii) appoint an administrator registered in INDECOPI who will replace the previous management of the debtor (board, management and representatives).
  - *In Liquidation*: the creditors will appoint the liquidator from among those registered as such in INDECOPI who will replace the previous administration of the debtor.
- Approval of the restructuring plan or liquidation agreement (if creditors have decided to pursue a liquidation).

22.     If at the first Meeting of Creditors there is no decision on the restructuring or

liquidation of the company, such decision may be taken at a second Meeting of Creditors that

will be called by the president. The decision has to be made in a maximum period of forty-five

(45) business days from the first Meeting of Creditors. Once the creditors determine the debtor

should pursue a restructuring, a Plan must be approved at a subsequent Meeting of Creditors in a maximum period of sixty (60) business days from the day the creditors' decided to restructure the debtor.

23.     *Fifth*, the terms of such restructuring Plan may be modified anytime with a vote of approval at a Meeting of Creditors.

### C.      The Claims Allowance Procedure

24.     As discussed above, the debtor is required to file a list of creditors with its PCO Petition, and creditors have thirty (30) business days from the Publication to file proofs of claims with the Commission.  The Commission will consider the characteristics and nature of the claim in a resolution (one for each creditor) and, after it has conferred with the debtor, classify them accordingly.

25.     Once the claim has been verified, the Commission will issue a decision stating the amount of the claim, and the order of priority of the claim, which is applicable in a liquidation only, which is as follows:

- *First.*  (i) Labor and social security-originated claims (private and public pension funds), and (ii) debts payable to the public social health insurance (ESSALUD) that are subject to enforcement measures and for which precautionary measures have been ordered.

- *Second.*  Alimony claims.  Not applicable to companies, only to insolvency proceedings of natural persons.

- *Third.*  Claims secured by the debtor's assets or backed by precautionary measures on the debtor's assets duly registered in a public registry before Publication.  Personal guarantees granted by the debtor are not included in this class.

- *Fourth.*  Tax-claims (SUNAT, municipalities), as well as ESSALUD claims not covered in the first order of preference.

- *Fifth.*  Claims not covered by the preceding orders (generally unsecured claims).

26.     Creditors holding contingent claims (i.e., those that are being disputed in a judicial, administrative, or arbitral venue at the time of dissemination of the insolvency procedure) can request the Commission to register their contingent claims, and once registered, these creditors have the right to participate with voice in the Meeting of Creditors, as long as

the registration was requested within 30 business days from the date of the notice published in the Insolvency Gazette.

27.     Creditors and the debtor shall have fifteen (15) business days from the notification of the decision taken by the Commission regarding the creditor's claim to challenge such decision.

**D.     The Debtor's Operations Throughout the PCO**

28.     Once a PCO Petition is initiated and until the creditors decide to appoint or ratify the administration in a restructuring or to approve a liquidation agreement in a liquidation, the debtor remains in possession of its assets and continues to run its business during the course of the PCO.  The debtor's board of directors (or similar corporate body) and management will maintain its authority during this period, and can therefore take all corporate decisions as permitted by the debtor's governing documents, except that they may not authorize the following acts, which may be avoided or unwound if performed:

- Any advance payment for obligations not yet due, regardless of the form in which it is made;
- Any payment for overdue obligations that is not made in accordance with the agreed-upon or contractually established terms in the respective agreement or contract;
- Acts and contracts for valuable consideration, executed or entered into by the insolvent party, that do not relate to the normal course of its business activities;
- Offsetting of reciprocal obligations between the debtor and its creditors;
- Encumbrances and transfers made by the debtor concerning its own assets, whether for valuable consideration or gratuitously;
- Guarantees established on the debtor's assets during the specified period to secure the payment of obligations incurred before PCO Petition;
- Judicial or extrajudicial foreclosure of the debtor's assets, from the Publication; and
- Mergers, acquisitions, or spin-offs that negatively impact the debtor's assets.

29.     Management is authorized to continue to manage the affairs of the corporation, preserve the corporation's assets, and administer its restructuring.  Appointment of a foreign representative for purposes of Chapter 15 falls within the authorized duties of a corporation's

shareholders, board of directors, or similar corporate body under the Peruvian Insolvency Law, irrespective of whether a court order appointing such foreign representative has been obtained. The debtor's administration and the board of directors continue to perform their duties until the creditors make a decision on the administration regime pursuant to Article 61 of the Peruvian Insolvency Law, the corporation's shareholders maintain their powers and duties until the creditors' decide on the debtor's restructuring, at which time the creditors'(acting through Meetings of Creditors) assumes all the functions of the shareholders' meeting pursuant to Article 63 of the Peruvian Insolvency Law.

30.     After Publication, the debtor's board of directors (or similar corporate body) and management owe fiduciary duties to creditors, and therefore, must exercise proper due diligence in their decisions.

31.     Although management has the authority to act in the ordinary course and as necessary to enhance recovery for creditors, considering that the commencement of the PCO does not imply the cessation of its business activities, management is restrained from taking any significant action because of the ability of creditors to challenge all actions taken by the debtor's management during the period from the filing of the PCO Petition until the creditors decide on the administration regime in a restructuring, as described further below.  This includes a restriction on the ability to enter into transactions that are out of the ordinary course of business or encumber assets, absent approval by the creditors.  Further, after the Publication is issued, INDECOPI allows creditor claims, prevents unfair treatment of creditors, oversees the appointment of an administrator to the Plan, supervises the execution of the Plan, and can impose fines and penalties for violating Peruvian Insolvency Law.

32.     Creditors are active participants during the voluntary PCO.  Among other things, creditors must file proof of claims and have voting power over the debtor's proposed restructuring or liquidation, and the debtor's administration regime or the debtor´s liquidator.

The Peruvian Insolvency Law also allows creditors to form a committee (the "**Committee**") composed of four (4) members from different classes of creditors (when possible), including one member appointed as President of the Committee. The creditors may delegate to the Committee, in whole or in part, the powers conferred on the creditor body by the Peruvian Insolvency Law, except for the decision to approve a Plan or liquidation agreement, as applicable. Creditors who are part of the Committee, as well as administrators and liquidators, are unlimitedly and jointly liable to the creditors, shareholders, and third parties for damages caused by agreements or acts contrary to Peruvian Insolvency Law, the bylaws, or acts carried out with fraud, abuse of authority, or gross negligence.

   **E.**  **Clawback and Avoidance Actions**

   33.  Article 19 of the Peruvian Insolvency Law provides two avenues for creditors to challenge in judicial commercial courts transactions by an insolvent debtor (and the debtor's administrator or trustee): (i) the clawback action (also referred to as the look-back period action), which covers all actions or transactions taken by the debtor's management, whether for consideration or not, during the period that is one year prior to the date when the debtor files the PCO Petition; and (ii) the avoidance action, which sets a list of acts or transactions (detailed in paragraph 30 of this Declaration) by the debtor that can be judicially challenged and declared void if they are carried out from the date in which the debtor files the PCO Petition or is served with the filing of an insolvency proceeding and until a Meeting of Creditors decides on the debtor´s administration regime (in case of restructuring), or approves and signs the respective liquidation agreement (in case of liquidation). The declaration of ineffectiveness is processed judicially, being that if such situation is declared, the judge orders the return of the assets to the debtor's estate (for the benefit of all creditors); and, the lifting of liens and encumbrances (security interests) created on the assets, if applicable. For a clawback action to be successful, creditors must show that the challenged transaction (i) had a negative or adverse

effect on the net worth of the debtor's estate; and (ii) was not in the debtor's ordinary course of business.

34.     While these challenges have been rarely used by creditors probably due to the costs and time involved in judicial procedures, in practice, they serve to guide management's decisions.

**F.      Plan of Reorganization and Approval Process**

35.     A Plan implemented pursuant to the Peruvian Insolvency Law by Peruvian debtors facing financial difficulties can provide mechanisms for the orderly restructuring of debts and contractual relations between a debtor and its creditors.

36.     A debtor must submit a Plan for a vote during a Meeting of Creditors.  The Plan may include debt restructuring, operational changes, asset sales, or other measures to restore the debtor's financial health.  The Plan must contain a payment schedule that includes, all of the debtor's Pre-Publication Claims, and the manner, amount, place, and date of payment of the allowed claims of each creditor, including Pre-Publication claims that have not been recognized by INDECOPI.  Recognized claims are paid in preference to non-recognized claims.  The Plan should also establish a reserve for all Pre-Publication contingent claims (as if they were non-contingent claims from the beginning of the PCO). Any reserves made for such claims can be released if the contingencies do not materialize.  The Peruvian Insolvency Law allows for the classification of claims for purposes of payment under a Plan with a regime for labor credits that provides that at least 30% of the annual funds allocated in the Plan for the payment of claims must be mandatorily applied to the payment of labor and pension funds claims and also tax claims are being subject to certain protections (tax credits may not be capitalized or condoned and must be paid under the same conditions applicable to the majority of verified creditors included in the order of preference in which there is the highest amount of recognized credits). Further, equity interests are not classified and excluded from a PCO.

37.     To restructure the debtor, a Plan must be approved by creditors at a Meeting of Creditors.  There will be a first call for votes at which a restructure decision and a Plan must receive the approval of creditors holding claims in an amount greater than 66.6% of the total recognized claims.  In a second call, a restructure decision and a Plan will need to be approved by creditors attending the Meeting of Creditors holding claims representing an amount greater than 66.6% of the total amount of recognized claims held by creditors attending the Meeting of Creditors.  If insiders or affiliated creditors hold claims in excess of 50% of the total recognized claims, the Meeting of Creditors will be divided and the vote by class of creditors (related and non-related) will take place.

38.     An approved Plan binds the debtor and all of its creditors, even if they opposed the Plan, did not attend the Meeting of Creditors, or did not timely request the allowance of their claims.

39.     If the debtor fails to comply with the provisions of the Plan, the Commission will declare the dissolution and liquidation of the debtor. This decision of the Commission may be reversed at a Meeting of Creditors, i.e., the creditors may meet and agree again on the restructuring and approve a new Plan.

40.     The debtor, or the creditors who together represent at least 10% of the total amount of recognized claims by the Commission, may contest the agreements adopted at the meeting before the Commission within ten (10) days following the agreement, either for failure to comply with legal formalities, for non-compliance with the provisions contained in the legal system, or because the agreement constitutes an abusive exercise of a right. In the same cases, the Commission may, ex officio, declare the agreement adopted at the meeting null and void within a period of thirty (30) business days.

G.      **INDECOPI's Supervision Period After Plan Approval**

41.     Once a Plan is approved, INDECOPI will monitor its implementation and ensure compliance with the terms of the Plan.  The debtor will pay all the recognized and non-recognized claims in accordance with the Plan.  The debtor must submit periodic reports (March 31, June 30, September 30 and December 31) on the status of the implementation of the Plan to INDECOPI, including payments made according to the approved Plan.

42.     A PCO with an approved restructuring Plan will conclude once the debtor demonstrates to INDECOPI that all claims (recognized and non-recognized) in the Plan have been extinguished, in which case INDECOPI will declare in a resolution the conclusion of the PCO and the dissolution of the Meeting of Creditors, at which point the shareholders' meeting will resume its competence and functions.

## THE CHAPTER 15 DEBTOR'S PERUVIAN PROCEEDING

### A. Chapter 15 Debtor's Financial Distress and Commencement of the Peruvian Proceeding

43.     The Chapter 15 Debtor is a Peruvian telecommunications company that has offered telecommunications services throughout Peru for over thirty years.  The Company provides a wide range of services, including local, domestic and international long-distance services, broadband services, cable television services, interconnection services, prepaid and postpaid mobile services and cellphone sales.  The Company has also been a pioneer in the deployment of fiber optics in Peru, providing access to this technology to more than 4.4 million homes.

44.     On February 24, 2025, the Chapter 15 Debtor filed a voluntary petition (the "**Telefonica PCO Petition**") for relief with the INDECOPI pursuant to Article 24 of the Peruvian Insolvency Law.  The Peruvian Proceeding is intended to protect the Chapter 15 Debtor so that it may continue to operate its business and negotiate a value-maximizing

resolution for all parties that includes the fulfillment and payment of its obligations through a Plan without the risk of creditors filing any action or proceeding. A copy of the as-filed Telefonica PCO Petition and its certified English translation is attached to the Form Petition as Exhibit A-1 and Exhibit A-2. As of the date hereof, INDECOPI has not yet issued its notice and Publication in respect of the Telefonica PCO Petition, however, we believe it will do so as the requirements for the PCO have been met and included in the Telefonica PCO Petition. In the Telefonica PCO Petition, Telefónica Perú requests that INDECOPI accept the Telefonica PCO Petition on a timely basis to avoid harm to the ongoing business and the restructuring negotiations as well as prevent any enforcement actions by creditors. INDECOPI issued a statement on February 25, 2025 (the "**INDECOPI Statement**") stating that it received the Telefonica PCO Petition and that the Insolvency Proceedings Commission has a maximum of ninety (90) business days, (until July 3, 2025) to rule on the Telefonica PCO Petition. A copy of the INDECOPI Statement and its certified English translation is attached hereto as **Exhibit B-1** and **B-2**.

45.     I am aware of the definition of "foreign proceeding" as set forth in 11 U.S.C. §101(23). I believe the Peruvian Proceeding meets this definition as it constitutes a collective administrative proceeding under the Peruvian Insolvency Law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to supervision by INDECOPI, for the purpose of reorganization or liquidation. In this case, INDECOPI, as the administrative authority in the Peruvian Proceeding, adjudicates creditors' claims and supervises with respect to the creditors' rights, including approval of the restructuring plan and the terms thereof.

46.     I am aware of the definition of "foreign representative" as set forth in 11 U.S.C. § 101(24). I believe that Timothy O'Connor is the duly authorized Foreign Representative as result of Telefónica Perú's board resolutions, dated February 14 and 25, 2025 (the "**Board**

**Resolutions**") pursuant to which Telefónica Perú's board of directors, within its rightful power, authorized the filing of this Chapter 15 Case and the appointment of Timothy O'Connor as the foreign representative of the Chapter 15 Debtor in respect of the Chapter 15 Case.  A copy of the Board Resolutions and its certified English translation is attached to the Form of Petition as **Exhibit C-1** and **C-2**.

47.     The Peruvian Proceeding and the moratorium thereunder is intended to provide the Chapter 15 Debtor with time to implement a restructuring pursuant to restructuring processes available under the Peruvian Insolvency Laws, based on the restructuring terms to be negotiated between the Chapter 15 Debtor and its creditors and for a restructuring plan to be voted on by their creditors in the Peruvian Proceeding.

I certify under penalty of perjury pursuant to 28 U.S.C. § 1746 under the laws of the United States that the foregoing is true and correct.

Executed on February 25, 2025 in Lima, Peru.

Respectfully submitted,

Jose Antonio Jimenez