**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re | ) | |
| | ) | Case No. 25-90022 (ARP) |
| *Telefónica del Perú S.A.A.*,[1] | ) | |
| | ) | |
| Debtor in a Foreign Proceeding. | ) | Chapter 15 |
| | ) | |

<u>**EMERGENCY**</u> **MOTION FOR PROVISIONAL RELIEF
PURSUANT TO 11 U.S.C. §§ 1519, 105(a), AND 362**

---

**Emergency relief has been requested.  Relief is requested not later than February 26, 2025.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph.  Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on February 26, 2025 at 4:00 pm. (prevailing Central Time) in Courtroom 400, 515 Rusk, Houston, TX 77002.**

**You may participate in the hearing either in person or by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility.  You may access the facility at (832) 917-1510.  Once connected, you will be asked to enter the conference room number.  Judge Alfredo R. Perez's conference room number is "282694".  Video communication will be by use of the GoToMeeting platform.  Connect via the free GoToMeeting application or click the link on Judge Perez's home page.  The meeting code is "JudgePerez".  Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings.  To make your appearance, click the "Electronic Appearance" link on Judge Perez's home page.  Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1]    The debtor in this chapter 15 case (the "**Chapter 15 Case**") and the last four digits of the tax number in the jurisdiction in which it pays taxes is Telefónica del Perú S.A.A. (7491 – Peru) (the "**Chapter 15 Debtor**").

Timothy O'Connor (the "**Petitioner**" or the "**Foreign Representative**"), the duly-authorized foreign representative of Telefónica del Perú S.A.A. ("**Telefónica Perú**" or the "**Chapter 15 Debtor**") in its voluntary ordinary restructuring proceeding (the "**PCO**" or the "**Peruvian Proceeding**") commenced on February 24, 2025 pursuant to Article 24 of the General Law of the Bankruptcy System (*Ley General del Sistema Concursal*) (Law No. 27809) (the "**Peruvian Insolvency Law**"), of the Republic of Peru ("**Peru**"), pending before the National Institute for the Defense of Competition and Protection of Intellectual Property (*Instituto Nacional de Defensa de la Competencia y de la Protección de la Propiedad Intelectual*) ("**INDECOPI**"), by and through his undersigned counsel, respectfully submits this motion (the "**Motion**") seeking the entry of an order granting provisional relief (the "**Provisional Relief Order**")[2] pursuant to sections 1519, 105(a), and 362 of title 11 of the United States Code (the "**Bankruptcy Code**")[3] in the above-captioned Chapter 15 Case, pending chapter 15 recognition of the Peruvian Proceeding.

In support of this Motion, the Petitioner relies upon and incorporates by reference: (i) the form of voluntary petition (collectively, the "**Form of Voluntary Petition**") [ECF No. 1] filed by the Chapter 15 Debtor; (ii) the *Petitioner's Declaration and Verified Petition for Recognition of the Peruvian Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 105(A), 1507, 1509, 1515, 1517, 1520 and 1521* (the "**Verified Petition**") [ECF No. 2];[4] and (iii) the *Declaration of Jose Antonio Jimenez Pursuant to 28 U.S.C. § 1746 in Support of the Petitioner's Declaration and Verified Petition for Recognition of the Peruvian Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 105(A), 1507, 1509, 1515, 1517, 1520 and 1521* (the "**Peruvian Counsel Declaration**") [ECF No. 3], each of which were

---

[2]   A proposed version of the Provisional Relief Order granting the Petitioner's request for provisional relief is attached hereto.
[3]   Except as otherwise indicated, section and chapter references are to the Bankruptcy Code.
[4]   Capitalized terms used but not defined herein have the meanings ascribed to them in the Verified Petition.

filed concurrently herewith.  In further support of this Motion, the Petitioner respectfully represents to the Court as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.      On February 24, 2025 (the "**PCO Petition Date**"), the Chapter 15 Debtor commenced the Peruvian Proceeding by filing a voluntary application for the commencement of a voluntary ordinary restructuring proceeding (the "**PCO Petition**") with INDECOPI under the Peruvian Insolvency Law.  The Chapter 15 Debtor is operating its business under the supervision of INDECOPI.  As set forth in greater detail in the Verified Petition, the Chapter 15 Debtor filed the PCO Petition to stabilize its business, continue providing public telecommunications services to its approximately 13 million customers to Peru, and provide a forum for negotiations with its creditors with respect to a value-maximizing restructuring solution.

2.      As a result of the commencement of the Peruvian Proceeding, the Chapter 15 Debtor has become vulnerable to potential adverse creditor actions in the United States.  In particular, the holders of the S$1.7 billion (approximately US$451.6 million)[5] New York law governed senior notes issued by the Chapter 15 Debtor may claim the NY Notes have been automatically accelerated by the filing of the PCO Petition, and the holders of these NY Notes (as defined below) may commence costly litigation against the Chapter 15 Debtor in the United States.[6]  If the Chapter 15 Debtor is forced to defend itself against litigation brought by their creditors in the United States, they will need to divert funds and efforts that would otherwise be employed in negotiating a successful reorganization in Peru.  Such litigation could also cause disruption to the Chapter 15 Debtor's business and the Peruvian Proceeding.  For example,

---

[5]      The currency of Peru is the Peruvian Sol ("**S$**"). The foreign exchange rate used in the amounts in this Verified Petition is 3.7640:1 from S$ to US$ as of December 31, 2024.

[6]      An ad hoc group of holders of such NY Notes has been formed and is represented by Akin Gump Strauss Hauer & Feld LLP.

counterparties to contracts that may be located in the United States may threaten to terminate their agreements as a result of the Chapter 15 Debtor's restructuring or its inability to pay pre-filing debts.  Creditors who, absent provisional relief, are successful in obtaining a judgment or prejudgment attachment, may attempt to execute such orders on property of the Chapter 15 Debtor in the United States and Peru.  Furthermore, the Chapter 15 Debtor's contract counterparties located in the United States may threaten to terminate important operational agreements as a result of overdue and unpaid indebtedness.  Such creditors would likely also use their judgment liens to gain leverage over other creditors in the Peruvian Proceeding, thwarting the Chapter 15 Debtor's restructuring efforts.  These actions could also jeopardize the Chapter 15 Debtor's access to the rescue financing that its parent company, Telefónica Hispam has agreed to provide to support its operations.  Accordingly, the risk of litigation in the United States could undermine the Peruvian Proceeding and the Chapter 15 Debtor's operations, resulting in irreparable harm to the Chapter 15 Debtor and its creditors.  Given these risks to the Chapter 15 Debtor in the United States, the Chapter 15 Debtor commenced this Chapter 15 Case on February 25, 2025 seeking, among other related relief, recognition of the Peruvian Proceeding as the Chapter 15 Debtor's foreign main proceeding.

3.      The Petitioner respectfully requests provisional relief from this Court to apply and extend the automatic stay under section 362 of the Bankruptcy Code to the Chapter 15 Debtor. The relief sought herein seeks only to maintain the status quo while this Court's decision on the Verified Petition is pending.  The Petitioner respectfully submits that such provisional relief is urgently needed to protect the Chapter 15 Debtor against potential creditor actions within the territorial jurisdiction of the United States, will ensure fair treatment of creditors, will not harm the parties impacted by the stay, and is consistent with public policy and the goals of chapter 15.

Absent such relief, the restructuring sought in the Peruvian Proceeding could be undermined, causing irreparable harm to the Chapter 15 Debtor and its creditors.

**BACKGROUND**

### A.    The Chapter 15 Debtor's Operations

4.    The Chapter 15 Debtor is a Peruvian telecommunications company offering mobile, fixed, television, and business-to-business services throughout Peru.  It is one of Peru's largest telecommunication services providers, serving approximately 13 million customers in Peru. The Chapter 15 Debtor employs more than 3,600 employees in Peru and works with many business partners, vendors, and suppliers.  The Chapter 15 Debtor's infrastructure supports approximately 33.05% of Peru's internet connections and almost a third of Peru's mobile connections.  The Chapter 15 Debtor has been a pioneer in the deployment of fiber optics in Peru, providing access to this technology to more than 4.4 million homes.  The Chapter 15 Debtor has committed to expanding access to telecommunications in rural areas with Peru's Ministry of Transport and Communications, providing access to more than 55,000 people in more than 18,000 rural communities and remote locations.

5.    Additional factual background information relating to the Chapter 15 Debtor is set forth in detail in the Verified Petition, including its business operations and its corporate and capital structure.

### B.    General Procedural Background

6.    On February 24, 2025, the Chapter 15 Debtor filed a voluntary petition for relief with INDECOPI under the Peruvian Insolvency Law.  *See* Form of Voluntary Petition, Ex. A-1. INDECOPI, through the Insolvency Proceeding Commission (*Comisión de Procedimientos Concursales)* (the "**Commission**"), is reviewing the PCO Petition to determine if the basis for the

4

ordinary proceeding is lawful and that all eligibility requirements have been satisfied. *See* Peruvian Counsel Decl. ¶¶ 9, 17. The Chapter 15 Debtor has requested that INDECOPI accept the PCO Petition on a timely basis to avoid potential creditor actions and harm to the restructuring negotiations.[7] *See* Verified Petition ¶ 31. The filing of the PCO Petition triggers a prohibition period during which certain acts, such as certain transfers of assets or encumbrances, may be declared ineffective if they occur between the PCO Petition Date and the date on which the creditors appoint or ratify the Chapter 15 Debtor's administration (in the case of financial restructuring) or approve and sign the respective liquidation agreement (in the case of dissolution or liquidation). *See* Peruvian Counsel Decl. ¶ 16. During this interim period, the Chapter 15 Debtor is operating its business under the supervision of INDECOPI. *Id.* ¶ 45. Upon the issuance of the Publication, an automatic stay of all pre-Publication obligations of the Chapter 15 Debtor will immediately take effect, which will remain in place until creditors approve a restructuring plan (or liquidation agreement), which may take between twelve (12) or eighteen (18) months. *Id.* ¶¶ 18, 19. The Peruvian Proceeding is intended to protect the Chapter 15 Debtor so that it may continue to operate its business, provide public telecommunications services to its approximately 13 million customers in Peru, and negotiate a value-maximizing resolution for all parties. *See* Verified Petition ¶ 31. On February 25, 2025 (the "**Chapter 15 Petition Date**"), the Petitioner filed the petition for the Chapter 15 Debtor commencing this Chapter 15 Case.

7. Additional factual background information regarding the events leading to the commencement of this Chapter 15 Case and the facts and circumstances surrounding the Peruvian Proceeding are set forth in detail in the Verified Petition and the Peruvian Counsel Declaration.

---

[7]   If the Commission determines that all requirements have been satisfied, it will issue a decision that will become final once the term for challenging it (fifteen (15) business days after its issuance) has elapsed. The formal acceptance of the PCO (and its consequent legal effects) starts once the notice of the PCO acceptance is published by the Commission in the Insolvency Gazette (*Boletín Concursal*) (the "**Publication**"). *See* Peruvian Counsel Decl. ¶ 17.

C.     **The Chapter 15 Debtor's Debt Obligations and Assets in the United States**

8.     The Chapter 15 Debtor is liable under those certain 7.375% senior notes in the aggregate principal amount of S$1.7 billion (approximately $451.6 million)[8] (the "**NY Notes**"), governed by that certain Indenture (the "**Indenture**") dated as of April 10, 2019, between the Chapter 15 Debtor, as issuer, and Citibank, N.A. ("**Citibank**" or the "**Indenture Trustee**") as trustee, paying agent, calculation agent and registrar.  The NY Notes mature on April 10, 2027 and are governed by New York law.  The aggregate outstanding amount under the NY Notes as of the PCO Petition Date is S$1.7 billion (approximately US$451.6 million).

9.     In addition, the Chapter 15 Debtor holds an undrawn retainer in the amount of $100,000 in its Houston retainer account as well as $5,000 in a separate trust account located in Houston in the name of the Chapter 15 Debtor.

10.     Further, section 12.14 of the Indenture contains a forum-selection clause in which the obligors consent to the jurisdiction of New York State courts and U.S. federal courts sitting in New York.  Likewise, Citibank (the "**Indenture Trustee**"), serving as trustee, paying agent, calculation agent and registrar under each of the NY Notes, is based in United States.  The Indenture Trustee can seek to pursue any proceeding to enforce performance of any provision in the NY Notes in courts in New York.

11.     Although the Chapter 15 Debtor's customers are primarily located in Peru, they continue to use the mobile services provided by the Chapter 15 Debtor when they go abroad by continuing to receive and or transmit voice calls, text messages and internet data through their primary cellphone lines.  The Chapter 15 Debtor enters into contracts (the "**Roaming Agreements**") with telecommunication providers worldwide, including providers in the United

---

[8]     The obligations under the NY Notes are payable in USD.

States, to ensure that the Chapter 15 Debtor's customers benefit from coverage internationally. The international roaming capabilities provided pursuant to the Roaming Agreements are a major selling point for the Chapter 15 Debtor's telecommunications services.  In addition to the Roaming Agreements, the Chapter 15 Debtor may have additional contract counterparties located in the United States.

**D.   Imminent Risk to the Chapter 15 Debtor's Reorganization**

12.     As described above, the NY Notes are governed by New York state law and the holders of the NY Notes may claim they have been automatically accelerated by the commencement of the Peruvian Proceeding.  Thus, the Chapter 15 Debtor as issuer of the NY Notes is vulnerable to enforcement actions by the holders of NY Notes in the New York state courts or U.S. federal courts in New York seeking repayment of their NY Notes.  Additionally, the Chapter 15 Debtor's parent company, Telefónica Hispam, has committed S$1.78 billion (approximately US$483.70 million) that is intended to be exclusively used for working capital by the Chapter 15 Debtor over the next twelve (12) months.  Any enforcement actions by holders of the NY Notes threaten the Chapter 15 Debtor's access to this crucial capital that will enable it to continue operations during the Peruvian Proceeding.

13.     Further, if the services provided under the Roaming Agreements or any other contracts with the Chapter 15 Debtor are suspended (even for a brief period) or terminated due to any actions in the United States, it could have a disastrous and irreparable impact on the Chapter 15 Debtor's ability to maintain their customers or gain new customers.  Accordingly, the benefit of the stay is necessary to prevent any proceeding in the United States seeking to interfere with the Roaming Agreements or any other contracts with the Chapter 15 Debtor with counterparties

located in the United States to ensure that international roaming services to the Chapter 15 Debtor's customers will be preserved.

14.     Indeed, these potential adverse actions could negatively impact the Peruvian Proceeding and undermine the equal treatment of similarly situated creditors as required under the Peruvian Insolvency Law, by advantaging opportunistic creditors.  Moreover, forcing the Chapter 15 Debtor to defend itself and its assets in a foreign location would unnecessarily deplete resources otherwise available for distribution to creditors, and distract the Chapter 15 Debtor and its management from the more important task of formulating and soliciting support for a restructuring plan in the Peruvian Proceeding.

15.     Thus, the failure to obtain the relief requested in this Motion may result in irreparable harm to the Chapter 15 Debtor, its various stakeholders, and its reorganization efforts in the Peruvian Proceeding.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).  The Chapter 15 Debtor confirms its consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or

judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1409(a) and 1410.

17.     This chapter 15 case has been properly commenced pursuant to Bankruptcy Code sections 1504 and 1509 by the filing of a petition for recognition of the Peruvian Proceeding under Bankruptcy Code section 1515.

## RELIEF REQUESTED

18.     By this Motion, and pursuant to sections 1519, 105(a), and 362 of the Bankruptcy Code and Rule 9013-1(i) of the Local Bankruptcy Rules for the Southern District of Texas (the "**Local Rules**"), the Petitioner seeks entry of the Provisional Relief Order (the "**Requested Relief**"), granting the following provisional relief pending recognition of the Peruvian Proceeding:

> (i)   providing that section 362 of the Bankruptcy Code applies with respect to the Chapter 15 Debtor and its property within the territorial jurisdiction of the United States; and

> (ii)  granting such other and further relief as the Court deems just and proper.

## BASIS FOR RELIEF

**A.     The Requested Relief Is Authorized Under Sections 1519, 105(a), and 362**

19.     Unlike plenary proceedings under other chapters of the Bankruptcy Code, the statutory stay under section 362 is not automatically triggered by the commencement of a chapter 15 case.  *See In re Pro-Fit Holdings Ltd.*, 391 B.R. 850, 864 (Bankr. C.D. Cal. 2008).  Instead, section 1519 provides the Court with broad discretion to grant provisional relief during the period between the filing of a chapter 15 petition and the court's ruling on that petition.  *See In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 Bankr. LEXIS 5367, at *27 (Bankr. D. Del. Nov. 16,

2012) ("Sections 1507, 1519, 1521, and 1522 provide the Court with broad discretion to grant any appropriate relief.").

20.     Specifically, section 1519(a) of the Bankruptcy Code permits the Court "from the time of filing a petition for recognition until [it] rules on the petition" to grant provisional relief where it is "urgently needed to protect the assets of the debtor or the interests of the creditors."  11 U.S.C. § 1519(a).

21.     The request for provisional relief under section 362 of the Bankruptcy Code to the Chapter 15 Debtor and its property located within the United States falls squarely within the ambit of the relief available under section 1519(a) of the Bankruptcy Code.  *First*, section 1519(a)(1) specifically empowers the Court to issue a provisional order "staying execution against the debtor's assets[.]" 11 U.S.C. § 1519(a)(1).  *Second*, section 1521(a)(7) of the Bankruptcy Code, as incorporated by section 1519(a)(3),[9] permits the Court to grant "any additional relief that may be available to a trustee," provided that the Court determines that such relief is necessary to effectuate the purpose of chapter 15 and to protect the assets of the Chapter 15 Debtor or the interests of its creditors.  11 U.S.C. §§ 1519(a)(3), 1521(a)(7).  Thus, provisional relief under section 362 is also available to a foreign representative under section 1521(a)(7), as made applicable here under section 1519(a)(3).

22.     Moreover, the Court's authority to issue provisional relief under section 1519(a) is not limited to the remedies specified in subsections (a)(1) through (a)(3),[10] and the Court may also look to section 105(a) of the Bankruptcy Code as a separate basis for fashioning relief as is

---

[9]     Section 1519(a)(3) provides that the Court may grant, on a provisional basis, "any relief referred to in paragraph (3), (4), or (7) of section 1521(a)."  11 U.S.C. § 1519(a)(3).

[10]     *See, e.g.*, *In re Ran*, 607 F.3d 1017, 1021 (5th Cir. 2010) (Sections 1519(a)(1)-(3) represent a "non-exhaustive list of relief available to a foreign proceeding's representative in a Chapter 15 case"); *In re Vitro*, 455 B.R. 571, 579 (Bankr. N.D. Tex. 2011) ("[T]he relief enumerated in section 1519 is not all-inclusive" and "[t]he plain language of section 1519 of the Bankruptcy Code does not contain a limitation on the Court's authority to issue a stay or injunction, and that is where the Court's analysis must end.").

necessary to protect chapter 15 debtors and their creditors.[11]  *See In re Pro-Fit Holdings Ltd.*, 391 B.R. 850, 867 (Bankr. C.D. Cal. 2008) (holding that section 362 could immediately apply to chapter 15 under sections 1519(a), 105(a), and 105(d) of the Bankruptcy Code).  Thus, the Court has discretion under both sections 1519(a) and 105(a) to order the Requested Relief in this Chapter 15 Case.

23.    As required by section 1519(a) of the Bankruptcy Code, the Requested Relief is urgently needed to protect the Chapter 15 Debtor, its assets, and the interests of creditors as a whole.  Absent the stay, the Chapter 15 Debtor and its assets would be at risk of adverse creditor actions in the United States that could undermine the plenary reorganization proceeding underway in Peru and irreparably harm the interests of the Chapter 15 Debtor's creditors.  The chapter 15 cases of *Oi* and *OAS* before the Bankruptcy Court for the Southern District of New York are illustrative.  In the *Oi* case, prior to the commencement of its restructuring, the Oi Group had already engaged with its key creditors to negotiate a consensual solution for all stakeholders.  Certain creditors, however, demanded concessions and other terms that were not feasible or acceptable to the Oi Group.  In response, such creditors sent letters to the Oi Group threatening to bring costly and disruptive litigation.  When the Oi Group did not submit to the threats and demands of such creditors, they commenced legal action against the Oi Group and its directors in the Netherlands, causing great costs and expenses to the Oi Group and significant disruptions to its restructuring negotiations.  *See* Motion for Provisional Relief, *In re Oi S.A.*, No. 16- 11791 (SHL) (Bankr. S.D.N.Y. 2016), [ECF No. 7]; Order Granting Provisional Relief, *In re Oi S.A.*, No. 16-11791 (SHL) (Bankr. S.D.N.Y. 2016), [ECF No. 22].  Similarly, in the *OAS* case, certain

---

[11]    Section 105(a) of the Bankruptcy Code, which allows this Court to, among other things, "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]", is made applicable in Chapter 15 Case by section 103(a) of the Bankruptcy Code.  *See* 11 U.S.C. § 103(a) (applying chapter 1 to proceedings under chapter 15).

11

bondholders petitioned for and obtained attachment orders on cash and intangible assets against the OAS Group, both before and during its chapter 15 case.  *See In re OAS S.A.*, 533 B.R. 83, 89 (noting that certain holders of New York law-governed bonds issued by the foreign debtor company had "sought and obtained an ex parte order of attachment" in state court).

24.     Adverse creditor action against the Chapter 15 Debtor in the United States would harm the Chapter 15 Debtor by unduly consuming time, money, attention, and other resources. The litigation that would "[divert] funds needed for the purpose of maximizing value" for the equitable benefit of the Chapter 15 Debtor's creditors.  *In re Gercke*, 122 B.R. 621, 626 (Bankr. D.D.C. 1991); *cf. In re MMG LLC*, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000) (noting that "forc[ing a foreign representative] to participate in expensive litigation that threatens to drain the assets of the estate" may result in irreparable harm).[12]

25.     Absent the Requested Relief, creditors may seek to leverage the U.S. court system to obtain judgments and then attempt to execute such judgments on property of the Chapter 15 Debtor located in the United States or Peru, where a protective stay only takes effect upon the Commission's issuance of the Publication.  The holders of the NY Notes may claim that they have been automatically accelerated by the filing of the PCO Petition, and the holders of the NY Notes may seek to enforce them in the United States, thereby circumventing the orderly administration of the Chapter 15 Debtor's estates by INDECOPI and potentially causing destructive effects to the Chapter 15 Debtor.  Contract counterparties, for example, parties to the Chapter 15 Debtor's Roaming Agreements, may seek to terminate their agreements with the Chapter 15 Debtor as a

---

[12]     Moreover, the Requested Relief is also appropriate because, among other things, it will promote (i) the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the [D]ebtor[s]," (ii) the "protection and maximization of the value of the [D]ebtor[s'] assets," and (iii) the "facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment," as intended by section 1501 of the Bankruptcy Code.  *See* 11 U.S.C. § 1501(a).

result of unpaid prepetition amounts.  The Chapter 15 stay would prevent any such termination by counterparties with ties to the United States.

26.     United States bankruptcy courts routinely impose the section 362 stay on a provisional basis or order similar provisional relief in chapter 15 cases to maintain the status quo pending the court's decision on the recognition petition.  *See, e.g.*, *In re Flo-Back Equipment Inc.,* Case No. 24-90059 (Bankr. S.D. Tex. Feb 22, 2024) [ECF 15]; *In re CB&I UK Limited,* Case No. 23-90795 (Bankr. S.D. Tex. Oct. 10, 2023) [ECF 46]; *In re BioSteel Sports Nutrition, Inc.,* Case No. 23-90777  (Bankr. S.D. Tex. Sep. 19, 2023[ECF 23]); *In re Cimolai S.p.A.,* Case No. 23-90109 (Bankr. S.D. Tex. Mar. 10, 2023) [ECF 13]; *In re Just Energy Group Inc.,* Case No. 21-30823] (Bankr. S.D. Tex. Mar. 9, 2021) [ECF 23]; *In re ENTREC Corporation,* Case No. 20-32643 (Bankr. S.D. Tex. May 15, 2020) [ECF 13].  The Petitioner respectfully submits that the Requested Relief is both necessary and appropriate in this Chapter 15 Case to preserve the status quo while the Verified Petition is pending.

**B.     The Requested Relief Also Meets the Preliminary Injunction Standards**

27.     Section 1519(e) of the Bankruptcy Code generally requires a foreign representative to satisfy the general standards for injunctive relief.  *See* 11 U.S.C. § 1519(e) ("The standards, procedures, and limitations applicable to an injunction shall apply to relief under [1519]"); *In re Worldwide Educ. Servs., Inc.*, 494 B.R. 494, 498 (Bankr. C.D. Cal. 2013) (holding that 1519(e) "generally applies to all relief sought pursuant to Section 1519, including imposition of the automatic stay"); *see also Vitro*, 455 B.R. at 580 ("Injunctions issued under 11 U.S.C.S. § 105

outside of a plan of reorganization may be granted only under the usual rules for the issuance of

an injunction.") (citing *In re Commonwealth Oil Ref. Co.*, 805 F.2d 1175, 1190 (5th Cir. 1986)).[13]

28.     In the Fifth Circuit, the general standard for injunctive relief requires a showing of

the following elements:

> (i)   a substantial likelihood of success on the merits;
>
> (ii)  a substantial threat that the movant will suffer irreparable injury if the injunction is not issued;
>
> (iii) that the threatened injury to the movant outweighs any damage that the injunction might cause the opponent; and
>
> (iv)  that the injunction will not disserve the public interest.

*See Palmer v. Waxahachie Indep. Sch. Dist.,* 579 F.3d 502, 506 (5th Cir. 2009) (quoting *Byrum v.*

*Landreth,* 566 F.3d 442, 445 (5th Cir. 2009)); *Blue Bell Bio-Medical v. Cin-Bad, Inc.,* 864 F.2d

1253, 1256 (5th Cir. 1989); *see also Dallas Cowboy Cheerleaders, Inc. v. Scoreboard Posters,*

*Inc.,* 600 F.2d 1184, 1187 (5th Cir. 1979).  With respect to these factors, courts take a "flexible

approach and no one factor is determinative."  *Nevada Power Co. v. Calpine Corp. (In re Calpine*

*Corp.),* 365 B.R. 401, 409 (S.D.N.Y. 2007) (internal citations omitted) (citing *Haw. Structural*

*Ironworkers Pension Trust Fund v. Calpine Corp.,* 2006 WL 3755175, at *4 (S.D.N.Y. Dec. 20,

2006)).  Here, the Petitioner's request for a provisional stay in this Chapter 15 Case easily satisfies

this standard.

> ### i.     *Petitioner is likely to succeed on the merits*

29.     For the reasons set forth in the Verified Petition, the Petitioner has demonstrated

that all of the statutory elements under section 1517(a) of the Bankruptcy Code for recognition of

---

[13]   *But see Pro-Fit Int'l*, 391 B.R. at 855 (holding that the standards, procedures, and limitations for issuing an injunction should not apply to relief under section 1519 when the relief sought is the imposition of the automatic stay on an interim basis).

the Peruvian Proceeding with respect to the Chapter 15 Debtor have been satisfied.  Specifically, the Petitioner has demonstrated that: (i) the Peruvian Proceeding satisfies the elements of a "foreign proceeding" (as defined under section 101(23) of the Bankruptcy Code) with respect to the Chapter 15 Debtor (*see* Verified Petition ¶¶ 49–55); (ii) the Petitioner is the duly-authorized foreign representative (within the meaning of section 101(24) of the Bankruptcy Code) of the Peruvian Proceeding for purposes of this Chapter 15 Case (*see id.* ¶¶ 56–62); and (iii) the Verified Petition and accompanying documents meet the procedural requirements of section 1515 of the Bankruptcy Code (*see id.* ¶¶ 58–62).

30.     The Petitioner has also sufficiently demonstrated that the Peruvian Proceeding is a foreign proceeding under section 101(23) of the Bankruptcy Code and satisfies the requirements to be considered the "foreign main proceeding" (as that term is defined in section 1502(4) of the Bankruptcy Code) of the Chapter 15 Debtor.  *See id.* ¶¶ 63–70.  As described in detail in the Verified Petition, the Chapter 15 Debtor is organized under the laws of Peru, its headquarters are in Peru, its main assets and its operational activities are situated in Peru, and its books and records are maintained in Peru, therefore establishing that Peru is the Chapter 15 Debtor's center of main interests.  *See* Verified Petition ¶ 66.[14]

---

[14]   The fact that INDECOPI has not yet issued the PCO Acceptance Notice (and, as a result, there is no stay yet in Peru) is irrelevant.  First, an interim proceeding qualifies as a "foreign proceeding," even if there is no stay against creditor actions issued by the foreign court.  *In re Netia Holdings S.A.*, 277 B.R. 571, 582-83 (Bankr. S.D.N.Y. 2002) (holding Polish "pre-opening" insolvency proceedings were "foreign proceedings" and rejecting argument that a requirement to qualify as "foreign proceedings" is the presence of an automatic stay in Poland); *In re Abeinsa Holding, Inc.*, 562 B.R. 265, 269-70 (Bankr. D. Del 2016) (granting recognition of pre-insolvency conciliation procedure).  Second, courts have granted interim relief while the foreign court is considering a petition or request for admission into an insolvency process, even where no provisional relief has been granted by the foreign court.  *See* Order Granting Provisional Relief, *Grupo Famsa, S.A.B. de C.V.*, No. 20-11811 (SCC) (Bankr. S.D.N.Y. 2020) [ECF No. 9].  There, the U.S. Bankruptcy Court for the Southern District of New York issued a preliminary injunction pursuant to section 1519 of the Bankruptcy Code despite the fact that the Mexican court had not yet granted precautionary relief or accepted the foreign debtor's *concurso mercantil* petition.  *See id.*; *see also* Supplemental Declaration, *Grupo Famsa, S.A.B. de C.V.*, No. 20-11811 (SCC) (Bankr. S.D.N.Y. 2020) [ECF No. 14].

31.     Accordingly, as there is a strong likelihood that the Court will recognize the Peruvian Proceeding as the foreign main proceeding with respect to the Chapter 15 Debtor, and the Petitioner has demonstrated a substantial likelihood of success on the merits.

ii.     *The Chapter 15 Debtor is at risk of irreparable harm if an injunction is not issued*

32.     In the bankruptcy context, irreparable harm exists where the conduct to be enjoined would, if not stayed, interfere with the reorganization process.  *In re Calpine Corp.*, 365 B.R. at 409 (internal citations omitted) (a court may issue a "preliminary injunction in the bankruptcy context where the action to be enjoined is one that threatens the reorganization process"); *see also In re Netia Holdings S.A.,* 278 B.R. 344, 352 (Bankr. S.D.N.Y. 2002) ("It is well established . . . that the dissipation of the finite resources of an insolvent estate constitutes irreparable injury."). That is precisely the risk here.  If individual creditors were permitted to commence individual enforcement actions in the United States against the Chapter 15 Debtor, the Chapter 15 Debtor's ability to maximize and maintain value for distribution through the Peruvian Proceeding would be severely undermined and the value available for such distribution could be diminished.  *See In re Garcia Avila*, 296 B.R. 95, 114 (Bankr. S.D.N.Y. 2003) ("irreparable harm is present when the failure to enjoin local actions will disrupt the orderly reconciliation of claims and fair distribution of assets in a single, centralized forum") (internal citations omitted).

33.     As such, the Petitioner respectfully submits that it is imperative that the Court grant the Requested Relief to maintain the status quo while the Verified Petition is pending.  Absent this relief, the Chapter 15 Debtor might suffer irreparable harm to its reorganization efforts in the Peruvian Proceeding for the equitable benefit of all creditors and may have to spend the limited liquidity that may be critical to the success of such restructuring into separate adverse creditor actions.

16

34.     Further, courts have held that having to fend off litigation while attempting to reorganize through a judicial proceeding constitutes irreparable harm.  *See In re Alert Holdings, Inc.*, 148 B.R. 194, 200 (Bankr. S.D.N.Y. 1992) ("Where . . . the action sought to be enjoined would embarrass, burden, delay or otherwise impede the reorganization proceedings . . . the [U.S. b]ankruptcy [c]ourt may issue injunctive relief.").

       iii.     *The balance of harms weighs heavily in favor of granting the Requested Relief*

35.     The balance of harms also weighs in favor of granting the Requested Relief and imposing the section 362 stay.  The stay will merely preserve the status quo on a temporary basis pending this Court's ruling on the Verified Petition.  The stay will not bar or otherwise disenfranchise parties from participating in the Peruvian Proceeding, where each creditor's right to be heard will remain unaffected.  Nor will the requested stay preclude a creditor that feels unduly burdened by the Court's granting of the Requested Relief to seek to lift the stay for "cause."  *See* 11 U.S.C. § 362(d).  Instead, the Requested Relief will benefit the Chapter 15 Debtor and all creditors by ensuring an equitable and orderly Peruvian Proceeding.  Through the Requested Relief, the Petitioner merely seeks to prevent creditors from attempting to end-run around the Peruvian Proceeding by commencing and continuing enforcement actions against the Chapter 15 Debtor.  To the extent the Chapter 15 Debtor's creditors believe that they have valid claims against the Chapter 15 Debtor, they are free to pursue those claims along with other creditors within the structure of the Peruvian Proceeding.  On the other hand, as shown above, the harm to the Chapter 15 Debtor in the absence of the Requested Relief could be severe.

       iv.     *The public interest favors granting the requested injunctive relief*

36.     Granting the Requested Relief is also consistent with the public policies of chapter 15 by avoiding piecemeal litigation and exhaustion of a debtor's estate and the attendant

inequitable distribution of property among claimholders. *See Cornfeld v. Invs. Overseas Servs., Ltd.,* 471 F.Supp. 1255, 1259 (S.D.N.Y. 1979), *aff'd* 614 F.2d 1286 (2d Cir. 1979) (explaining that "American public policy would be furthered, for the firm policy of American courts is the staying of actions against a corporation which is the subject of a bankruptcy proceeding in another jurisdiction."). Moreover, the Requested Relief promotes the purposes of chapter 15, including: (i) providing greater legal certainty for trade and investment; (ii) fostering fair and efficient administration of cross-border insolvencies that protects the interests of <u>all creditors</u>, and other interested parties, including the Chapter 15 Debtor; (iii) protecting and maximizing the value of the Chapter 15 Debtor's assets; (iv) facilitating the rescue of financially troubled businesses, thereby protecting investments and preserving employment; and (v) promoting cooperation between the courts in the United States with those in foreign jurisdictions involved in cross-border insolvency cases. *See* 11 U.S.C. §§ 1501(a), 1525.

37.     The granting of additional relief is consistent with the goals of international cooperation and assistance to foreign courts embodied in chapter 15 and is necessary to administer the Peruvian Proceeding. Comity is a central tenet of chapter 15 and is "the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." *Hilton v. Guyot,* 159 U.S. 113, 143 (1895); *see Firefighters' Ret. Sys. v. Citco Grp. Ltd.,* 796 F.3d 520, 525 (5th Cir. 2015); *Ad Hoc Group of Vitro Noteholders v. Vitro SAB de CV (In re Vitro SAB de CV),* 701 F.3d 1031, 1053 (5th Cir. 2012).

38.     Granting the provisional relief to the Chapter 15 Debtor will serve the public interest and provide certainty and efficient administration of the Peruvian Proceeding, while enhancing the cooperation between this Court and INDECOPI.

### C.     All Parties Are Sufficiently Protected

39.     As required under section 1522(a) of the Bankruptcy Code, all parties are "sufficiently protected" for this Court to grant the Requested Relief.  11 U.S.C. §1522(a).  Relief under section 1519 of the Bankruptcy Code should be denied for a lack of sufficient protection only "if it is shown that the foreign proceeding is seriously and unjustifiably injuring United States creditors."  H. Rep. No. 109-31, Pt. 1, 109th Cong., 1st Sess. 116 (2005).  A determination of sufficient protection requires a balancing of the respective parties' interests.  *In re Sanjel (USA) Inc.,* No. 16-50778 (CAG), 2016 WL 4427075, at *5 (Bankr. W.D. Tex. July 29, 2016) ("In judging whether relief should be modified pursuant to §1522(a), courts have engaged in a balancing of the relative hardships to the parties when considering whether the interests of interested parties are sufficiently protected.").[15]

40.     Here, all parties are sufficiently protected.  As shown above, the narrowly tailored requested relief herein will impose no hardship on any party that is not significantly outweighed by the benefits to the Chapter 15 Debtor and all parties in interest.  *See supra* ¶ 35.  To the contrary, the Requested Relief will merely preserve the present circumstances for all parties pending the recognition hearing.  Creditors or contract counterparties can always seek relief from the protective stay.

---

[15]     The standard for determining whether the parties are sufficiently protected under section 1522(a) of the Bankruptcy Code thus mirrors the balance of hardships inquiry under the general standards for injunctive relief discussed above.

### D.      No Security is Required

41.      No security is required for the Requested Relief in accordance with Rule 7065 of the Bankruptcy Rules.  *See* Fed. R. Bankr. P. 7065; *see also Richardson v. Runge Fin. Co. (In re Richardson)*, No. 99-20522, 2003 Bankr. LEXIS 2461, *17 n.14 (Bankr. D. Idaho Oct. 21, 2003) (noting that Bankruptcy Rule 7065 waives the requirements under Rule 65(c) of the Federal Rules of Civil Procedure "if the order is sought by a debtor, trustee or debtor in possession").  Requiring security would be unwarranted in the present circumstances, as the Chapter 15 Debtor's primary assets are under the jurisdiction of INDECOPI and the Requested Relief would last only until this Court's ruling on the Verified Petition.  *See* 11 U.S.C. § 1520(a)(1).[16]

## BASIS FOR EMERGENCY RELIEF

42.      Pursuant to Bankruptcy Rule 6003 and Local Rule 9013-1(i), the Foreign Representative requests emergency consideration of this Motion.  The Foreign Representative seeks emergency provisional relief under Bankruptcy Code sections 105(a) and 1519, imposing a stay to protect the Debtor and its assets until and through the Court's decision on the chapter 15 petition filed contemporaneously with this Motion.  Prior to entry of a recognition order, the Debtor does not automatically have the protection of section 362 of the Bankruptcy Code.  Emergency provisional relief is necessary to prevent creditors and other parties from taking action against the Chapter 15 Debtor and its assets in the United States that could disrupt the administration of the Peruvian Proceeding and interfere with a value-maximizing sale process for the benefit of all stakeholders.

---

[16]    Indeed, many courts, including this Court, have generally waived the security provisions of Rule 65(c) of the Federal Rules of Civil Procedure in Chapter 15 Case.  *See, e.g.*, Order Granting Foreign Representative's Emergency Motion for Provisional Relief Pursuant to Bankruptcy Code Section 1519, *In re Flo-Back Equipment Inc.*, No. 24-99059 (MI) (Bankr. S.D. Tex. Feb. 22, 2024) [ECF No. 15] at 5 ("Pursuant to Bankruptcy Rule 7065, the security provisions of Rule 65(c) of the Federal Rules of Civil Procedure are waived.").

**NOTICE**

43.     Notice of this Motion will be provided to the Notice Parties set forth in the Notice List via email or first-class mail.  The Petitioner respectfully submits that no other or further notice is required.

**NO PRIOR REQUEST**

44.     No previous request for the relief requested herein has been made by the Petitioner to this Court or any other court.

**CONCLUSION**

45.     Based on the foregoing, the Petitioner respectfully requests that the Court (i) enter an order, substantially in the form of the Provisional Relief Order, granting the relief requested herein; and (ii) grant such other and further relief as the Court may deem just and proper.

Dated: February 25, 2025
Houston, Texas

/s/ Charles R. Koster
**WHITE & CASE LLP**
Charles R. Koster (Texas Bar No. 24128278)
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone: (713) 496-9700
Facsimile: (713) 496-9701
Email:  charles.koster@whitecase.com

John K. Cunningham (*pro hac vice* pending)
Richard S. Kebrdle (*pro hac vice* pending)
Amanda Parra Criste (*pro hac vice* pending)
Andrea Kropp (*pro hac vice* pending)
Southeast Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email:  jcunningham@whitecase.com
        rkebrdle@whitecase.com
        aparracriste@whitecase.com
        andrea.kropp@whitecase.com

Jason Zakia (*pro hac vice* pending)
111 South Wacker Drive
Suite 5100
Chicago, IL 60606-4302
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: jzakia@whitecase.com

*Attorneys for Timothy O'Connor,*
*as Petitioner and Foreign Representative*

## **Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Charles R. Koster*
Charles R. Koster

## **Certificate of Service**

I certify that on February 25, 2025, I caused a copy of the foregoing document to be served via electronic mail, U.S. mail, or first-class postage, as applicable, and by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Charles R. Koster*
Charles R. Koster